Michael McConnell
Texas Bar I.D. 13447300
michael.mcconnell@kellyhart.com
Nancy Ribaudo
Texas Bar I.D. 24026066
nancy.ribaudo@kellyhart.com
Katherine T. Hopkins
Texas Bar I.D. 24070737
katherine.hopkins@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone:     817/332-2500
Telecopy:      817/878-9774

*Proposed Counsel for Debtors*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 19-40067-elm11 |
| SOVRANO, LLC, *et al.*,[1] | § | |
| | § | Chapter 11 |
| Debtors. | § | |
| | § | Jointly Administered |
| | § | |
| | § | |

**EXPEDITED MOTION SEEKING (I) AUTHORITY TO SELL SUBSTANTIALLY ALL OF THE GIGI'S DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND TO ASSUME AND ASSIGN CERTAIN CONTRACTS AND LEASES, (II) APPROVAL OF BUYER PROTECTIONS, BIDDING PROCEDURES AND SALE PROCESS (III) SETTING OF FINAL HEARING TO APPROVE SALE; AND (IV) RELATED RELIEF**

Gigi's Cupcakes, LLC ("**Gigi's Cupcakes**"), Gigi's Operating, LLC ("**Gigi's Operating**"), and Gigi's Operating II, LLC ("**Gigi's Operating II**" and collectively, "**Gigi's Debtors**" and for purposes of this Motion, "**Debtors**"), as debtors-in-possession, hereby submit this *Expedited Motion Seeking (I) Authority To Sell Substantially All Of The Gigi's Debtors' Assets Free And Clear Of All Liens, Claims, Encumbrances And Other Interests And To Assume*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sovrano, LLC (1470); Mr. Gatti's, LP (0879); Gatti's Great Pizza, Inc. (6061); Gigi's Cupcakes, LLC (8356); Gigi's Operating, LLC (0621); Gigi's Operating II, LLC (8396); and KeyCorp, LLC (1251).

*And Assign Certain Contracts And Leases, (II) Approval Of Buyer Protections Bidding Procedures And Sale Process (III) Setting Of Final Hearing To Approve Sale; And (IV) Related Relief* (the "**Motion**").

Through the Motion, the Debtors request entry of an order, substantially in the form of **Exhibit A** (the "**Bidding Procedures Order**"):

(i)    authorizing and approving certain procedures as set forth on <u>Exhibit 1</u> to the Bidding Procedures Order "**Bidding Procedures**") for the sale of substantially all of the Gigi's Debtors' assets ("**Assets**" or "**Gigi's Assets**");

(ii)    approving and authorizing the Debtors to pay the Break-Up Fee (as defined herein) in the event such Break-Up Fee becomes payable under the terms of the Buyer's APA (as defined herein);

(iii)    scheduling an auction in connection with the proposed sale of Assets for **March 25, 2019 at 1:00 p.m.** ("**Auction**");

(iv)    scheduling a hearing to approve the sale of the assets for **March 28, 2019 at 1:30 p.m**. (the "**Sale Hearing**"), and setting **March 15, 2019 at 5:00 p.m. (Central)** ("**Objection Deadline**") as the deadline to object to the proposed sale;

(v)    approving the form and manner of notice of the Bidding Procedures, Auction and Sale Hearing (the "**Auction and Sale Notice**") attached hereto as **Exhibit B**;

(vi)    establishing procedures as set forth herein relating to determining the Cure Amounts (as defined herein) for the assumption and/or assignment of executory contracts and unexpired leases, including the deadline for filing objections and form and manner of service of notice ("**Assumption and Assignment Notice**") attached hereto as **Exhibit C**; and

(vii)    granting certain related relief.

The Debtors further request entry of a final sale order (the "**Sale Order**"):

(i)    authorizing and approving the sale of Gigi's Assets free and clear of all liens, claims, encumbrances, and other interests pursuant to the asset purchase agreement substantially in the form of **Exhibit D** ("**Buyer's APA**") attached hereto or such other form of asset purchase agreement between the Debtors and the successful bidder at the Auction;

(ii)    authorizing and approving the assumption and assignment of certain executory contracts and unexpired leases; and

(iii)   granting certain related relief.

In support of the Motion, the Debtors respectfully state the following:

## I.   JURISDICTION AND STATUTORY PREDICATES

1.      The Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter involves a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  The statutory predicates for the requested relief are 11 U.S.C. §§ 363(b), (f) and (m) and 365.  Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.   BACKGROUND

### A.   GENERAL FACTUAL BACKGROUND

2.      On January 4, 2019, Gigi's Cupcakes, LLC, Gigi's Operating, LLC and Gigi's Operating II, LLC filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*.  On January 7, 2019, the Court entered orders directing that the Debtors' bankruptcy cases be jointly administered with Sovrano, LLC, et. al. under Case No. 19-40067 [Docket Nos. 24].  The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.  No trustee or examiner has been appointed in any of the Debtors' bankruptcy cases. The U.S. Trustee has not formed an Official Unsecured Creditors Committee.

3.      A detailed factual background of the Debtors' business and operations prior to the commencement of these chapter 11 cases, is set forth in the *Declaration of Dawn M. Ragan, Chief Restructuring Officer in Support of Debtors' Chapter 11 Petitions and First-Day Motions* [Docket No. 10].

4.      Since the filing of their bankruptcies, the Debtors have continued to operate their businesses efficiently and profitably for the benefit of all creditors.  The Debtors obtained

authority to use cash collateral and continue to operate their businesses in accordance with the final cash collateral order.

**B.  FACTUAL BACKGROUND SPECIFIC TO THE RELIEF REQUESTED**

5.      Debtors' management determined in their sound business judgment that the sale of certain Gigi's Debtors' assets to a third party would maximize value and best serve the interests of the Debtors' estates and creditors.  Since filing their cases, one of Debtors' objectives has been to aggressively market and sell Gigi's Assets.  The need for urgency is created by, among other things, (i) the Gigi's Debtors' lack of short and long-term liquidity; (ii) and the termination date for the use of Equity Bank's cash collateral for some of the Debtors beyond March 31, 2019.[2]  As a result, Debtors have engaged in aggressive efforts to market Gigi's assets to prospective purchasers.  Debtors believe that an expedient timetable is critical to a successful resolution of the Debtors' cases and is necessary to maximize recovery to creditors.

6.      As a result of those efforts, Debtors have identified Buyer as the potential purchaser of certain Gigi's Assets.  The Debtors now request that this Court approve a process for the sale of such Gigi's Assets on an expedited basis.  If approved, the sale process will result in a sale of substantially all of Gigi's Assets.

**C.  ASSET PURCHASE AGREEMENT**

7.      On February 18, 2019, the Gigi's Debtors as Sellers and MTY Franchising USA, Inc., a Delaware corporation,("**Buyer**" or "**MTY**") executed the Buyer's APA, attached hereto as **Exhibit D**, through which the Buyer agreed to acquire substantially all of the Gigi's Debtors' Assets upon the terms of and subject to the Buyer's APA.  The Buyer's APA contemplates that the Buyer's offer will be subject to higher or better offers.

---

[2] Equity Bank is a prepetition secured lender to both Gigi's Cupcakes and Gigi's Operating.

8. Subject to certain adjustments, Buyer proposes to acquire Gigi's Assets for (i) a cash payment of $2 million dollars (the "**Purchase Price**"); and (ii) the assumption of certain liabilities. The Buyer's APA further provides that if Buyer is the Successful Bidder at the conclusion of the auction process described herein, then the Debtors will promptly seek entry of a sale order approving the sale of Gigi's Assets with closing to occur on or before March 31, 2019, provided all the closing conditions set forth in the Buyer APA have been satisfied.

### III. **RELIEF REQUESTED**

9. The Gigi's Debtors propose to sell substantially all of their assets (the "**Gigi's Assets**") to the Buyer pursuant to the Buyer's APA, subject to (i) certain buyer protections set forth herein; and (ii) higher or better offers on substantially the same terms and conditions as the Buyer's offer.

10. While the Debtors believe that the Buyer's APA is reasonable and reflects the best value for Gigi's Assets as of the date of this Motion, the Debtors nevertheless recognize the prudence of placing the Buyer's APA to the test of the broader public marketplace in connection with these bankruptcy cases. The Debtors believe that the proposed procedures set forth herein provide an appropriate framework for selling Gigi's Assets and will enable the Debtors to review, analyze, and compare all bids received to determine which bid is in the best interests of the Debtors' estates and creditors. Accordingly, the Debtors are requesting that the Court approve the proposed procedures and related relief for purposes of soliciting offers to acquire the assets, which acquisition would be consummated through a sale under Bankruptcy Code § 363.

11. Accordingly, the Debtors seek entry of a Bidding Procedures Order approving the following buyer protections, Bid Procedures and proposed sale process (the "**Sale Process**") on an expedited basis as summarized below[3]:

### *Provisions Governing Qualifications of Bidders and Bids*

- Parties who may be interested in purchasing the Assets should contact Dawn Ragan, Chief Restructuring Officer ("**Ragan**" or "**CRO**"), email: dawn.ragan@cr3partners.com, and request a nondisclosure agreement (a "**NDA**"). Upon execution of a NDA, parties will be given access to the Debtors' data room and may begin conducting due diligence.

- **Break-Up Fee**: In the event that another party submits a Qualified Bid (as defined below) that is approved by the Court as the highest bid and such party consummates its purchase of Gigi's Assets (an "**Alternate Transaction**"), which is approved by the Court, Debtors, as sellers, shall pay to the Buyer a breakup fee in the amount of $50,000.00 in cash at the closing of the Alternate Transaction from the proceeds of such transaction (the "**Break-Up Fee**"). The Buyer shall be permitted to a credit for the full amount of the Break-Up Fee at the Auction (as defined below) in each round of bidding in which the Buyer participates;

- Buyer has deposited the sum of $100,000 to be held in the trust account of Kelly Hart and Hallman LLP. The deposit is fully-refundable in the event the sale to Buyer does not close for any reason;

- Qualified Bidders. In order to qualify as a Qualified Bidder (as defined below) each bidder must (i) electronically submit any offer for the Assets in writing to Dawn Ragan, Chief Restructuring Officer, email: dawn.ragan@cr3partners.com, prior to **March 20, 2019 at 5:00 p.m. (Central Time)** ("**Bid Deadline**") and (ii) satisfy the following requirements, as determined by the Debtors in their reasonable business judgment (collectively, the "**Bid Requirements**").

  o Each bidder must electronically submit an executed, legally binding, asset purchase agreement (the "**Bidder's APA**") to the attention of the CRO in the same form as the Buyer's APA and be accompanied by a redline of the Bidder's APA against the Buyer's APA to show any changes from the Buyer's APA and be in an amount that equals or exceeds the sum of the proposed purchase price described in the Buyer's APA plus the amount of the Break-Up Fee;

---

[3] This summary is qualified in its entirety by the Bid Procedures set forth in Exhibit 1 to the proposed Bidding Procedures Order. To the extent there are any conflicts or inconsistencies between this summary and the Bidding Procedures, the terms of the Bidding Procedures shall govern in all respects.

     o  Each competing bid must provide a $100,000 cash deposit to be wired to the Debtors' counsel at the time a bid is submitted ("**Good Faith Deposit**"), pursuant to wiring instructions posted in the data room;

     o  Each competing bid must be irrevocable and will not be allowed a break-up fee;

     o  Each bidder must provide proof of funds sufficient to demonstrate financial wherewithal to close a cash transaction as shall be determined in the sole discretion of the CRO; and

     o  Each competing bid must contain no contingencies other than those contained in the Buyer's APA.

- Notice of Qualified Bidders. The CRO shall notify each Qualified Bidder that such party is a Qualified Bidder. The Buyer shall be deemed a Qualified Bidder.

- Between the date that the Debtors notify a potential bidder that it is a Qualified Bidder and the Auction, if any, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder.

- Credit Bidding. Equity Bank and Happy State Bank shall be entitled to credit bid all or a portion of their outstanding obligations with respect to their individual collateral under their pre-petition loan documents with Debtors in accordance with § 363(k) of the Bankruptcy Code, and shall each be deemed to be a "Qualified Bidder" for all purposes herein. In the event that Equity Bank or Happy State Bank individually have stipulated liens on Assets reasonably valued at $100,000 or more and they elect to credit bid, they shall not be required to make a Good Faith Deposit. In the event such Credit Bidder is the Successful Bidder at the Auction, or otherwise becomes the Successful Bidder, the Credit Bidder must provide Debtors with funds necessary to pay the Break-Up Fee to the Buyer.

### *Auction*

- Auction. In the event that the Debtors receive more than one Qualified Bid, the Debtors shall conduct an Auction. The Auction will start on **March 25, 2019 at 1:00 p.m. (Central Time)** at the offices of Kelly Hart & Hallman. To participate in the Auction, each prospective purchaser must be a Qualified Bidder. Each Qualified Bidder must have at least one (1) individual representative with authority to bind the Qualified Bidder attend the Auction in person, provided however, (i) the CRO shall have the authority to permit a bidder to participate telephonically in her sole discretion and (ii) the Buyer and its representatives shall be permitted to participate telephonically. Only Qualified Bidders and their legal and financial advisors shall be entitled to attend and/or bid at the Auction, in addition to the Debtors' secured lenders and a representative of the Office of the U.S. Trustee being allowed to attend.

o Debtors shall arrange for a court reporter to attend and record the general Auction and bidding. The CRO shall conduct the Auction, and provide all bidders with instructions at least two (2) business days prior to commencing the Auction.

o The Buyer's APA shall constitute the **Baseline Bid** for purposes of the Auction. The Baseline Bid shall be subject to higher or better bids at the Auction, as described further below

o A Qualified Bidder wishing to submit a bid at the Auction must submit a bid of at least $100,000 more than the Purchase Price set forth in the Buyer's Baseline Bid (inclusive of the Break-Up Fee) (the "**Minimum Overbid**").

o Subject to the Minimum Overbid, Qualified Bidders may submit successive bids which shall be in increments of $100,000 (the "**Incremental Bid Amount**") for the purchase of the Assets until there is only one offer that the Debtors determine, subject to Court approval, is the highest or best offer for such assets (a "**Successful Bid**" and such bidder, the "**Successful Bidder**"). The second highest or best bid, to the extent determined to be acceptable to the Debtors shall be deemed to be the backup bid (the "**Backup Successful Bid**" and such Bidder, the "**Backup Successful Bidder**").

o The CRO shall close the Auction subsequent to completion of the bidding process.

o All bids made at the Auction shall remain open until the earlier of (i) if the bidder submits the Successful Bid or is deemed to be the Backup Successful Bidder, thirty (30) days after the entry of the Sale Order by the Court, and (ii) if the Qualified Bidder is not selected as a Successful Bidder or the Backup Successful Bidder, three (3) days after the close of the Auction.

- <u>Highest or Best Bid</u>. At all times during the proposed sale process, the Debtors shall retain full discretion and right to determine which bid or bids constitutes the highest or otherwise best offer for the purchase of the Assets and which bid or bids should be selected as the Successful Bid(s), if any, all subject to final approval by the Court pursuant to the provisions of § 363(b) of the Bankruptcy Code.

- <u>Proceeds</u>. All valid and properly perfected liens against the Assets shall attach to the proceeds of the sale of such Assets, exclusive of the Break-Up Fee.

- <u>Reservation of Rights</u>. The Debtors reserve the right to modify these Bidding Procedures with the prior consent of the Buyer at or prior to the Auction, including, without limitation, extending the deadlines set forth herein with respect to any or all potential bidders and bidders, imposing additional terms and conditions with respect to any or all potential bidders and bidders, adjourning or cancelling the Auction at or prior to the Auction and/or adjourning the Sale Hearing.

### *Sale Hearing*

- <u>Sale Hearing</u>. Following the conclusion of the Auction, the Debtors will present the Successful Bid(s) for approval by the Court pursuant to the provisions of §§ 105, 363(b), 363(f), 363(m), 363(n), and 365 of the Bankruptcy Code at the Sale Hearing to be held on **March 28, 2019 at 1:30 p.m.** The Debtors shall be deemed to have accepted a bid only when the bid has been approved by the Court. Upon the failure to consummate a sale of the Assets after the Sale Hearing because of the occurrence of a breach or default by the proposed purchaser under the terms of the Successful Bid, the Backup Successful Bid shall be deemed the Successful Bid without further order of the Court, and the parties shall be authorized to consummate the transaction contemplated by the Backup Successful Bid.

- <u>Sale Implementation</u>. Following the approval of the Successful Bid(s) at the Sale Hearing, the Debtors will be authorized to take any and all actions necessary and appropriate to facilitate the closing of the sale (the "**Closing**") and implement the transactions contemplated by the proposed sale to the Buyer or Successful Bidder ("**Purchaser**").

### *Notice Procedures*

- <u>Notice of Auction and Sale Hearing</u>. After entry of the Bidding Procedures Order, Bidding Procedures and Notice of Auction and Sale, the Debtors will cause a copy of the Bidding Procedures Order to be served by first-class mail, postage prepaid, or electronic transmission, upon: (i) entities currently known by the Debtors to have expressed an interest in a transaction with respect to the Assets during the marketing process; (ii) all state and local taxing authorities or recording offices which have a reasonably known interest in the relief requested, as well as all state and local offices which oversee or reasonably could oversee Debtors' escheatment obligations, if any; (iii) all non-Debtor parties to relevant contracts or leases (executory or otherwise); (iv) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Assets; (v) all known creditors of the Gigi's Debtors; and (vi) upon all parties set forth in the Debtors' Official Service List maintained in these cases (to the extent any party to receive notice thereby would not receive notice pursuant to sections (i) through (v) above).

- <u>Assumption and Assignment Notice</u>. As soon as is practicable after entry of the Bidding Procedures Order, the Debtors will serve the **Assumption and Assignment Notice**, substantially in the form attached hereto as **Exhibit C**, by first-class mail, postage prepaid, facsimile, electronic transmission, or overnight mail on (a) each counterparty under each potential assumed and assigned contract and lease ("**Contract Counterparty**") and (b) its attorney, if known, in each case, at the last known address available to the Debtors. The Assumption and Assignment Notice shall set forth the following information: (i) the contract(s) and/or lease(s) that may be assumed by the Debtors and assigned to the Successful Bidder(s) ("**Assumed and**

**Assigned Contracts**"); (ii) the name and address of the Contract Counterparty thereto; (iii) the amount, if any, determined by the Debtors to be necessary to be paid to cure any existing default in accordance with §§ 365(b) and 365(f)(2) of the Bankruptcy Code (the "**Cure Amount**"); and (iv) the deadlines by which any such Contract Counterparty must file an objection to the proposed assumption and assignment of any contract or lease, provided, however, that the presence of any contract or lease on the Assumption and Assignment Notice does not constitute an admission that such contract or lease is an executory contract or unexpired lease.

- As soon as practicable after the conclusion of the Auction, the Debtors shall file with the Court and serve by facsimile, electronic transmission, overnight, or first-contract mail on the Contract Counterparty (and its attorney, if known) to each assumed and assigned contract or lease a notice: (a) identifying the Successful Bidder(s); and (b) stating which contract(s) and/or lease(s) will be assumed and assigned thereto.

12. In addition to the entry of the Bidding Procedures Order, the Debtors request that after the Sale Hearing, the Court enter a final Sale Order:

- authorizing and approving the sale of Gigi's Assets to Buyer subject to the Buyer's APA or such other form of asset purchase agreement between the Debtors and the Successful Bidder after Auction free and clear of all liens, claims, encumbrances, and other interests;

- authorizing and approving the assumption and assignment of certain executory contracts and unexpired leases including Cure Amounts; and

- subject only to the liabilities specifically assumed pursuant to the Buyer's APA (or Successful Bidder's APA).

## IV. BASIS FOR RELIEF REQUESTED

### A. THE PROPOSED SALE PROCESS IS APPROPRIATE

13. Pursuant to § 363 of the Bankruptcy Code, a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). In such circumstances, in order for a debtor to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification, good business judgment, or sound business reasons for using, selling or leasing the property outside of the ordinary course of business. *See In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011); *In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010). Furthermore, Federal Rule of

Bankruptcy Procedure 6004(f)(1) ("**Bankruptcy Rules**") provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." FED. R. BANKR. P. 6004(f)(1). A debtor has broad discretion in determining the manner in which assets are sold. *Berg v. Scanlon (In re Alisa P'ship)*, 15 B.R. 802 (Bankr. D. Del. 1981).

14. The Debtors' decision to sell the Gigi's Assets is based upon the sound business judgment of their management. The expedited timetable described herein is critical to a successful resolution of these cases and is necessary to maximize recovery to the Debtors' creditors. As a result, time is of the essence to maximize asset value for creditors.

15. The implementation of competitive bidding procedures to facilitate the sale of debtor's assets outside of the ordinary course of a debtor's business is routinely approved by bankruptcy courts as a means of ensuring that such sale will generate the highest or otherwise best return for a debtor's estate. The Debtors submit that the foregoing Bidding Procedures and the opportunity for competitive bidding embodied therein are reasonable and designed to maximize the value of Gigi's Assets and should, therefore, be approved by this Court.

16. Given the Debtors' current liquidity constraints, the Debtors believe that a prompt sale process is the best way to maximize the value of the Assets for the benefit of the Debtors' estates, creditors and other stakeholders. Because the Debtors' are required under the final cash collateral order to sell Gigi's Assets by March 31, 2019, any delay in the sale process will jeopardize Debtors' ability to maximize value for the benefit of all creditors.

17. Accordingly, in the exercise of their reasonable business judgment, the Debtors have concluded that: (a) a prompt sale of the Assets is the best way to maximize value for their estates; and (b) the proposed Bidding Procedures and Sale Process described herein are the most effective method of obtaining the highest or otherwise best offer for the Assets.

**B.**    **SALE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS**

18.    The Debtors may sell property of the estate free and clear of liens and other interests if at least one standard set forth in 11 U.S.C. § 363(f)(1)-(5) is met.  Under § 363(f)(2), the debtor "may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if . . . such entity consents."  11 U.S.C. § 363(f)(2).

19.    In this case, the Debtors are not aware of any liens on the Gigi's Assets other than: (i) the liens of Equity Bank, the pre-petition lender for Gigi's Cupcakes and Gigi's Operating, LLC; (ii) liens of Happy State Bank on certain equipment owned by Gigi's Operating and Gigi's Operating II; and (iii) ad valorem taxing authorities ("**Taxing Authorities**").

20.    The Debtors believe that Equity Bank and Happy State Bank will consent to the proposed sale.  Both Equity Bank and Happy State Bank will retain their rights to credit bid under 11 U.S.C. § 363(k).  Furthermore, Debtors believe that the Taxing Authorities will consent to the sale because they will be paid in full from sale proceeds for all taxes due.

**C.**    **ASSUMPTION AND ASSIGNMENT OF CERTAIN LEASES**

21.    In addition, to facilitate the sale, assumption, and assignment of the leases and contracts to be assumed and assigned (the "**Assumed and Assigned Contracts**"), the Debtors propose to serve the proposed Assumption and Assignment Notice as soon as practicable after the entry of the Bidding Procedures Order and request that the Court approve the following procedures for fixing any Cure Amounts owed on Assumed and Assigned Contracts.  The Assumption and Assignment Notice shall set forth the following information:

    i.    the contract(s) and/or lease(s) that may be assumed by the Debtors and assigned to the Successful Bidder(s);

    ii.    the name and address of the contract/lease counterparty thereto;

    iii.    notice of the proposed effective date of the assignment (subject to the right of the Debtors and Purchaser to withdraw such request for assumption and assignment prior to Closing);

    iv.    the Cure Amount, if any, determined by the Debtors necessary to be paid to cure any existing default in accordance with § 365(b) and 365(f)(2) of the Bankruptcy Code; and

    v.    the deadlines by which any such counterparty must file an objection to the proposed assumption and assignment.

22.    All objections to the assumption and assignment of any lease or contract, including without limitation any objection to the Debtors' proposed Cure Amount or the provision of adequate assurance of future performance pursuant to § 365 of the Bankruptcy Code must be filed no later than **March 15, 2019 ("<u>Objection Deadline</u>").**

23.    If no objection is timely and properly filed and served by the Objection Deadline, (a) the Cure Amount set forth in the Assumption and Assignment Notice shall be controlling notwithstanding anything to the contrary in any contract or lease or other document and the non-Debtor party to the contract or lease shall be forever barred from asserting any other claim or alleged breach arising prior to the assignment against the Debtors or Purchaser as to such contract or lease assumed and assigned, and (b) the Purchaser's promise to perform under the contract or lease shall be deemed adequate assurance.  Notwithstanding the foregoing, the parties-in-interest may negotiate a lower Cure Amount in their sole discretion.

24.    To the extent the Debtors dispute any cure claim, such dispute shall be presented to the Court at the Sale Hearing, or such earlier date as the Debtors and the objector may agree or the Court may order, and provided the Court resolves such dispute, it shall not affect in any way the effectiveness of any assumption and assignment of a contract or lease.  All Cure Amounts shall be paid by the Debtors from the Purchase Price.

25.     If at any time after the entry of the Bidding Procedures Order the Debtors identify additional prepetition executory contracts and/or leases to be assumed and assigned to the Purchaser, the Debtors shall serve a supplemental Assumption and Assignment Notice by first class mail, or electronic transmission on each counterparty (and its attorney, if known) to each supplemental contract or lease to be assumed at the last known address available to the Debtors.

26.     Unless the counterparty or any other entity properly files an objection to the supplemental Assumption and Assignment Notice within the earlier of: i) ten (10) days of the date of the supplemental Assumption and Assignment Notice; or ii) March 25, 2019, the Debtors may assume and assign the contract or lease, subject to the occurrence of the Closing, without further order or notice of hearing. If an objection is timely filed and served and objection cannot be resolved consensually, then the Debtors will request that the Court schedule a hearing to consider the objection.

27.     As soon as practicable after the conclusion of the Auction, if held, the Debtors shall file with the Court and serve by electronic transmission, or first class mail on the contract or lease counterparty (and its attorney, if known) to each Assumed and Assigned Contract a notice: (a) identifying the Successful Bidder(s); and (b) stating which contract(s) and/or lease(s) will be assumed and assigned thereto.

28.     Under Bankruptcy Code § 365(a), a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Bankruptcy Code § 365(b)(1), in turn, codifies the requirements for assuming an executory contract of a debtor. This subsection provides:

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1). Section 365(f)(2) of the Bankruptcy Code provides, in pertinent part, that:

The trustee may assign an executory contract or unexpired lease of the debtor only if --

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

29.     The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *EBG Midtown S. Corp. v. McLaren/Hart Envtl. Eng' Corp. (In re Sanshoe Worldwide Corp.)*, 139 B.R. 585, 593 (S.D.N.Y. 1992).

30.     Among other things, adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g., In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance present when prospective assignee of lease from debtor has financial resources and has expressed willingness to devote sufficient funding to the business to give it a strong likelihood of succeeding).

31. To the extent any defaults exist under any Assumed and Assigned Contracts, any such default will be promptly cured or adequate assurance that such default will be cured will be provided prior to the assumption and assignment, unless more favorable treatment for the Debtor is agreed to by the parties. If necessary, the Debtors will submit facts prior to or at the Sale Hearing to show the financial capability of the Buyer or Successful Bidder and willingness and ability to perform under the assumed and assigned contracts and leases. The Sale Hearing will therefore provide the Court and other interested parties the opportunity to evaluate and, if necessary, challenge the ability of the Purchaser to provide adequate assurance of future performance as required under § 365(b)(1)(C) of the Bankruptcy Code.

32. Debtors submit that it is an exercise of their sound business judgment that the assumption, assignment, and sale of contracts and leases is in the best interests of the Debtors, their estates, their creditors, and all parties in interest. The Assumed and Assigned Contracts being assigned to Purchaser are an integral part of the Assets being purchased, and accordingly, such assumption, assignment, and sale of Assumed and Assigned Contracts are reasonable and enhance the value of the Debtors' estates. The Court should therefore authorize the Debtors to assume and assign the Assumed and Assigned Contracts as set forth herein.

**D.  NOTICE**

33. After entry of the Bidding Procedures Order, the Debtors will cause a copy of the Bidding Procedures Order, Bidding Procedures, the Assumption and Assignment Notice and Notice of Auction and Sale Hearing to be served by first-class mail, postage prepaid, facsimile, or electronic transmission, or overnight mail upon:

  i.   all entities currently known by the Debtors to have expressed an interest in a transaction with respect to Gigi's Assets during the marketing process;

ii.    all state and local taxing authorities or recording offices which have a reasonably known interest in the relief requested;

iii.   all state and local offices which oversee or reasonably could oversee Debtors' escheatment obligations, if any

iv.    all non-debtor parties to relevant contracts or leases (executory or otherwise);

v.     all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Assets;

vi.    all known creditors of the Gigi's Debtors; and

vii.   upon all parties set forth in the Debtors' Official Service List maintained in these cases.

## E.    AUTHORITY TO EXECUTE DOCUMENTS NECESSARY TO EFFECTUATE SALE

34.    The Debtors request that the Court authorize them to execute such documents necessary to effectuate the proposed sale on an interim basis, including an asset purchase agreement with the Successful Bidder.

## F.    WAIVER OF THE 14-DAY STAYS UNDER RULE 6004(h) AND 6006(d)

35.    Pursuant to Bankruptcy Rule 6004(h), unless the Court orders otherwise, all orders authorizing the sale of property pursuant to § 363 of the Bankruptcy Code are automatically stayed for fourteen (14) days after entry of the order. Similarly, under Bankruptcy Rule 6006(d), unless the Court orders otherwise, all orders authorizing the assignment of contracts or unexpired leases are automatically stayed for fourteen (14) days after entry of the order. The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented. *See* Advisory Committee Notes to FED. R. BANKR. P. 6004(h); Advisory Committee Notes to FED. R. BANKR. P. 6006(d).

36.    Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day

stay period, commentators agree that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately where there has been no objection to the procedure. *See generally* 10 COLLIER ON BANKRUPTCY ¶ 6004.09 (15th ed. 1999).  Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time necessary to file such appeal. *Id.*

37.    Because of the potentially diminishing value of the Assets and consistent with the Debtors' use of cash collateral, the Debtors must close this sale on or before March 31, 2019. Thus, waiver of any applicable stays is appropriate in this circumstance.

## V.    REQUEST FOR RELIEF

The Debtors request that the Court:  (i) set a hearing on an expedited basis for February 28, 2019 at 1:30 p.m. to approve the requested buyer protections, Bid Procedures and Sale Process; (ii) set the Sale Hearing for March 28, 2019 at 1:30 p.m. to consider final approval of the sale of Gigi's Assets to Buyer or a party submitting a higher or better offer; (iii) approve the sale of Gigi's Assets; (iv) waive the 14-day stays imposed by Bankruptcy Rule 6004(h) and 6006(d) to allow for closing on or before March 31, 2019, unless subsequently extended; (v) approve the assumption and assignment of leases and contracts in connection with the sale; (vi) approving the form and manner of notice for the sale, bid procedures, and assumption and assignment of contracts and leases; and (vii) grant any further relief to which the Debtors may be justly entitled.

Respectfully submitted,

By:   */s/ Michael A. McConnell*
Michael A. McConnell
Texas Bar I.D. 13447300
michael.mcconnell@kellyhart.com
Nancy Ribaudo
Texas Bar I.D. 24026066
nancy.ribaudo@kellyhart.com
Katherine T. Hopkins
Texas Bar I.D. 24070737
katherine.hopkins@kellyhart.com
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone:   817/332-2500
Telecopy:   817/878-9774

*Proposed Counsel for Debtors*

2872625.8

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2019, I caused a true and correct copy of the foregoing document to be served via first class mail and/or ECF if available, upon all parties on the Official Service List (attached for filing purposes only) and electronically via e-mail or ECF to the parties listed below.

MTY Franchising USA, Inc.
Attn:  Jenny Moody/Laura Kuhse
9311 E. Via De Ventura
Scottsdale, AZ  85258

Edward J. Nazar
W. Thomas Gilman
Hinkle Law Firm LLC
1617 North Waterfront Parkway, Suite 400
Wichita, KS  67206-6639
          *Counsel for Equity Bank*

Toby L. Gerber
John N. Schwartz
Norton Rose Fulbright US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX  75201-7932
          *Counsel for Equity Bank*

Jeff Carruth
Weycer, Kaplan, Pulaski & Zuber
3030 Matlock Rd., Ste. 201
Arlington, TX  76015
          *Counsel for Happy State Bank*

Office of the United States Trustee
Attn:  Erin Schmidt
Earle Cabell Federal Building
1100 Commerce Street, Room 976
Dallas, TX  75242

                                          */s/ Michael A. McConnell*
                                          Michael A. McConnell

*Sovrano, LLC, et al.*
**Case No. 19-40067-11**
**Official Service List**
02/22/2019

### DEBTORS' COUNSEL

Sovrano, LLC
Mr. Gatti's, LP
Gatti's Great Pizza, Inc.
Gigi's Cupcakes, LLC
Gigi's Operating, LLC
Gigi's Operating II, LLC
c/o Michael McConnell
Nancy Ribaudo
Katherine Hopkins
Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102

### OFFICERS/DIRECTORS/OWNERS

Kyle C. Mann
P.O. Box 470099
Fort Worth, TX 76147

Robert J. Phillips, Jr.
c/o John Y. Bonds, III
H. Brandon Jones
Bonds Ellis Eppich Schafer Jones LLP
420 Throckmorton Street, Suite 1000
Fort Worth, TX 76102
*Via ECF*

Dawn Ragan
c/o Sovrano, LLC
550 Bailey Avenue, Suite 650
Fort Worth, TX 76107

### SECURED CREDITORS

Equity Bank
c/o Edward J. Nazar
W. Thomas Gilman
Hinkle Law Firm LLC
1617 North Waterfront Parkway, Suite 400
Wichita, KS 67206-6639
*Via ECF*

Equity Bank
c/o Toby L. Gerber
John N. Schwartz
Norton Rose Fulbright US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
*Via ECF*

Happy State Bank
c/o Jeff Carruth
Weycer, Kaplan, Pulaski & Zuber
3030 Matlock Rd., Ste. 201
Arlington, TX 76015
*Via ECF*

JPMorgan Chase Bank, N.A.
1111 Polaris Parkway
Suite A3 (OHI-1085)
Columbus, OH 43240

## GOVERNMENTAL ENTITIES

Internal Revenue Service
Special Procedures – Insolvency
P.O. Box 7346
Philadelphia, PA 19101-7346

Office of the United States Trustee
Attn: Lisa L. Lambert
Earle Cabell Federal Building
1100 Commerce Street, Room 976
Dallas, TX 75242

State Comptroller of Public Accts.
Rachel R. Obaldo
Assistant Attorney General
Bankruptcy & Collection Division MC 008
P. O. Box 12548
Austin, TX 78711-2548
*Via ECF*

Texas Workforce Commission
TEC Building – Bankruptcy
101 East 15th St.
Austin, TX 78778

State of Texas
Texas Comptroller of Public Accounts
P.O. Box 149348
Austin, TX 78714-9348

Dept. of Finance
State of Delaware
820 N. French St.
Wilmington, DE 19801

## THIRTY LARGEST CREDITORS

544 Center, Ltd.
c/o Jorparks, Inc.
Attn: Shane Jordan
5016 Tennyson Parkway
Plano, TX 75204

Abilene Profit Center, Inc.
2665 Buffalo Gap Road
Abilene, TX 79602

Ad Accountability, LLC
3245 Main Street
Frisco, TX 75034

AIM Solutions, Inc.
12225 Greenville Avenue
Dallas, TX 75243

Alea Properties (USA), LLC
2200 N. Germantown Parkway, Suite 7
Memphis, TN 38106

America's Best Vac. Service LLC
1355 Northwest Parkway
Azle, TX 76020

Capstone Concepts, LLC
6480 Kingston Pike
Knoxville, TN 37919

Chain Distribution Services
6800 Snowden Road
Fort Worth, TX 76140

Chenal Creek, Little Rock AR, LLC
c/o US Property Trust
10250 Constellation Blvd., Suite 2850
Los Angeles, CA 90067
Attn: Matt Kaiser

Dawn Food Products, Inc.
333 Sargent Road
Jackson, MI 49201

Deer Creek Lots 1,3 & 6 07A, LLC
12411 Ventura Blvd.
Studio City, CA 91604

Barrow Family Far West Retail I Limited
Partnership
3633 North Hills Drive
Austin, TX 78731

FCS Fox Commercial Services LLC
PO Box 19047
Austin, TX 78701

Gatti's Management Group
1150 N IH-35 Suite 100
Round Rock, TX 78681

Harbert Rainier Southpark Meadows, LLC
c/o Michael Eric Deitch
The Deitch Law Offices
800 Rio Grande
Austin, TX 78701
*Via ECF*

HCK2 Partners
3875 Ponte Avenue
Addison, TX 75001

HDJ Capital Partners, Ltd.
c/o Brookside Properties, Inc.
2002 Richard Jones Road, Suite 200-C
Nashville, TN 37215

L&B DEPP Inwood Village, LP
c/o Institutional Property Managers, Inc.
Attn: Property Manager
5370 W. Lovers Lane, Suite 326
Dallas, TX 75209

Mission Commons Investors, LLC
4705 Central Street
Kansas City, MO 64112

Morben Realty Co., Inc.
c/o Robert Blackwell
Blackwell, Blackburn & Singer, LLP
7557 Rambler Road, Suite 1450
Dallas, Texas 75231
*Via ECF*

Osndoz, LLC
1161 East Southlake Blvd.
Southlake, TX 76092

Pace Communications, Inc.
1301 Carolina Street
Greensboro, NC 27401

Richland Ferrell L.P.
c/o Christopher J. Moser
S. Kyle Woodard
Quilling, Selander, Lownds, Winslett & Moser, P.C.
2001 Bryan Street, Suite 1800
Dallas, TX 75201
*Via ECF*

Segovia Produce Co., Inc.
4618 East 7th Street
Austin, TX 78702

SWC Poplar FHI Partners
9077 Poplar Avenue, Suite 103
Germantown, TN 38138

TCSH, LP
701 North Post Oak Road, Suite 210
Houston, TX 77024

Texas Electric & Light, LLC
3267 Bee Cave Road, Suite 107-228
Austin, TX 78746

Texas Mutual Ins Co
P.O. Box 841843
Dallas, TX 75284-1843

Toy Factory, LLC
1235 Gembler
San Antonio, TX 78219

WhitleyPenn
1400 West 7th Street, Suite 400
Fort Worth, TX 76102

## NOTICE OF APPEARANCE/ OTHER PARTIES

Gina Butler
c/o Laura L. Worsham
Lynn Warren Schleinat
Jones, Allen & Fuquay, L.L.P.
8828 Greenville Avenue
Dallas, TX 75243

MGUC, LLC, MG Valley, LTD,
MG Harlingen Way, LTD, and MG Paseo
Real, LTD
c/o William H. Daniel
McGinnis Lochridge LLP
600 Congress Avenue, Suite 2100
Austin, TX 78701
*Via ECF*

Tax Appraisal District of Bell County,
The County of Hays, Texas, The County of
Milam, Texas, Central Appraisal District of
Taylor County and The County of
Williamson, Texas
c/o Tara LeDay
McCreary, Veselka, Bragg & Allen, P.C.
P. O. Box 1269
Round Rock, TX 78680
*Via ECF*

Dallas County
Tarrant County
c/o Laurie A. Spindler
Linebarger Goggan Blair & Sampson, LLP
2777 N. Stemmons Freeway, Suite 1000
Dallas, TX 75207
*Via ECF*

San Marcos CISD, City of McAllen,
Hidalgo County
c/o Diane W. Sanders
LINEBARGER GOGGAN BLAIR &
SAMPSON, LLP
PO Box 17428
Austin, TX 78760-7428

MGUC, LLC, MG Valley, LTD,
MG Harlingen Way, LTD, and MG Paseo
Real, LTD
c/o Christopher L. Halgren
McGinnis Lochridge LLP
711 Louisiana Street, Suite 1600
Houston, TX 77002
*Via ECF*

SJ Owners Group, LLC
c/o Mark W. Stout
Jeffrey V. Leaverton
Padfield & Stout, L.L.P.
421 W. Third Street, Suite 910
Fort Worth, TX  76102

Certain Gigi's Cupcakes, LLC Franchisees
c/o Dana Mark Campbell
Staci Bednarski
Ferguson Braswell Fraser Kubasta, P.C.
2500 Dallas Parkway, Suite 600
Plano, Texas 75093

Chain Distribution Services
c/o Darrell W. Cook
Catherine A. Keith
Darrell W. Cook & Associates
A Professional Corporation
6688 North Central Expressway, Suite 1000
Dallas, TX 75206
*Via ECF*

Travis County
c/o Kay D. Brock
Assistant County Attorney
P.O. Box 1748
Austin, TX  78767
*Via ECF*

Richardson ISD
c/o Eboney Cobb
Perdue, Brandon, Fielder, Collins & Mott
500 E. Border Street, Suite 640
Arlington, TX  76010
*Via ECF*

Inland Commercial Real Estate Services, LLC
c/o Russell W. Mills
Bell Nunnally & Martin LLP
2323 Ross Avenue, Suite 1900
Dallas, Texas 75201

Certain Gigi's Cupcakes, LLC Franchisees
c/o Jeffrey Cohen, Esq. (admitted pro hac vice)
Anthony Garcia, Esq. (admitted pro hac vice)
Tammy L. Devlin
Kevin Opp
Cohen, LLC
1600 Broadway, Suite 1660
Denver, CO  80202

Blue Stone Real Estate Group, LP
c/o E. P. Keiffer
Shannon S. Thomas
Rochelle McCullough, LLP
325 North Saint Paul Street, Suite 4500
Dallas, Texas 75201
*Via ECF*

Inland Commercial Real Estate Services, LLC
c/o Kevin M. Newman
Scott L. Fleischer
Barclay Damon LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202