

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 1, 2019**

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | Case No. 19-40067-11 |
| SOVRANO, LLC, *et al.*,[1] | § | |
| | § | Chapter 11 |
| Debtors. | § | |
| | § | (Jointly Administered) |
| _____ | § | |

**ORDER APPROVING SALE AND BIDDING PROCEDURES AND BID PROTECTIONS IN CONNECTION WITH SALE OF GIGI'S ASSETS AND GRANTING**
<u>**RELATED RELIEF**</u>

On February 28, 2019, the Court[2] conducted a hearing to consider the *Expedited Motion Seeking (I) Authority To Sell Substantially All Of The Gigi's Debtors' Assets Free And Clear Of All Liens, Claims, Encumbrances And Other Interests And To Assume And Assign Certain Contracts And Leases, (II) Approval Of Buyer Protections Bidding Procedures And Sale Process*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sovrano, LLC (1470); Mr. Gatti's, LP (0879); Gatti's Great Pizza, Inc. (6061); Gigi's Cupcakes, LLC (8356); Gigi's Operating, LLC (0621); Gigi's Operating II, LLC (8396); and KeyCorp (1251).

[2] Capitalized terms not defined herein shall have the meanings set forth in the Motion.

*(III) Setting Of Final Hearing To Approve Sale; And (IV) Related Relief* (the "**Motion**"), filed by Gigi's Cupcakes, LLC, Gigi's Operating, LLC, and Gigi's Operating II, LLC (collectively, the "**Gigi's Debtors**" and "**Debtors**").

The Court finds that: (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) the relief requested in the Motion is in the best interests of the Debtors, their estates, and their creditors; (iv) proper and adequate notice of the Motion has been given and no other or further notice is necessary; and (v) upon the record herein after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein. Therefore,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW**:

A. This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B. The statutory bases for the relief requested in the Motion are: (i) §§105, 363(b), (f) and (o), and 365 of the Bankruptcy Code and (ii) Rules 2002(a)(2), 6004, and 6006 of the Federal Rules of Bankruptcy Procedure.

C. Notice of the Motion is sufficient in light of the circumstances and the nature of the relief requested in the Motion.

D. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this

proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.

E. The Debtors have articulated good and sufficient reasons for this Court to: (i) approve the proposed Sale Process and Bidding Procedures; (ii) approve the scheduling of an Auction and set the Sale Hearing and approve the manner and form of notices; and (iii) approve the procedures for the assumption and assignment of contracts and leases, including notice of proposed cure amounts.

F. <u>Notice of Sale</u>. This Order, and proposed Bid Procedures, and Notice of the Auction and Sale Hearing are reasonably calculated and sufficient to provide interested parties with timely and proper notice of the proposed sale, including, without limitation: (i) the date, time, and place of the auction (if one is held); (ii) the Bidding Procedures; (iii) the deadline for filing objections to the sale, notice of assumption and assignment of executory contracts and leases, and entry of the final sale order, and the date, time, and place of the Sale Hearing; (iv) identification of the assets to be sold; (v) a description of the sale as being free and clear of liens, claims, encumbrances and other interests, with all such liens, claims, encumbrances and other interests attaching with the same validity and priority to the sale proceeds; and (vi) notice of the proposed assumption and assignment of contracts and leases and no other or further notice of the sale shall be required.

G. <u>Assumption and Assignment Procedures</u>. This Order, assumption and assignment procedures and manner and form of notice set forth herein, are reasonably calculated to provide counterparties to any contracts and/or leases to be assumed by the Debtors and assigned to the Purchaser with proper notice of the intended assumption and assignment, the procedures in connection therewith, and any cure amounts relating thereto.

H. <u>Break-up Fee</u>. The Break-Up Fee in the amount of $50,000 contained in the Asset Purchase Agreement by and between Debtors and MTY Franchising USA, Inc. ("**Buyer**") (the "**Buyer's APA**" or "**Buyer APA**") is to compensate Buyer for its efforts and resources expended and opportunities foregone in connection with the negotiation, preparation, execution, delivery, and attempted performance under the Buyer's APA, is: (i) an actual and necessary cost and expense of preserving the Debtors' estate, within the meaning of § 503(b) of the Bankruptcy Code; (ii) commensurate with the real and substantial benefits conferred upon the Debtors' estates by Buyer; (iii) reasonable and appropriate in light of the size and nature of the proposed sale and comparable transactions; and (iv) necessary to induce Buyer to continue to pursue the sale.

I. Moreover, the approval of the payment of the Break-Up Fee is an essential inducement and condition relating to the Buyer's entry into, and obligations under, the Buyer's APA. The Break-Up Fee induced Buyer to submit a bid that will serve as a minimum or floor bid on which the Debtors, their creditors, and other bidders can rely. The Buyer has provided a material benefit to the Debtors and their creditors by increasing the likelihood that the best possible price for the Assets will be received. Accordingly, the Break-Up Fee is reasonable and appropriate and represents the best method for maximizing value for the benefit of the Debtors' estate.

J. Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1. The Motion is granted as provided herein. All capitalized terms used herein but otherwise not defined shall have the meanings set forth in the Motion or the Bidding Procedures, as applicable.

2. All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion, are overruled.

**A. Important Dates and Deadlines**

3. <u>Sale Hearing</u>. The Sale Hearing shall commence on **March 28, 2019, at 1:30 p.m. (Central Time)** before the Honorable Edward L. Morris, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Northern District of Texas-Fort Worth Division, 501 West Tenth Street, Room 204, Fort Worth, Texas 76102. The Debtors may adjourn the Sale Hearing without further notice other than by announcement in open Court or on the Court's calendar.

4. <u>Objection Deadline</u>. Objections, if any, to the sale of the Assets, the assumption and assignment of contracts and leases (including proposed cure amounts), or any relief requested in the Motion other than the relief granted by this Court in this Bidding Procedures Order, must be filed with the Clerk of the Bankruptcy Court Northern District of Texas-Fort Worth Division, 501 West Tenth Street, Room 147, Fort Worth, Texas 76102 and served so that it is received by Debtors' counsel, no later than **5:00 p.m. (Central Time) on March 15, 2019** (the "**Objection Deadline**"). The failure of any objecting person or entity to file its objections by the Objection Deadline will be a bar to the assertion, at the Sale Hearing or thereafter, of any objection (including to the sale of Assets, and assumption and assignment of leases and contracts for the cure amounts proposed, free and clear of liens, claims, encumbrances and interests) and shall be deemed to constitute any such party's consent to the entry of the Sale Order authorizing

consummation of the sale and all transactions related thereto, including, without limitation, the assumption and assignment of contracts and leases.

5. Notwithstanding the foregoing paragraph, the deadline shall be **noon (Central Time) on March 27, 2019**, for filing and serving: (i) an objection to the assumption and assignment of an executory contract or unexpired leases by the Successful Bidder in the event the Successful Bidder after Auction is other than the Buyer; (ii) an objection to the ability of such other Successful Bidder (other than Buyer) to close the contemplated sale transaction; and (iii) an objection to the conduct of the Auction. Such objections must be filed with the Clerk of the Bankruptcy Court for the Northern District of Texas-Fort Worth Division, 501 West Tenth Street, Room 147, Fort Worth, Texas 76102, and served so that it is received by Debtors' counsel no later than the foregoing deadline**.**

6. Bid Deadline. All bids by any third party that is interested in acquiring some or all of the Assets must be actually received by the parties specified in the Bidding Procedures on or prior to **March 20, 2019 at 5:00 p.m. (Central Time)** (the "**Bid Deadline**").

7. Auction. If necessary, an Auction with respect to the Assets will be held at the offices of Kelly Hart & Hallman, Fort Worth, Texas on **March 25, 2019 at 1:00 p.m. (Central Time)**. Only Qualified Bidders and their legal and financial advisors shall be entitled to attend and/or bid at the Auction, in addition to the Debtor's secured lenders and a representative of the Office of the U.S. Trustee, who shall be entitled to attend.

**B.     Auction, Bidding Procedures, and Related Relief**

8. The Bidding Procedures, attached hereto as Exhibit 1, are hereby authorized approved and made part of this Order as if fully set forth herein. The Bidding Procedures shall govern the submission, receipt, and analysis of all bids relating to the proposed sale of Gigi's Assets. Any party desiring to bid on the Assets shall comply with the Bidding Procedures and

this Order. The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

9. In the event that the Debtors timely receive one or more Qualified Bids with respect to the Assets other than the Buyer APA, an auction shall be scheduled to request additional competitive Bids from Qualified Bidders with respect to the Assets in accordance with the Bidding Procedures. All bids must be for all Assets subject to the Buyer's APA. Bids for individual assets shall not be considered.

10. If the Debtors do not receive any Qualified Bids with respect to the Assets other than the Buyer's APA, the Debtors shall report the same to the Court and no auction shall be held. In such circumstances, the Debtors shall promptly proceed to seek entry of the appropriate order approving the sale to Buyer pursuant to the Buyer APA.

11. Subject to the final determination of this Court, the Debtors are authorized to determine, in their business judgment and pursuant to the Bidding Procedures and this Order, the highest or otherwise best bid and the Successful Bidder or Backup Successful Bidder.

12. The Debtors are authorized to pay, without further order of the Court, to the Buyer the Break-Up Fee in the event that such Break-Up Fee is payable under the terms of the Buyer's APA and the Bidding Procedures.

**C. Assumption and Assignment Procedures**

13. The following procedures regarding the assumption and assignment of the contracts and leases in connection with the sale are hereby approved, and shall govern the assumption and assignment of all contracts and leases proposed to be assumed by the Debtors pursuant to § 365(b) of the Bankruptcy Code and assigned to the ultimate purchaser of Gigi's Assets ("**Purchaser**") following a sale pursuant to § 365(f) of the Bankruptcy Code (as defined in the Motion, the "**Assumed and Assigned Contracts**").

14. On March 1, 2019, the Debtors shall serve on all contract and lease counterparties (each a "**Counterparty**") an Assumption and Assignment Notice substantially in the form attached to the Motion as Exhibit C, that identifies, to the extent applicable, (i) the contract(s) and/or lease(s) that may be assumed by the Debtors and assigned to the Buyer or Successful Bidder(s); (ii) the name and address of the counterparty thereto; (iii) notice of the proposed effective date of the assignment (subject to the right of the Debtors and Purchaser to withdraw such request for assumption and assignment) prior to the Closing); (iv) the amount, if any, determined by the Debtors to be necessary to be paid to cure any existing default in accordance with §§ 365(b) and 365(f)(2) of the Bankruptcy Code (the "**Cure Amount**"); and (v) the deadlines by which any such Counterparty must file an objection to the proposed assumption and assignment of any Assumed and Assigned Contract; provided, however, that the presence of any contract or lease on an Assumption and Assignment Notice does not constitute an admission that such contract or lease is an executory contract or unexpired lease.

15. All objections to any assumption and assignment of any lease or contract, including without limitation any objection to the Debtors' proposed Cure Amount or the provision of adequate assurance of future performance pursuant to § 365 of the Bankruptcy Code must be filed no later than the Objection Deadline.

16. If no objection is timely and properly filed and served by the applicable objection deadline set forth herein, then (a) the Cure Amount set forth in the Assumption and Assignment Notice shall be controlling notwithstanding anything to the contrary in any contract or lease or other document and the non-Debtor party to the contract or lease shall be forever barred from asserting any other claim or alleged breach arising prior to the assignment against the Debtors or Purchaser or Purchaser's affiliates as to such contract or lease assumed and assigned, and (b) the

Purchaser's or Purchaser's affiliate's promise to perform under the contract or lease shall be deemed adequate assurance. Notwithstanding the foregoing, the parties-in-interest may negotiate a lower Cure Amount in their sole discretion.

17. To the extent the Debtors dispute any cure claim, such dispute shall be presented to the Court at the Sale Hearing, or such earlier date as the Debtors and the objector may agree or the Court may order, but such dispute shall not affect in any way the effectiveness of any assumption and assignment of a contract or lease. All Cure Amounts shall be paid by the Debtors from the Purchase Price.

18. If at any time after the entry of the Bidding Procedures Order the Debtors identify additional prepetition executory contracts and/or leases that may be assumed and assigned, the Debtors shall serve a supplemental Assumption and Assignment Notice by first class mail, or electronic transmission on each counterparty (and its attorney, if known) to each supplemental contract or lease to be assumed at the last known address available to the Debtors. Unless the counterparty or any other entity properly files an objection to the supplemental Assumption and Assignment Notice within the earlier of: **(i) ten (10) days of the date of the Assumption and Assignment Notice; or (ii) March 25, 2019 at 5:00 p.m. (Central Time)** the Debtors may assume and assign the contract or lease, subject to the occurrence of the Closing, without further order or notice of hearing. If an objection is timely filed and served and objection cannot be resolved consensually, then the Debtors will request that the Court schedule a hearing to consider the objection.

19. If an Auction is held, then on March 26, 2019, after the conclusion of the Auction, the Debtors shall file with the Court and serve by electronic transmission, or first class mail on the contract or lease Counterparty (and its attorney, if known) to each Assumed and Assigned

Contract a notice: (a) identifying the Successful Bidder(s); (b) stating which contract(s) and/or lease(s) will be assumed and assigned thereto; and (c) containing a statement as to the Successful Bidder(s)' ability to perform the Debtors' obligations under the applicable Assumed and Assigned Contracts.

20. In the event the Successful Bidder after the Auction is other than Buyer, then each Counterparty to an Assumed and Assigned Contract shall have until **March 27, 2019 at noon (Central Time**) to file an objection to the proposed assumption and assignment of contracts and leases by such Successful Bidder.

**D.     Notice**

21. On March 1, 2019, the Debtors shall cause a copy of the Bidding Procedures Order, Bid Procedures, Assumption and Assignment Notice and Notice of Auction and Sale Hearing to be served by first-class mail, postage prepaid or electronic transmission mail upon:

   i. all entities known by the Debtors to have expressed an interest in a transaction with respect to the Assets during the marketing process;

   ii. all state and local taxing authorities or recording offices, which have a reasonably known interest in the relief requested;

   iii. all state and local offices which oversee or reasonably could oversee Debtors' escheatment obligations, if any;

   iv. all non-debtor parties to relevant contracts or leases (executory or otherwise);

   v. all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Assets;

   vi. all known creditors of the Gigi's Debtors; and

   vii. upon all parties set forth in the Debtors' Official Service List maintained in these cases.

22. On March 22, 2019, Debtors shall file with the Court and serve by facsimile, electronic transmission, overnight, or first-contract mail on: i) the Contract Counterparty (and its attorney, if known) to each contract and lease that may be assumed and assigned; ii) Buyer; and

iii) all parties set forth in the Debtors' Official Service List maintained in these cases, a notice identifying all Qualified Bidders.

23. On March 26, 2019, following the Auction, the Debtors shall file with the Court and serve by facsimile, electronic transmission, overnight, or first-contract mail on the Contract Counterparty (and its attorney, if known) to each assumed and assigned contract or lease, a notice (a) identifying the Successful Bidder(s); and (b) stating which contract(s) and/or lease(s) will be assumed and assigned thereto. Such notice shall also be served on: (i) Buyer; (ii) all state and local taxing authorities or recording offices which have a reasonably known interest in the relief requested or jurisdictions' offices which oversee or reasonably could oversee Debtors' escheatment obligations; (iii) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Assets; (iv) all known creditors of the Gigi's Debtors; and (v) upon all parties set forth in the Debtors' Official Service List maintained in these cases

### E. Miscellaneous

24. The Debtors are authorized to take all actions necessary and appropriate to implement and effectuate the relief granted pursuant to this Order in accordance with the Motion and to expend such sums of money and do other things as may be necessary and appropriate to comply with the requirements established by the Bidding Procedures and this Order.

25. The Debtors shall submit to the Court the proposed Sale Order approving the sale prior to the Sale Hearing which has been approved by counsel for the Buyer.

26. In the event of any conflict between this Order and any applicable Qualified APA (as defined in the Bidding Procedures), the terms of this Order shall control.

27. Any stay of this Order, whether arising from Rules 6004 and/or 6006 of the Federal Rules of Bankruptcy Procedure or otherwise, is hereby expressly waived and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

28. This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

### END OF ORDER ###

**Exhibit 1**

**Bidding Procedures**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In Re: | § § | |
| | § | Case No. 19-40067-11 |
| SOVRANO, LLC, *et al.*,³ | § § | Chapter 11 |
| Debtors. | § § | |
| | § | (Jointly Administered) |
| _____ | § | |

## BIDDING PROCEDURES

On March 1, 2019, the United States Bankruptcy Court for the Northern District of Texas (the "Court") entered the *Order Approving Sale and Bidding Procedures and Bid Protections in Connection with the Sale of Gigi's Assets and Granting Related Relief* [Docket No. __] (the "**Bid Procedures Order**") approving the following procedures (the "**Bidding Procedures**") by which Gigi's Cupcakes, LLC, Gigi's Operating, LLC, and Gigi's Operating II, LLC (collectively, the "**Debtors**") are authorized to conduct a sale of substantially all of their assets.

1. **Property to be Sold**

The Assets consist of substantially all of the Gigi's Debtors' assets, primarily consisting of the Gigi's franchise system, brand name, other intellectual property and certain corporate owned/operated stores (collectively, the "**Assets**"). The Assets will be sold free and clear of all liens, claims, encumbrances and other interests.

2. **Due Diligence**

Parties who may be interested in purchasing the Assets should contact Dawn Ragan, Chief Restructuring Officer ("**Ragan**" or "**CRO**"), email: dawn.ragan@cr3partners.com, and request a nondisclosure agreement (a "**NDA**"). Upon execution of a NDA, parties will be given access to the Debtors' data room and may begin conducting due diligence

3. **Qualified Bidders**

In order to qualify as a Qualified Bidder, each bidder must (i) electronically submit any offer for the Assets in writing to Dawn Ragan, Chief Restructuring Officer, email:

---

[3] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sovrano, LLC (1470); Mr. Gatti's, LP (0879); Gatti's Great Pizza, Inc. (6061); Gigi's Cupcakes, LLC (8356); Gigi's Operating, LLC (0621); Gigi's Operating II, LLC (8396); and KeyCorp (1251).

dawn.ragan@cr3partners.com, prior to **March 20, 2019 at 5:00 p.m. (Central Time)** ("**Bid Deadline**") and (ii) satisfy the following requirements, as determined by the Debtors in their reasonable business judgment (collectively, the "**Bid Requirements**").

- Each bidder must electronically submit an executed, legally binding, asset purchase agreement (the "**Bidder's APA**") to the attention of the CRO in the same form as the Buyer's APA and be accompanied by a redline of the Bidder's APA against the Buyer's APA to show any changes from the Buyer's APA and be in an amount that equals, or exceeds, the sum of the proposed purchase price described in the Buyer's APA plus the amount of the Break-Up Fee;

- Each competing bid must provide a $100,000 cash deposit to be wired to Debtors' counsel at the time a bid is submitted ("**Good Faith Deposit**"), pursuant to wiring instructions posted in the data room;

- Each competing bid must be irrevocable and will not be allowed a break-up fee;

- Each bidder must provide proof of funds sufficient to demonstrate financial wherewithal to close a cash transaction as shall be determined in the sole discretion of the CRO; and

- Each competing bid must contain no contingencies other than those contained in the Buyer's APA.

### 4. Qualified Bidders

A bidder that satisfies each of the Bid Requirements, as determined in the Debtors' reasonable business judgment, shall constitute a "Qualified Bidder" and such potential bidder's bid a "Qualified Bid." The CRO shall notify each Qualified Bidder that such party is a Qualified Bidder. The Buyer's APA shall be deemed a Qualified Bid and Buyer shall be deemed a Qualified Bidder.

Between the date that the Debtors notify a potential bidder that it is a Qualified Bidder and the Auction, if any, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder.

### 5. Right to Credit Bid

At the Auction, if any, any Qualified Bidder who has a valid, stipulated lien on any Asset(s) (a "**Credit Bidder**") shall have the right to credit bid all or a portion of the value of such Credit Bidder's claims within the meaning of § 363(k) of the Bankruptcy Code; provided that, a Credit Bidder shall have the right to credit bid its claim only with respect to the collateral by which such Credit Bidder is secured; provided further that, for purposes of its Qualified Bid, the Credit Bidder's claim shall be deemed to have the value it possesses on the date of the Auction (or as otherwise established by the Bankruptcy Court).

Notwithstanding the foregoing, Equity Bank and Happy State Bank shall be entitled to credit bid all or a portion of their outstanding obligations under their pre-petition loan documents with Debtors in accordance with § 363(k) of the Bankruptcy Code, and shall each be deemed to be a "Qualified Bidder" for all purposes herein and any such bid shall be deemed to be a "Qualified Bid" for all purpose herein. In the event that Equity Bank or Happy State Bank individually have stipulated liens on Assets reasonably valued at $100,000 or more and they elect to credit bid, they shall not be required to make a Good Faith Deposit. In the event such Credit Bidder is the Successful Bidder at the Auction, or otherwise becomes the Successful Bidder, the Credit Bidder must provide Debtors with funds necessary to pay the Break-Up Fee to the Buyer.

**6. Notice Procedures**

a. <u>Notice of Auction and Sale Hearing</u>.

On March 1, 2019, after entry of the Bidding Procedures Order, the Debtors will cause a copy of the Bidding Procedures Order, Bid Procedures, the Assumption and Assignment Notice, and Notice of Auction and Sale Hearing to be served by first-class mail, postage prepaid or electronic transmission mail upon: (i) all entities currently known by the Debtors to have expressed an interest in a transaction with respect to the Assets during the marketing process; (ii) all state and local taxing authorities or recording offices which have a reasonably known interest in the relief requested or jurisdictions' offices which oversee or reasonably could oversee Debtors' escheatment obligations; (iii) all non-debtor parties to relevant contracts or leases (executory or otherwise); (iv) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Assets; (v) all known creditors of the Gigi's Debtors; and (vi) upon all parties set forth in the Debtors' Official Service List maintained in these cases.

b. <u>Notice of Assumption and Assignment of Contracts</u>.

On March 1, 2019, the Debtors will serve the Assumption and Assignment Notice, substantially in the form approved by the Court (the "**Assumption and Assignment Notice**"), by first-class mail, facsimile, electronic transmission, or overnight mail on (a) each counterparty under each potential assumed and assigned contract or lease (a "**Contract Counterparty**") and its attorney, if known, in each case, at the last known address available to the Debtors.

The Assumption and Assignment Notice shall set forth the following information: (i) the contract(s) and/or lease(s) that may be assumed by the Debtors and assigned to the Successful Bidder(s); (ii) the name and address of the Contract Counterparty thereto; (iii) the amount, if any, determined by the Debtors to be necessary to be paid to cure any existing default in accordance with Sections 365(b) and 365(f)(2) of the Bankruptcy Code (the "**Cure Amount**"); and (iv) the deadlines by which any such Contract Counterparty must file an objection to the proposed assumption and assignment of any assumed and assigned contract or lease, provided, however, that the presence of any contract or lease on an Assumption and Assignment Notice does not constitute an admission that such contract or lease is an executory contract or unexpired lease.

c.  Notice of Qualified Bids

On March 22, 2019, Debtors shall file with the Court and serve by facsimile, electronic transmission, overnight, or first-contract mail on: i) the Contract Counterparty (and its attorney, if known) to each contract and lease that may be assumed and assigned; ii) Buyer; and iii) upon all parties set forth in the Debtors' Official Service List maintained in these cases, a notice identifying all Qualified Bidders.

d.  Notice of Successful Bidder Following Auction.

On March 26, 2019, following the Auction, if held, the Debtors shall file with the Court and serve by facsimile, electronic transmission, overnight, or first-contract mail on the Contract Counterparty (and its attorney, if known) to each assumed and assigned contract or lease, a notice (a) identifying the Successful Bidder(s); and (b) stating which contract(s) and/or lease(s) will be assumed and assigned thereto. Such notice shall also be served on: (i) Buyer; (ii) all state and local taxing authorities or recording offices which have a reasonably known interest in the relief requested or jurisdictions' offices which oversee or reasonably could oversee Debtors' escheatment obligations; (iii) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Assets; (iv) all known creditors of the Gigi's Debtors; and (v) upon all parties set forth in the Debtors' Official Service List maintained in these cases.

**7.  No Qualified Bids**

If the Debtors do not receive any Qualified Bids with respect to any or all of the Assets, other than the Buyer Bid, the Debtors shall report the same to the Court, and shall promptly proceed to seek entry of the appropriate orders approving the sale and assignment pursuant to the Buyer's APA.

**8.  Auction**

In the event the Debtors receive more than one Qualified Bid, the Debtors shall schedule an Auction to request additional competitive bids from Qualified Bidders.

The Buyer's APA shall constitute the **Baseline Bid**. The Baseline Bid shall be subject to higher or better bids at the Auction, as described further below:

In the event that Qualified Bids other than the Buyer Bid is timely received, the Auction will start on **March 25, 2019 at 1:00 p.m. (Central Time)** at the offices of Kelly Hart & Hallman.

a.  The Debtors Shall Conduct the Auction.

The CRO shall conduct the Auction, and provide all bidders with instructions at least two (2) business days prior to commencing the Auction. Debtors shall arrange for a court reporter to attend and record the general Auction and bidding.

At the start of the Auction, the CRO shall describe the terms of the Baseline Bid. All incremental Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders.

In order to participate in the Auction, each prospective purchaser must be a Qualified Bidder. Each Qualified Bidder must have at least one individual representative with authority to bind the Qualified Bidder attend the Auction in person, provided however, (i) the CRO shall have the authority to permit a bidder to participate telephonically in her sole discretion and (ii) the Buyer and its representatives shall be permitted to participate telephonically. Only Qualified Bidders and their legal and financial advisors shall be entitled to attend and/or bid at the Auction, in addition to the Debtors' secured lenders and a representative of the Office of the U.S. Trustee being allowed to attend.

      b.     Auction Procedures.

A Qualified Bidder wishing to submit a bid at the Auction must submit a bid of at least $100,000 more than the Purchase Price set forth in the Buyer's Baseline Bid (the "**Minimum Overbid**").

Subject to the Minimum Overbid, Qualified Bidders may submit successive bids which shall be in increments of $100,000 (the "**Incremental Bid Amount**") for the purchase of the Assets until there is only one offer that the Debtors determine, subject to Court approval, is the highest or best offer for such assets (a "**Successful Bid**" and such bidder, the "**Successful Bidder**"). The second highest or best bid, to the extent determined to be acceptable to the Debtors shall be deemed to be the backup bid (the "**Backup Successful Bid**" and such Bidder, the "**Backup Successful Bidder**").

The CRO shall close the Auction subsequent to completion of the bidding process.

All bids made at the Auction shall remain open until the earlier of (i) if the bidder submits the Successful Bid or is deemed to be the Backup Successful Bidder, thirty (30) days after the entry of the Sale Order by the Court, and (ii) if the Qualified Bidder is not selected as a Successful Bidder or the Backup Successful Bidder, three (3) days after the close of the Auction.

      c.     Consideration of Overbids.

The Debtors reserve the right, in their reasonable business judgment, to adjourn the Auction by no more than 5 business days to, among other things: facilitate discussions between the Debtors and Qualified Bidders; allow Qualified Bidders to consider how they wish to proceed; and provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require to substantiate that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount, including payment of the Break-Up Fee amount.

      d.      <u>No Collusion; Good Faith Bona Fide Offer</u>.

Each Qualified Bidder participating at the Auction will be required to confirm that: (i) it has not engaged in any collusion with respect to the bidding; and (ii) its Qualified Bid is a good faith bona fide offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

### 9. Backup Successful Bidder

If a Successful Bidder fails to consummate an approved transaction contemplated by its Successful Bid, the Debtors may select the applicable Backup Successful Bidder as the Successful Bidder, and such Backup Successful Bidder shall be deemed a Successful Bidder for all purposes. The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Successful Bidder without further order of the Court or notice to any party. In such case, the defaulting Successful Bidder's Good Faith Deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder (or Backup Successful Bidder, if such party shall also breach or fail to perform), as applicable, including with respect to specific performance. In the event that the Backup Successful Bidder fails to consummate an approved Sale, the Assets may be sold pursuant to one or more subsequent sales. Notwithstanding the foregoing, if Buyer is the Successful Bidder or Backup Successful Bidder, the deposit procedures shall be completed pursuant to the terms of the Buyers' APA.

### 10. Highest or Otherwise Best Bid

At all times during the Sale Process, the Debtors shall retain full discretion and right to determine which bid or bids constitutes the highest or otherwise best offer for the purchase of the Assets, and which bid or bids should be selected as the Successful Bid(s), if any, all subject to final approval by the Court pursuant to the provisions of Section 363(b) of the Bankruptcy Code. The Debtors may adopt rules for the Auction that, in their judgment, will better promote the goals of the Auction and that are not inconsistent in any material respect with any of the other material provisions hereof or of any Court order.

### 11. Proceeds

All valid and properly perfected liens against the Debtors' Assets shall attach to the proceeds of the Sale of such Assets, exclusive of the Break-Up Fee.

### 12. Reservation of Rights

The Debtors reserve the right to modify these Bidding Procedures with the consent of the Buyer at or prior to the Auction, including, without limitation, extending the deadlines set forth herein with respect to any or all Potential Bidders, imposing additional terms and conditions with respect to any or all Potential Bidders, adjourning or cancelling the Auction at or prior to the Auction and/or adjourning the Sale Hearing.

### 13. Consent to Jurisdiction

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of these Bidding Procedures, and/or the NDAs, as applicable.

### 14. Sale Hearing

A hearing to consider approval of the Sale of all or substantially all of the Assets to the Successful Bidder(s) (or, as applicable, to approve the Buyer's APA if no Auction is held) (the "**Sale Hearing**") is presently scheduled to take place on **March 28, 2019 at 1:30 p.m. (Central Time)**, or as soon thereafter as counsel may be heard, before the Honorable Edward L. Morris, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Northern District of Texas-Fort Worth Division, 501 West Tenth Street, Room 204, Fort Worth, Texas 76102.

Subject to the rights and remedies of the Buyer under the Buyer's APA, the Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party.

At the Sale Hearing, the Debtors shall present the Successful Bid(s) to the Court for approval. Following the approval of the Successful Bid(s) at the Sale Hearing, the Debtors will be authorized to take any and all actions necessary and appropriate to complete and implement the Sale(s) contemplated by the Successful Bid(s), including, without limitation, seeking entry of one or more orders approving such Sale(s).

### 15. Return of Good Faith Deposits

The Good Faith Deposit of the Successful Bidder shall be applied to the purchase price of such transaction at Closing. The Good Faith Deposits for each Qualified Bidder, or in the case of the Buyer, the Deposit, shall be returned (other than with respect to the Successful Bidder and the Backup Successful Bidder) promptly after the Auction.

If a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtors will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, and/or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the proposed transaction with the applicable Backup Successful Bidder without the need for an additional hearing or order of the Court.

**16. No Modification of Bidding Procedures**

Except as otherwise provided herein, these Bidding Procedures may not be modified except with the Debtors' consent.

2881573.2