**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SOVRANO LLC, et. al., [1] | § | CASE NO. 19-40067-11 |
| | § | |
| Debtors. | § | |

**DISCLOSURE STATEMENT FOR THE
JOINT PLAN OF REORGANIZATION FOR
SOVRANO, LLC,
MR. GATTI'S, LP
GATTI'S GREAT PIZZA, INC.,
KEYCORP, LLC,
GIGI'S CUPCAKES, LLC,
GIGI'S OPERATING, LLC, AND
GIGI'S OPERATING II, LLC**

---

**IMPORTANT NOTICE**

**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. PRIOR TO SUCH APPROVAL BY THE BANKRUPTCY COURT, DISTRIBUTION OF THE DISCLOSURE STATEMENT IS FOR THE SOLE PURPOSE OF COMPLYING WITH ESTABLISHED PROCEDURES FOR OBTAINING APPROVAL OF THE DISCLOSURE STATEMENT AND NOT FOR THE PURPOSE OF SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN.**

---

Michael McConnell
Texas Bar I.D. 13447300
Nancy L. Ribaudo
Texas Bar I.D. 24026066
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Telecopy: (817)878-9280

*Counsel for Debtors*

Dated: July 16, 2019

---

[1] The Debtors in these jointly administered chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sovrano, LLC (1470); Mr. Gatti's, LP (0879); Gatti's Great Pizza, Inc. (6061); Gigi's Cupcakes, LLC (8356); Gigi's Operating, LLC (0621); Gigi's Operating II, LLC (8396); and KeyCorp, LLC (1251).

## TABLE OF CONTENTS

**Page**

I.    EXECUTIVE SUMMARY ................................................................................................1

    A.    Introduction ........................................................................................................1

    B.    Overview of Chapter 11 ......................................................................................2

    C.    Analysis of Recoveries to Holders of Claims and Interests Under the Plan .........2

    D.    Treatment and Classification...............................................................................3

    E.    Voting and Plan Confirmation ............................................................................3

II.    VOTING AND PLAN APPROVAL PROCEDURES ................................................3

    A.    Hearing to Consider Disclosure Statement .........................................................3

    B.    Confirmation Hearing.........................................................................................3

    C.    Ballots and Voting Deadline ...............................................................................4

    D.    Classes Entitled to Vote .....................................................................................4

    E.    Ballots Not Counted; Irregularities ....................................................................4

III.    THE DEBTORS AND THEIR BUSINESSES...........................................................5

    A.    Gatti's Debtors ...................................................................................................5

    B.    Gigi's Debtors ....................................................................................................5

    C.    Debtors' Organizational Structure and Management............................................5

    D.    Events Leading to Bankruptcy ............................................................................5

    E.    Debt Summary....................................................................................................6

    F.    Insider and Affiliate Loans and Advances ..........................................................6

IV.    THE CHAPTER 11 CASES .......................................................................................7

    A.    Commencement of the Chapter 11 Cases............................................................7

    B.    Automatic Stay ...................................................................................................7

    C.    Significant Post-Petition Events ..........................................................................7

    D.    Pre- and Post-Petition Litigation ........................................................................9

V.    OVERVIEW OF THE PLAN ...................................................................................12

    A.    Summary of the Plan ........................................................................................12

    B.    Unclassified Claims..........................................................................................13

    C.    Classified Claims..............................................................................................14

VI.    MEANS FOR IMPLEMENTATION OF THE PLAN ............................................19

    A.    Reorganized Debtors and Vesting of Assets .....................................................19

    B.    Extinguishment of Equity Interests; Equity Interests in Reorganized

Debtors. ....................................................................................................................19

C.    Management of the Reorganized Debtors....................................................................20

D.    Appointment of Plan Administration Agent ...............................................................20

E.    Post-Confirmation Liquidation of Gigi's Debtors Assets and Prosecution
of Causes of Action by Plan Administrator.................................................................20

F.    Sources of Cash for Distributions ..............................................................................20

G.    Limited Substantive Consolidation of General Unsecured Claims......................21

H.    Preservation of Causes of Action ..............................................................................22

I.    Effectuating Documents; Further Transactions...........................................................22

J.    Closing of Bankruptcy Case.......................................................................................22

VII.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES....................................23

A.    General Treatment of Executory Contracts: Rejected.................................................23

B.    Cure Payments and Release of Liability ....................................................................23

C.    Bar to Rejection Claims .............................................................................................23

D.    Rejection Claims ........................................................................................................24

E.    Insurance Policies.......................................................................................................24

F.    Contracts and Leases Entered into After the Petition Date .................................24

VIII.    CLAIM OBJECTIONS; DISTRIBUTIONS UNDER THE PLAN............................24

A.    Allowance of Claims and Equity Interests.................................................................24

B.    Objections to Claims ..................................................................................................25

C.    Objection Deadline.....................................................................................................25

D.    Settlement of Contested Claims .................................................................................25

E.    Setoffs and Waiver .....................................................................................................25

F.    No Interest on Claims.................................................................................................25

G.    Procedures for Treating and Resolving Contested and Contingent Claims .........26

H.    Allowance of Claims Subject to 11 U.S.C. § 502(d) .................................................27

I.    Distributions ...............................................................................................................27

IX.    EFFECT OF  CONFIRMATION AND EFFECTIVE DATE ....................................29

A.    Binding Effect ............................................................................................................29

B.    Injunction Against Interference with Plan..................................................................29

C.    Discharge of Gatti's Debtors......................................................................................29

D.    Injunction....................................................................................................................30

E.    Exculpation.................................................................................................................30

|  | F. | Term of Bankruptcy Injunction or Stays | 31 |
| X. | | **IMPLEMENTATION PROVISIONS** | **31** |
|  | A. | Conditions to Confirmation | 31 |
|  | B. | Implementation | 31 |
|  | C. | Compliance with Tax Requirements | 31 |
|  | D. | Revocation or Withdrawal of the Plan | 32 |
|  | E. | General Notices | 32 |
|  | F. | Governing Law | 33 |
|  | G. | Retention of Jurisdiction | 33 |
| XI. | | **CONFIRMATION PROCEDURES** | **33** |
|  | A. | Statutory Requirements for Confirmation of the Plan | 33 |
| XII. | | **ANALYSIS OF LIQUIDATION UNDER CHAPTER 7 AS ALTERNATIVE** | **35** |
| XIII. | | **FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN** | **36** |
|  | A. | Tax Consequences to Creditors | 36 |
| XIV. | | **CONCLUSION AND RECOMMENDATION** | **37** |

## I.    EXECUTIVE SUMMARY

### A.    <u>Introduction</u>

Sovrano, LLC ("<u>Sovrano</u>"), Mr. Gatti's, LP ("<u>Mr. Gatti's</u>"), Gatti's Great Pizza, Inc. ("<u>GGP</u>"), KeyCorp, LLC ("<u>KeyCorp</u>"), Gigi's Cupcakes, LLC ("<u>Gigi's Cupcakes</u>"), Gigi's Operating, LLC ("<u>Gigi's Operating</u>"), and Gigi's Operating II, LLC ("<u>Gigi's Operating II</u>") (collectively "<u>Debtors</u>") hereby submit this Disclosure Statement for the Joint Plan of Reorganization for their jointly-administered bankruptcy estates (the "<u>Disclosure Statement</u>"). This Disclosure Statement is to be used in connection with the solicitation of votes on the Joint Plan of Reorganization proposed by the Debtors (the "<u>Plan</u>").  Unless otherwise defined herein, terms herein have the meanings ascribed thereto in the Plan (see Article I of the Plan entitled "Definitions, Construction, and Interpretation").

The purpose of this Disclosure Statement is to enable creditors of the Debtors whose claims are impaired under the Plan to make an informed decision in exercising their right to vote to accept or reject the Plan.

**THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT RELATES TO YOUR DECISION TO ACCEPT OR REJECT THE PLAN. PLEASE READ THIS DOCUMENT CAREFULLY. ALL CREDITORS ARE URGED TO READ THE PLAN OF REORGANIZATION THAT ACCOMPANIES THIS DISCLOSURE STATEMENT. IN THE EVENT OF ANY INCONSISTENCIES BETWEEN THE PROVISIONS OF THE PLAN AND THE SUMMARY CONTAINED HEREIN, THE PLAN PROVISIONS WILL CONTROL.**

Each holder of a claim entitled to vote should read this Disclosure Statement in its entirety prior to voting on the Plan.  No solicitation of votes on the Plan may be made except pursuant to this Disclosure Statement and section 1125 of the Bankruptcy Code and no person has been authorized to utilize in the solicitation of votes any information concerning the Debtors or their businesses other than the information contained in this Disclosure Statement or other information approved for dissemination to creditors by the Bankruptcy Court.  In voting on the Plan, creditors should not rely on any information relating to the Debtors and their businesses, other than that contained in this Disclosure Statement, except as otherwise approved by the Bankruptcy Court.

The information in this Disclosure Statement regarding the Debtors, their history, assets and value and benefits offered pursuant to the Plan, are expressly confined to the context of this Disclosure Statement, and Debtors specifically reject use of any such information outside of consideration of the Disclosure Statement.

For a general summary of the proposed treatment of your Claim or Interest under the Plan, please see Article V.  Debtors believe that the proposed Plan of Reorganization will result in the most cost-effective procedure for the reorganization of the Gatti's Debtors and distribution of estate assets to Gigi's creditors and is superior to any alternatives or liquidation of assets under Chapter 7.

---

**B.** **Overview of Chapter 11**

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code.  Pursuant to chapter 11, the debtor-in-possession or chapter 11 trustee attempts to reorganize a debtor's business for the benefit of the debtors, its creditors, and other parties in interest.  A plan may also provide for the liquidation of the debtor's assets rather than reorganization as a going-concern.

The commencement of a chapter 11 case creates an estate comprising all the legal and equitable interests of the debtor in property as of the date the bankruptcy petition is filed. sections 1101, 1107 and 1108 of the Bankruptcy Code provide that a debtor may continue to operate its business and remain in possession of its property as a "debtor-in-possession" unless the bankruptcy court orders the appointment of a trustee.  In the present chapter 11 case, the Debtors have remained in possession of their property and businesses as debtors-in-possession.

The filing of a chapter 11 petition also triggers the automatic stay provisions of the Bankruptcy Code.  Section 362 of the Bankruptcy Code provides, inter alia, for an automatic stay of all attempts to collect prepetition claims from the debtor or otherwise interfere with its property or business.  Except as otherwise ordered by the bankruptcy court, the automatic stay remains in full force and effect until the effective date of a confirmed plan of reorganization.

The formulation of a plan of reorganization or liquidation is the principal purpose of a chapter 11 case.  The plan sets forth the means for satisfying the claims against, and interests in, the debtors.  A bankruptcy court's confirmation of a plan of reorganization binds the debtor, any entity or person acquiring property under the plan, any creditor of or equity security holder in a debtor, and any other entities and persons to the extent ordered by such bankruptcy court pursuant to the terms of the confirmed plan, whether or not such entity or person is impaired pursuant to the plan, has voted to accept the plan, or receives or retains any property under the plan.  The Confirmation Order will discharge the Debtors from any debt arising before the Effective Date, and substitute the obligations set forth in the Plan for those prepetition Claims and Interests.

**C.** **Analysis of Recoveries to Holders of Claims and Interests Under the Plan**

In developing the Plan, the Debtors gave due consideration to various factors.  After a careful review of their current operations and liquidity, prospects as an ongoing business, and estimated recoveries to creditors in a forced sale scenario given current market conditions, the Debtors concluded that they will maximize recoveries to their stakeholders by reorganizing the Gatti's Debtors as a going concern and winding up the Gigi's Debtors. The Debtors believe that any alternative to confirmation of the Plan, such as liquidation or sale of some or all of the Gatti's Debtors' assets, would result in materially lower recoveries for stakeholders, significant delays, and greater administrative costs.  For these reasons, the Debtors believe that the Plan provides the best recoveries possible for the Debtors' stakeholders and recommend that, if you are entitled to vote, you vote to accept the Plan.

### D.     Treatment and Classification

The Plan organizes the Debtors' creditors and equity holders into groups called "Classes." Claims and Interests are divided into Classes according to their relative priority and other criteria. For each Class, the Plan describes: (i) the Claims or Interests comprising such Class; (ii) the recovery, if any, available to the holders of Allowed Claims or Interests in that Class under the Plan; (iii) whether the Class is "Impaired" under the Plan, meaning that the holders in such Class will receive less than full value on account of their Claims or Interest, or that the legal or equitable rights of such holders will be altered in some other form; and (iv) the form of recovery, if any, that such holders will receive on account of their respective Claims or Interests.

Holders of Allowed Claims or Interests against each of the Debtors will receive the same recovery provided to other holders of Allowed Claims or Interests in the applicable Class and will be entitled to their share of assets available for distribution to such Class. A detailed description of the classification and treatment of Claims and Interests is set forth in Article V of this Disclosure Statement.

### E.     Voting and Plan Confirmation

After a plan has been filed, the holders of claims against, or interests in, a debtor are permitted to vote to accept or reject the plan. Chapter 11 does not require that each holder of a claim against or interest in a debtor vote in favor of a plan in order for the bankruptcy court to confirm the plan. Acceptances of a plan will generally be solicited only from those persons who hold claims or interests in an impaired class. At a minimum, the plan must be accepted by a majority in number and two-thirds in amount of those claims actually voting in at least one class of impaired claims under the plan.

## II.     VOTING AND PLAN APPROVAL PROCEDURES

### A.     Hearing to Consider Disclosure Statement

On _____, 2019, the Honorable Edward L. Morris, Judge for the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, approved this Disclosure Statement as containing information of a kind, and in sufficient detail to enable creditors whose votes on the Plan are being solicited to make an informed judgment whether to accept or reject the Plan. A copy of the Order of the Bankruptcy Court approving the Disclosure Statement is enclosed with the materials transmitted to you. APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT REGARDING THE FAIRNESS OR MERITS OF THE PLAN.

### B.     Confirmation Hearing

Pursuant to section 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a hearing to consider confirmation of the Plan (the "Confirmation Hearing") on _____ **2019, at _____ a.m. Central Time**, in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, 501 W. 10th Street, Room 204, Fort Worth, TX  76102.

The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be filed and served on or before _____, **2019**.  The Confirmation Hearing may be adjourned from time to time without further notice.  ANY ANNOUNCEMENT OF A CONTINUATION OR POSTPONEMENT OF THE CONFIRMATION HEARING THAT IS MADE IN COURT AT THAT HEARING IS THE ONLY NOTICE THAT WILL BE PROVIDED OF THE NEW DATE AND TIME.

### C.    Ballots and Voting Deadline

A ballot to be used for voting to accept or reject the Plan is enclosed with the Disclosure Statement mailed to creditors entitled to vote.  Each such creditor should:  (i) carefully review the ballot and the instructions thereon; (ii) execute the ballot; and (iii) return it to the address indicated thereon by the deadline to enable the ballot to be considered for voting purposes.

The Bankruptcy Court has directed that, in order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received no later than 5:00 p.m., _____, 2019, at the following address:

Nancy Ribaudo
Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, Texas  76102

**TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED NO LATER THAN 5:00 P.M. CENTRAL STANDARD TIME, ON _____, 2019.**

If you do not vote to accept the Plan, or if you are the holder of an unimpaired claim, you may be bound by the Plan if it is accepted by the requisite holders of claims or Interests.

### D.    Classes Entitled to Vote

Claims in Classes  2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 13 and 14 are impaired under the Plan and therefore are entitled to vote.  Holders of Claims in Class 1 and 5 are not impaired under the Plan, and are conclusively presumed to have accepted the Plan under Bankruptcy Code § 1126(f). The holders of Equity Interests in Class 15 and 16 are impaired and will not receive or retain any property on account of such Equity Interests and, therefore, are deemed to have rejected the Plan under § 1126(g) of the Bankruptcy Code.

### E.    Ballots Not Counted; Irregularities

Any ballot that is not properly completed and timely received by the Voting Deadline will not be counted.  A holder of a contingent or unliquidated Claim may vote on the Plan in an amount based on the portion, if any, of the Claim shown as non-contingent, liquidated and undisputed in the Schedules, or equal to $1.00 if not so shown.  The Debtors specifically reserve the right to contest whether any ballots cast should be allowed to be counted for purposes of confirmation.

---

## III.   THE DEBTORS AND THEIR BUSINESSES

### A.   Gatti's Debtors

The Gatti's Debtors are a Texas-based pizza restaurant and franchise business.  Gatti's restaurants are family-oriented pizza restaurants and entertainment facilities.  The founder of the Gatti's chain, James Eure, originally opened his first restaurant called "The Pizza Place" in Stephenville, Texas in 1964.  In 1969 he moved to the Austin area and opened the very first "Mr. Gatti's Pizza" as a tribute to his wife's maiden name.  In the early 1980's, Gatti's began to modify its traditional dine-in concept to include an "all-you-care-to-eat" buffet, and developed delivery/carry-out concepts.  Later, Gatti's began to operate and offer franchises for buffet restaurants of varying sizes that included games and other amusements.

In June 2015, Sovrano acquired the Gatti's franchise through its purchase of MGI Holdings, LP.  Since that time, Sovrano has been operating the Gatti's franchise through Mr. Gatti's and operating its corporate-owned restaurants through GGP, and other affiliated entities.  At the time of filing, Gatti's owned and operated three restaurants in three states, plus 73 franchised locations across ten states.

### B.   Gigi's Debtors

Gigi's stores are bakery shops offering a variety of upscale cupcakes baked onsite, prepared and packaged specifically for delivery, take-out and onsite consumption.  The founder, Gina Butler, originally opened her first cupcake store in Nashville, Tennessee, in 2008 and franchised Gigi's stores from May 2008 to May 2016.

On or about June 1, 2016, Gigi's Cupcakes purchased the assets of the Gigi's franchise system from Gigi's Franchising, LLC.  Gigi's Cupcakes operated the Gigi's franchise.  Gigi's Operating and Gigi's Operating II operated corporate stores located in Texas, Arkansas, and Tennessee.  In May 2019, after commencement of their bankruptcy cases, the Gigi's Debtors sold substantially all of their assets, including all franchises and corporate-owned stores for approximately $1.2 million.

### C.   Debtors' Organizational Structure and Management

The Debtors consist of seven entities, all of which are part of the Gigi's and Gatti's organization, headquartered in Fort Worth, Texas.  Sovrano is the direct or indirect parent of Mr. Gatti's, GGP.  KeyCorp is the parent of Gigi's Cupcakes and Gigi's Operating and indirect parent of Gigi's Operating II.  Sovrano, Gigi's Cupcakes, Gigi's Operating, and Gigi's Operating II are each a Delaware limited liability company.  Mr. Gatti's is a Texas limited partnership.  GGP is a Texas corporation.  Debtors' corporate headquarters and management is located in Fort Worth, Texas.

### D.   Events Leading to Bankruptcy

The Debtors failed to maximize revenues due in part to underperforming stores at several locations.  Rather than close unprofitable stores resulting from market and location factors, the Debtors continued to operate and subsidize those losses.  These losses, coupled with

---

**DISCLOSURE STATEMENT TO ACCOMPANY PLAN OF REORGANIZATION**          **PAGE 5**

litigation and other legacy liabilities inherited from the Gigi's acquisition, created further strain on the Debtors' revenues and liquidity.  After attempts to obtain additional financing and new capital structure failed, the Debtors eventually reached a liquidity crisis.

Debtors' filed chapter 11 to further address the Debtors' liquidity crisis, as well as capital structure, with the expectation of completing quickly their operational turnaround and financial reorganization process in chapter 11.  Prior to filing bankruptcy, the Debtors implemented several cost-cutting measures including closing several unprofitable stores, and implemented staffing changes.  In addition, Debtors retained a Chief Restructuring Officer, to facilitate their reorganization process.

### E. Debt Summary

At the time of filing for bankruptcy, the Gatti's Debtors' secured debt included a $20,250,000 consolidating term loan agreement with Equity Bank, dated June 2018, by Sovrano and Mr. Gatti's.  Sovrano, Mr. Gatti's and GGP each executed security agreements pledging assets to secure the indebtedness.  Personal guaranties were also executed by the owners of Sovrano and KeyCorp.  As of the Petition Date, the approximate amount of indebtedness reflected on Debtors' Schedules was $19,254,510.

Gigi's Cupcakes and Gigi's Operating were also indebted to Equity Bank as a result of a $9,250,000 consolidating term loan agreement dated June 2018, secured by their assets.  Personal guaranties were also executed by the owners of Sovrano and KeyCorp.  As of the Petition Date, the approximate indebtedness is $9,006,693.

Both Equity Bank loans were subject to a Cross Default/Cross Collateral Agreement executed in October 2018, by Sovrano, Mr. Gatti's, GGP, Gigi's Cupcakes, Gigi's Operating, and the owners of Sovrano and KeyCorp.

In addition, Gigi's Operating and Gigi's Operating II were subject to an approximate $340,000 loan agreement with Happy State Bank, executed in March 2017, secured by personal property located at Gigi's Southlake, Texas and Knoxville, Tennessee stores.  As of the Petition Date, the approximate amount of indebtedness was $262,208.

Sovrano was also indebted to JP Morgan Chase Bank, N.A. as a result of an approximate $2,500,000 secured loan entered into in July 2016, secured by certain equipment.   GGP executed a security agreement also granting a security interest in certain equipment.  As of the Petition Date, the approximate indebtedness was $1,034,514.

### F. Insider and Affiliate Loans and Advances

Insiders and affiliates are owed approximately $8,793,259.71 from various Debtors prior to the bankruptcy filing.  At the time of filing for bankruptcy, the following amounts were outstanding and remain unpaid:

- $3,390,475.26 owed by KeyCorp to FundCorp, Inc.;

- $2,403,701.00 owed by Gigi's Cupcakes to Food Business Services, LLC;

---

**DISCLOSURE STATEMENT TO ACCOMPANY PLAN OF REORGANIZATION**            **PAGE 6**

- $1,821,110.00 owed by Mr. Gatti's to Food Business Services, LLC;

- $452,462.30 owed by Mr. Gatti's to FundCorp, Inc.;

- $315,000.00 owed by KeyCorp to Kyle C. Mann for advances;

- $325,402.82 owed by Gigi's Cupcakes to FundCorp, Inc. for advances;

- $32,133.83 owed by Gigi's Cupcakes to KeyCorp for management services;

- $26,487.25 owed by Sovrano to FundCorp, Inc. for rent; and

- $26,487.25 owed by Gigi's Cupcakes to FundCorp, Inc. for rent.

## IV.      THE CHAPTER 11 CASES

### A.      Commencement of the Chapter 11 Cases

On January 4, 2019, Sovrano, Mr. Gatti's, GGP, Gigi's Cupcakes, Gigi's Operating and Gigi's Operating II each filed voluntary petitions for relief under Chapter 11 of title 11 of the U.S. Code. KeyCorp filed its voluntary petition for relief on January 25, 2019. The Court ordered the joint administration of the Debtors' bankruptcy cases under the lead case of *In re Sovrano, LLC*, Case No. 19-40067.

### B.      Automatic Stay

The filing of the Petitions on the Petition Date will trigger the immediate imposition of the automatic stay under section 362 of the Bankruptcy Code, which, with limited exceptions, enjoins all collection efforts and actions by creditors, the enforcement of Liens against property of the Debtors and both the commencement and the continuation of prepetition litigation against the Debtors. With certain limited exceptions and/or modifications as permitted by order of the Court, the automatic stay will remain in effect from the Petition Date until the Effective Date of the Plan.

### C.      Significant Post-Petition Events

#### 1.      First Day Pleadings

On the Petition Date, along with the Petitions, the Debtors filed several motions (collectively, the "First  Day Pleadings") designed to minimize disruption to the Debtors' operations as a result of the bankruptcy filings.

Among the First Day Pleadings, the Debtors sought and obtained authority to continue to use cash collateral of Equity Bank to continue to fund operations. Debtors negotiated with its secured lenders, Equity Bank and Happy State Bank, to reach a consensual resolution regarding use of cash collateral necessary to carry on post-petition operations.

---

Debtors also sought and received approval to maintain various pre-petition practices and procedures, such as payment of employee wages, salaries and benefits, continuation of the cash management system, and honoring customer and franchisee programs.

## 2.      Retention of Professionals and Compensation Procedures

Debtors filed applications to retain professionals to assist the Debtors in carrying out their duties as debtors-in-possession.  The Bankruptcy Court approved the employment of Kelly Hart & Hallman LLP ("Kelly Hart") as bankruptcy counsel for the Debtors, CR3 Partners, LLC and specifically Dawn Ragan to serve as Debtors' chief restructuring officer and other personnel to assist with Debtors' debtor-in-possession obligations.

In addition, Haynes and Boone, LLP ("Haynes and Boone") was employed as special litigation counsel to the Debtors with respect to claims asserted by certain franchisees in connection with prepetition litigation and in the Debtors' bankruptcy cases.

Whitley Penn LLP was also retained to provide tax-related and audit-related services for the Debtors.

## 3.      Bankruptcy Schedules and Statements of Financial Affairs

On February 20, 2019, the Debtors filed their Schedules and Statements of Financial Affairs in each Debtor's respective bankruptcy case.  Subsequently, Debtors Mr. Gatti's, GGP and Gigi's Cupcakes filed amendments of certain Schedules and Amended Statements of Financial Affairs.

## 4.      Store Closings and Executory Contracts and Unexpired Leases

On February 7, 2019, the Debtors sought Court approval of the proposed rejection of seven unexpired non-residential leases for several former Gigi's or Gatti's locations.  All of the stores were closed prior to the Petition Date and were no longer beneficial to the estates.  In addition, the Debtors abandoned their interests in any and all property at those locations.  The Court granted the rejection of the leases on February 19, 2019.

Subsequently, the Debtors filed a second motion to reject an additional unexpired non-residential real property located in Overland Park, Kansas, which was approved on March 1, 2019.

## 5.      Sale of Gigi's Assets

On February 22, 2019, the Gigi's Debtors filed their *Expedited Motion Seeking (I) Authority to Sell Substantially All of the Gigi's Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests and to Assume and Assign Certain Contracts and Leases, (II) Approval of Buyer Protections, Bidding Procedures and Sale Process (III) Setting a Final Hearing to Approve Sale; and (IV) Related Relief* (the "Sale Motion") seeking approval of the sale of substantially all of the Gigi's Debtors assets free and clear of all liens, claims, encumbrances and other interests to MTY Franchising USA, Inc. ("MTY") for $2 million, subject to higher or better offers, and (ii) approval of procedures for the assumption and

DISCLOSURE STATEMENT TO ACCOMPANY PLAN OF REORGANIZATION                    PAGE 8

assignment of franchise agreements, executory contracts, and unexpired leases.  On February 28, 2019, the Court approved certain procedures for the proposed sale and assumption and assignment of contracts and leases. After no other qualified bids were received, the Court approved the sale of assets to MTY on April 4, 2019.

Following the Court's approval of the sale, MTY declined to proceed as purchaser.  On April 12, 2019, the Gigi's Debtors filed a supplement providing for the sale of their assets and assumption and assignment of contracts to an alternate buyer, Elite Restaurant Group, Inc., through its affiliate Gigi's Inc., on substantially the same terms set forth in the Asset Purchase Agreement with MTY, subject to a reduced purchase price of $1,200,000, and anticipated Closing Date on or before April 30, 2019.   The purchase included the assumption and assignment of executory contracts (including franchise agreements) and unexpired leases as previously provided for and approved in connection with the contemplated sale to MTY.  The Court approved the sale and assumption and rejection of contracts by order entered on May 1, 2019 ("Sale Order").  Closing occurred on May 3, 2019.

Certain franchisees, most of whom are also litigants in the Prepetition Litigation, filed an objection to the assumption and assignment of their franchise agreements ("Franchisee Claims").  To address the Franchise Claims, the Court conducted a 4-day evidentiary hearing on March 28 and 29 and April 1 and 2, 2019.  The Court overruled all but one basis for objection and, pending further determination by the Court or agreement by the parties, ordered that $140,140 from the sale proceeds be set aside.  Later, the Debtors and objecting franchisees entered into a Stipulation,  pursuant to which the objecting franchisees agreed to withdraw their objections in exchange for the $140,140 fund set aside pursuant to the Court's ruling, which amount was paid following closing.

### 6.      Settlements

Debtors negotiated and entered into a number of settlement agreements during the pendency of these chapter 11 cases.  On May 30, 2019, the Court approved Gigi's Cupcakes, Gigi's Operating and KeyCorp's settlement agreement with Simply Good Bakery, LLC ("Simply Good") and Carleen Thompson ("Ms. Thompson"), which resolved Simply Good and Ms. Thompson's objection to the Gigi's Debtors' proposed sale of assets and an adversary proceeding commenced against certain Debtors.

On May 29, 2019, the Court approved Debtors' settlement and lease modification for the Debtors headquarters in Fort Worth, which resolved the landlord's various claims, and provided the Debtors with a reduction in leased space.

In June, 2019, the Court approved GGP and Mr. Gatti's settlement with Blue Stone Real Estate, LP, regarding leased space in North Richland Hills.

### D.      Pre- and Post-Petition Litigation

At the time of commencement of the Bankruptcy Cases, Gigi's Cupcakes, Gigi's Operating, Sovrano, and KeyCorp were involved in seventeen cases in federal district court in

the Texas involving various franchisees.[2]  The cases were consolidated under consolidated Civil Action No. 3:17-cv-3009 and are now stayed as a result of the Debtors' bankruptcy filing.  Also pending was a case in state court in Dallas County Cause No. 18-16186, 298th Judicial District Court, between franchisee Sugar on Top Corporation and William C. Kenisell, III, which is also stayed pursuant to the automatic stay (collectively, the "Franchisee Litigation").

In the Affirmative Cases,[3] Gigi's Cupcakes asserted affirmative claims against the franchisees for breach of contract, declaratory judgment, and attorney's fees.  In those cases, the franchisees asserted counterclaims against the Gigi's Debtors, Sovrano, non-debtors Food Business Services, LLC, FundCorp, Inc., and the original owners of the Gigi's franchise, Gina Butler and Alan Thompson.  Gigi's Cupcakes expects and intends to assert any additional claims against such franchisees, including additional breach of contract claims for failure to spend on local advertising, early termination, and for liquidated damages in certain cases.

In the Remaining Cases,[4] the franchisees brought claims against the Gigi's Debtors, Sovrano, non-debtors Food Business Services, LLC, FundCorp, Inc., and the original owners of the Gigi's franchise, Gina Butler and Alan Thompson.  Gigi's Cupcakes has not yet asserted

---

[2] The franchisee parties to the consolidated cases include:  4 Box, LLC, Nikolas Pappas, and Loraine Pappas (No. 3:17-cv-3009); Koumbari Dolce, LLC, Nikolas Pappas, Loraine Pappas, Paul Arduini, and Katherine Arduini (No. 3:17-cv-3010); Country Charm Industries, LLC, Bruce Speidel, Natasha Speidel, Krista Speidel, and Mitchell Speidel (No. 3:17-cv-3011); JJM, LLC, Tom Miller, Nancy Miller, Jessica Evanson, and Jamie Clayborn (No. 3:17-cv-3012); Rylane Group, LLC, Geoff Lauterbach, and Lindsay Lauterbach (No. 3:17-cv-3013); Tupelo Cupcakes, Inc., Jon Robinson along and Anna Robinson, intervenor defendant (No. 3:17-cv-3014);  Sarahbug Sweets, LLC, Melody Leggemann, and Thomas Leggemann (No. 3:17-cv-3015); Premium Confections, LLC, Krista Kook, and Jesse Kook (No. 3:17-cv-3016); Sweet Riya, LLC, Lipi Datta-Reid and Fred Reid (No. 3:17-cv-3017); Clayborn Enterprises, LLC, Aaron Clayborn, and Jamie Clayborn (No. 3:17-cv-3018); D&B Rubinstein Enterprises, LLC, Icing on the Cupcake, LLC, Barry Rubinstein, Doris Rubinstein (No. 3:18-cv-2377); JMJ Florida Holdings, LLC,  Kevin McGaharan, and Jodi McGaharan (No. 3:18-cv-2381); Gourmet Cupcakes, LLC, Justin Swartz, and Kristin Swartz (No. 3:18-cv-2826); Morgan Foods, Inc. and Mark Morgan (No. 3:18-cv-2828);  614 Cupcakes, LLC, Ron Freeman, and Dawn Freeman (No. 3:18-cv-2831); Sugarlips Bakery, LLC, Jason Vinyard, and Cheryl Vinyard (No. 3:18-cv-2843), and Cupcakes of Orlando, Inc., L&J Cupcakes, LLC, Lee St. John, and Judy Kenney (No. 3:18-cv-2846).

[3] The "Affirmative Cases" include:  4 Box, LLC, Nikolas Pappas, and Loraine Pappas (No. 3:17-cv-3009); Koumbari Dolce, LLC, Nikolas Pappas, Loraine Pappas, Paul Arduini, and Katherine Arduini (No. 3:17-cv-3010); Country Charm Industries, LLC, Bruce Speidel, Natasha Speidel, Krista Speidel, and Mitchell Speidel (No. 3:17-cv-3011); JJM, LLC, Tom Miller, Nancy Miller, Jessica Evanson, and Jamie Clayborn (No. 3:17-cv-3012); Rylane Group, LLC, Geoff Lauterbach, and Lindsay Lauterbach (No. 3:17-cv-3013); Tupelo Cupcakes, Inc., Jon Robinson along and Anna Robinson, intervenor defendant (No. 3:17-cv-3014);  Sarahbug Sweets, LLC, Melody Leggemann, and Thomas Leggemann (No. 3:17-cv-3015); Premium Confections, LLC, Krista Kook, and Jesse Kook (No. 3:17-cv-3016); Sweet Riya, LLC, Lipi Datta-Reid and Fred Reid (No. 3:17-cv-3017); Clayborn Enterprises, LLC, Aaron Clayborn, and Jamie Clayborn (No. 3:17-cv-3018).

[4] The "Remaining Cases" include:  D&B Rubinstein Enterprises, LLC, Icing on the Cupcake, LLC, Barry Rubinstein, Doris Rubinstein (No. 3:18-cv-2377); JMJ Florida Holdings, LLC,  Kevin McGaharan, and Jodi McGaharan (No. 3:18-cv-2381); Gourmet Cupcakes, LLC, Justin Swartz, and Kristin Swartz (No. 3:18-cv-2826); Morgan Foods, Inc. and Mark Morgan (No. 3:18-cv-2828);  614 Cupcakes, LLC, Ron Freeman, and Dawn Freeman (No. 3:18-cv-2831); Sugarlips Bakery, LLC, Jason Vinyard, and Cheryl Vinyard (No. 3:18-cv-2843), Cupcakes of Orlando, Inc., L&J Cupcakes, LLC, Lee St. John, and Judy Kenney (No. 3:18-cv-2846), and Sugar on Top Corporation and William C. Kenisell, III (Cause No.18-16186, 298th Judicial District Court, Dallas County, Texas).

---

**DISCLOSURE STATEMENT TO ACCOMPANY PLAN OF REORGANIZATION**                    **PAGE 10**

affirmative claims in these lawsuits. Gigi's Cupcakes expects and intends to assert counterclaims against these franchisees and the franchisees' guarantors for breach of contract, liquidated damages, declaratory judgment and attorney's fees, and any additional claims against such franchisees and their guarantors, including additional breach of contract claims for failure to spend on local advertising, early termination and for liquidated damages.

Debtors reserve all rights to pursue all claims for breach of contract, liquidated damages, declaratory judgment and attorney's fees, and any additional claims against the franchisees and guarantors in the Franchisee Litigation, including additional breach of contract claims for failure to spend on local advertising, early termination and for liquidated damages. Debtors further reserve all rights of set off of amounts, if any, due to franchisees or guarantors by the amounts due by the franchisees and guarantors as a result of any breaches of franchise agreements or guaranties.

In addition and in the normal course of its business, the Debtors have been involved from time to time in various legal proceedings including administrative claims and matters brought against franchisees in which the franchisor is also named as a defendant. Typically in those matters, the franchisees are under an obligation to provide a defense for the relevant Debtor entities when an incident occurs at a franchise location.

Below is a chart identifying pending litigation involving the Debtors as of the Petition Date, including the consolidated Franchisee Litigation:

| Case / Action Title | Case Number | Nature of Case / Action | Court or Agency's Name | Status |
|---|---|---|---|---|
| Gigi's Cupcakes, LLC, et al. v. various franchisees[5] | 3:17-cv-3009 and consolidated cases | Franchisee Litigation | United States District Court Northern District of Texas, Dallas Division | Stayed |
| Sugar On Top Corporation and William C. Kenisell, III v. Gigi's Cupcakes, LLC; KeyCorp, LLC; Gigi Holdings, LLC; Gigi's Franchising, LLC; Gigi's Operating, LLC; FundCorp, Inc.; Food Business Services, LLC; Sovrano, LLC; Alan Thompson; and Gina Butler | Civil Action DC-18-16186 | Franchisee Litigation | District Court of 298 Judicial District of Dallas County, Texas | Stayed |
| Deer Creek Lots 1, 3, and 6 07 A LLC, Deer Creek Lots 1, 3, and 6 07 B LLC, Deer Creek Lots 1, 3, and 6 07 C LLC; and Deer Creek Lots 1, 3, and 6 07 D LLC v. Gigi's Operating, LLC and Gigi's Cupcakes, LLC | Civil Action 18 LA 12277 | Breach of Contract | District Court of Johnson County, Kansas | Stayed |

---

[5] *See* footnote 2, *infra.*

| Mayra Huerta v. Gatti's Great Pizza Inc. | Cause No. D-1-GN-18-007711 | Personal Injury at franchisee location | District Court 53rd Judicial District, Travis County, Texas | Stayed |
|---|---|---|---|---|
| Indiana Secretary of State Investigation | | Indiana state franchisee registration. | Securities Division of the Indiana Secretary of State | Closed |
| Myrta Rivera v Mr. Gatti's LP | n/a | Alleged retaliation, failure to hire | EEOC | Pending |

In addition, the following is a list of actions commenced after commencement of the Debtors' bankruptcy cases:

| Case Action/Title | Case Number | Nature of Case/Action | Court/Agency | Status |
|---|---|---|---|---|
| Dora Hernandez v. Mr. Gatti's, LP d/b/a "Mr. Gatti's Pizza McAllen" | CL-19-1936-B | Personal Injury at franchisee location | County Court At Law No. 2, Hidalgo County, Texas | Pending |
| Simply Good Bakery, LLC v. Gigi's Cupcakes, Gigi's Operating, KeyCorp, GiGi's Franchising, LLC, GiGi's Holdings, LC, Alan Thompson, Micky Skelton | Adv. Proc. No. 19-04033 | Claims relating to Gigi's franchise and franchise agreement | United States Bankruptcy Court for the Northern District of Texas | Dismissed |
| Three Dough Boys, LLC, Jeff Tisdel, Kenny Starks v. Gatti's Great Pizza, Inc., R. J. Phillips, Jr., Kyle C. Mann | Adv. Proc. No. 19-04033 | Claims relating to purchase of 13 Gatti's stores | United States Bankruptcy Court for the Northern District of Texas | Pending |

Debtors reserve all rights, claims and defenses, asserted or to be asserted, in all litigation matters involving the Debtors.

## V.    OVERVIEW OF THE PLAN

### A.    Summary of the Plan

The Debtors will reorganize through the Plan by:  1) restructuring their debt with Equity Bank; 2) continuing as reorganized debtors to operate the Gatti's pizza chain and franchise; and 3) winding up, liquidating, and dissolving the Gigi's Debtors.  Each Debtor will continue to exist after the Effective Date as separate Reorganized Debtor entities.

The Plan contemplates that the Reorganized Debtors and Plan Administration Agent will make all distributions to creditors required under the Plan.  Debtors anticipate sufficient cash to pay Administrative Claims in full.  Allowed secured claims will be satisfied from reinstatement of debt, return of collateral, or otherwise by retaining all liens and rights and remedies for repayment thereof.  Allowed unsecured claims will be satisfied from one of two funds:  the Gigi's GUC Fund or the Gatti's GUC, administered by the Plan Administration Agent.  The Plan also subordinates all claims of insiders and affiliates to all other claims.  Finally, under the

Plan, all equity interests in the Debtors will be extinguished.  New equity interests will issue for each Equity Interest holder in the applicable Reorganized Debtor, in exchange for the Cash and Guaranty Contribution made by R. J. Phillips and Kyle C. Mann.

### B.    Unclassified Claims

In accordance with § 1123(a)(1) of the Bankruptcy Code, unclassified claims against the Debtor consist of Administrative Claims and Priority Tax Claims.  All allowed Administrative Claims will be paid in full under the Plan.

### 1.    Administrative Expense Claims

The holder of any Administrative Claim other than:  i) a Professional Fee Claim; ii) an allowed Administrative Claim; or iii) a governmental claim pursuant to Bankruptcy Code § 503(b)(1)(D), shall be required to file and serve on all parties required to receive such notice a request for the allowance of such Administrative Claim on or before forty-five (45) days after the Effective Date.  Such request must include at a minimum:  i) the name of the holder of the Claim; ii) the amount of the Claim; and, iii) the basis of the Claim.  Failure to timely and properly file and serve such request shall result in the Administrative Claim being forever barred and discharged.  Objections to such requests must be filed and served pursuant to the Bankruptcy Rules on the requesting party, the Debtors and Reorganized Debtor within twenty (20) days after the filing of the request.

Each Professional who holds or asserts an Administrative Claim that is a Professional Fee Claim for compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date shall be required to file with the Bankruptcy Court and serve on all parties required to receive such notice a Fee Application within forty-five (45) days after the Effective Date.  Failure to timely and properly file and serve a Fee Application as required under the Plan shall result in the Professional Fee Claim being forever barred and discharged. No Professional Fee Claim will be deemed allowed until an order allowing the Professional Fee Claim becomes a final order.  Objections to such applications must be filed and served pursuant to the Bankruptcy Rules on the requesting party, the Debtors and Reorganized Debtors within twenty (20) days after the filing of the applicable Fee Application.  No hearing may be held until the twenty (20) day objection period has terminated.

An Administrative Claim with respect to which notice has been properly given pursuant to subparagraph 2.1(a) of the Plan, shall become an Allowed Administrative Claim if no timely objection is filed.  If a timely objection is filed, the Administrative Claim shall become an Allowed Administrative Claim only to the extent Allowed by a final order.  An Administrative Claim that is a Professional Fee Claim, and with respect to which a Fee Application has been properly filed and served pursuant to subparagraph 2.1(b) of the Plan, shall become an Allowed Administrative Claim only to the extent allowed by a final order.

Except to the extent that a holder of an Allowed Administrative Claim has been paid prior to the Effective Date, or agrees to a different treatment, each holder of an Allowed Administrative Claim shall receive, in full satisfaction release and discharge of and exchange for such Administrative Claim, Cash equal to the allowed amount of such Administrative Claim

---

(after application of any retainer held by such holder) on the later of:  i) the Effective Date (or as reasonably practicable thereafter) or ii) fifteen (15) days after the allowance date.

Holders of Administrative Claims based on liabilities incurred in the ordinary course of business of the Debtors during the Bankruptcy Case (other than claims of government units for taxes or claims and/or penalties related to such taxes, or alleged Administrative Claims arising in tort) shall not be required to file any request for payment of such claims.  Liabilities incurred in the ordinary course of business of the Debtors through the Effective Date will be paid by the Debtors or Reorganized Debtors, pursuant to the terms and conditions giving rise to such Administrative Claim, without any further action by the holders of such Administrative Claims.

### 2.      Priority Tax Claims

Each holder of an Allowed Priority Tax Claim, shall receive on or as soon as is reasonably practicable after the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, at the Debtors' or Reorganized Debtors' option, either (i) payment in Cash equal to the Allowed amount of such Allowed Priority Tax Claim including any interest required to be paid under the Bankruptcy Code; (ii) equal semi-annual Cash payments with interest at the applicable non-bankruptcy rate in an aggregate amount equal to such Allowed Priority Tax Claim, including any interest required to be paid pursuant to the Bankruptcy Code, with payments commencing on, or as soon thereafter as is practicable, the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and continuing over a period ending no later than five (5) years after the Petition Date, or (iii) such other treatment as may be agreed upon in writing by the applicable Debtor or Reorganized Debtor and such holder.  Notwithstanding the foregoing, any penalty arising with respect to or in connection with an Allowed Priority Tax Claim shall be treated as a General Unsecured Claim against the applicable Debtor.

### 3.      United States Trustee Fees

All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid by the Debtors or Reorganized Debtors, as applicable, for each quarter (including any fraction thereof) until the Bankruptcy Cases are converted, dismissed or a final decree is issued, whichever occurs first.  All such fees incurred by the Debtors prior to the Confirmation Date shall be paid on or before the Effective Date.  The Reorganized Debtors shall continue to file quarterly post-confirmation operating reports in accordance with the U.S. Trustee's Region 6 Guidelines for Debtors-in-Possession.

### C.      Classified Claims

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which Classes are: (i) Impaired and Unimpaired under the Plan; (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; and (iii) deemed to accept or reject the Plan.  A claim or interest shall be deemed classified in a particular class only to the extent that the claim or interest qualifies under the description of that class.  A claim or interest is in a particular class only to the extent that the claim or interest is an

---

**DISCLOSURE STATEMENT TO ACCOMPANY PLAN OF REORGANIZATION**                    **PAGE 14**

allowed claim or Equity Interest in that class.  The claims against and interests of the Debtor are classified as follows:

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 2 | Secured Tax Claims | Impaired | Entitled to Vote |
| 3 | Secured Claim of Equity Bank-Gatti's Debtors | Impaired | Entitled to Vote |
| 4 | Secured Claim of Equity Bank-Gigi's Debtors | Impaired | Entitled to Vote |
| 5 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 6 | General Unsecured Claims of Sovrano | Impaired | Entitled to Vote |
| 7 | General Unsecured Claim of Mr. Gatti's, LP | Impaired | Entitled to Vote |
| 8 | General Unsecured Claim of Gatti's Great Pizza, Inc. | Impaired | Entitled to Vote |
| 9 | General Unsecured Claims of KeyCorp, LLC | Impaired | Entitled to Vote |
| 10 | General Unsecured Claims of Gigi's Cupcakes, LLC | Impaired | Entitled to Vote |
| 11 | General Unsecured Claims of Gigi's Operating, LLC | Impaired | Entitled to Vote |
| 12 | General Unsecured Claims of Gigi's Operating II, LLC | Impaired | Entitled to Vote |
| 13 | Subordinated Claims of Gatti's Debtors | Impaired | Entitled to Vote |
| 14 | Subordinated Claims of Gigi's Debtors | Impaired | Entitled to Vote |
| 15 | Equity Interests of Gatti's Debtors | Impaired | Deemed to Reject |
| 16 | Equity Interests of Gigi's Debtors | Impaired | Deemed to Reject |

### 1.   Class 1 – Other Priority Claims.

Class 1 consists of Other Priority Claims.  Debtors do not believe that there are any Class 1 Claims.  Except to the extent that a holder of an Allowed Other Priority Claim has been paid prior to the Effective Date, or agrees to a different treatment in writing with the Debtors or Reorganized Debtors or is the subject of an order entered with respect to the treatment of such Other Priority Claim prior to the Effective Date, each holder of an Allowed Other Priority Claim, in full satisfaction, release and discharge of and exchange for such Claim, shall receive Cash in an amount equal to the Allowed amount of such priority claim in accordance with Bankruptcy Code § 1129(a)(9), on (or as reasonably practicable thereafter) the later of:  i) the Effective Date and, ii) the date such Claim in Class 1 becomes an Allowed Claim.  Notwithstanding the foregoing, to the extent the Allowed amount of an Other Priority Claim asserting priority treatment under Bankruptcy Code §§ 507(a)(4) and (5) exceeds the statutory cap applicable to such Claim, such excess shall be treated as a General Unsecured Claim against the appropriate Debtor.

### 2.   Class 2 - Secured Tax Claims.

Class 2 consists of the Secured Tax Claims.  On or as soon as is reasonably practicable after the later of the Effective Date and the date such Secured Tax Claim becomes an Allowed Secured Tax Claim, each holder of an Allowed Secured Tax Claim shall receive at the Debtors'

---

**DISCLOSURE STATEMENT TO ACCOMPANY PLAN OF REORGANIZATION**          **PAGE 15**

or Reorganized Debtors' option, either (i) payment in Cash equal to the Allowed amount of such Allowed Secured Tax Claim including any interest required to be paid under the Bankruptcy Code; (ii) equal semi-annual Cash payments with interest at the applicable non-bankruptcy rate in an aggregate amount equal to such Allowed Secured Tax Claim, including any interest required to be paid pursuant to the Bankruptcy Code, with payments commencing on, or as soon thereafter as is practicable, the later of the Effective Date and the date such Secured Tax Claim becomes an Allowed Secured Tax Claim, and continuing over a period ending no later than five (5) years after the Petition Date, or (iii) such other treatment as may be agreed upon in writing by the applicable Debtor or Reorganized Debtor and such holder.

Notwithstanding the foregoing, the holders of Secured Tax Claims for ad valorem property taxes shall retain all liens they currently hold, whether for prepetition tax years or for the current tax year, on any property of the Debtors until they receive payment in full under the provisions of this Plan.

Ad valorem taxes for the 2019 tax year are designated as post-confirmation debt incurred in the ordinary course of business to be timely paid in the ordinary course without the necessity of the filing of administrative expense claims or requests for payment, and if not so timely paid, will be subject to state court collection procedures without the necessity of further recourse to the Bankruptcy Court.  The tax liens for the 2019 taxes are specifically retained by the holders of such Secured Tax Claims until the 2019 taxes are paid in full.

### 3.      Class 3 – Secured Claim of Equity Bank – Gatti's Debtors.

Class 3 consists of the Secured Claim of Equity Bank against the Gatti's Debtors.  The Reorganized Gatti's Debtors will execute and deliver a secured promissory note to Equity Bank on the Effective Date, in the approximate amount of $19,568,190.77, subject to any necessary credits.  The note will provide for interest only payments due monthly at an interest rate mutually agreed upon by Equity Bank and the Gatti's Debtors, beginning on the 60th day following the Effective Date of the Plan.  The note will be secured by all assets, real and personal, of the Reorganized Debtors and will mature on the earlier of the sale of the Gatti's Debtors or December 31, 2020, unless extended by agreement of the Reorganized Gatti's Debtors and Equity Bank.  The note shall be guaranteed by R. J. Phillips and Kyle C. Mann.

### 4.      Class 4 – Secured Claim of Equity Bank – Gigi's Debtors.

Class 4 consists of the Secured Claim of Equity Bank against the Gigi's Debtors.  The Reorganized  Debtors will execute and deliver a secured promissory note to Equity Bank on the Effective Date, in the approximate amount of $8,430,243.12, subject to any necessary credits.  The note will provide for interest only payments due monthly at an interest rate mutually agreed upon by Equity Bank and the Debtors, beginning on the 60th day following the Effective Date of the Plan.  The note will be secured by all assets, real and personal, of the Reorganized Debtors and will mature on the earlier of the sale of the Gatti's Debtors or December 31, 2020, unless extended by agreement of the Reorganized Debtors and Equity Bank.  The note shall be guaranteed by R. J. Phillips and Kyle C. Mann.

---

**5.      Class 5 –Other Secured Claims.**

Class 5 consists of Other Secured Claims.  Except to the extent that a holder of an allowed Class 5 Claim has been paid prior to the Effective Date, or agrees to a different treatment in writing with the Debtors or Reorganized Debtors, or is the subject of an order entered with respect to the treatment of such Class 5 Claim prior to the Effective Date, each holder of an Allowed Class 5 Claim shall receive, at the Reorganized Debtor's option:  (i) Cash equal to the full Allowed amount of its Class 5 Claim; (ii) reinstatement of such holder's Allowed Other Secured Claim; or, (iii) the return or abandonment of the collateral securing such Allowed Other Secured Claim.

**6.      Class 6 – General Unsecured Claims - Sovrano.**

Class 6 consists of the allowed General Unsecured Claims against Sovrano, LLC. Except to the extent that a holder of an Allowed Class 6 Claim has been paid prior to the Effective Date, or agrees to a different treatment in writing with the Debtors, Reorganized Debtors or Plan Administration Agent, or is the subject of an order entered with respect to the treatment of such Class 6 Claim prior to the Effective Date, each holder of an Allowed Class 6 Claim shall receive, on or as reasonably practicable after, the later of (i) the Initial Distribution Date or (ii) the date on which such Class 6 Claim becomes an Allowed Class 6 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for such claim, its pro rata share of the Gatti's GUC Fund.

**7.      Class 7 – General Unsecured Claims – Mr. Gatti's, LP**

Class 7 consists of General Unsecured Claims against Mr. Gatti's, LP.  Except to the extent that a holder of an Allowed Class 7 Claim has been paid prior to the Effective Date, or agrees to a different treatment in writing with the Debtors, Reorganized Debtors or Plan Administration Agent, or is the subject of an order entered with respect to the treatment of such Class 7 Claim prior to the Effective Date, each holder of an Allowed Class 7 Claim shall receive, on or as reasonably practicable after, the later of (i) the Initial Distribution Date or (ii) the date on which such Class 7 Claim becomes an Allowed Class 7 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for such claim, its pro rata share of the Gatti's GUC Fund.

**8.      Class 8 – General Unsecured Claims – Gatti's Great Pizza, Inc.**

Class 8 consists of allowed General Unsecured Claims against Gatti's Great Pizza, Inc. Except to the extent that a holder of an Allowed Class 8 Claim has been paid prior to the Effective Date, or agrees to a different treatment in writing with the Debtors, Reorganized Debtors or Plan Administration Agent, or is the subject of an order entered with respect to the treatment of such Class 8 Claim prior to the Effective Date, each holder of an Allowed Class 8 Claim shall receive, on or as reasonably practicable after, the later of (i) the Initial Distribution Date or (ii) the date on which such Class 8 Claim becomes an Allowed Class 8 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for such claim, its pro rata share of the Gatti's GUC Fund.

### 9.      Class 9 – General Unsecured Claims – KeyCorp, LLC.

Class 9 consists of allowed General Unsecured Claims against KeyCorp, LLC.  Except to the extent that a holder of an Allowed Class 9 Claim has been paid prior to the Effective Date, or agrees to a different treatment in writing with the Debtors, Reorganized Debtors or Plan Administration Agent, or is the subject of an order entered with respect to the treatment of such Class 9 Claim prior to the Effective Date, each holder of an Allowed Class 9 Claim shall receive, on or as reasonably practicable after, the later of (i) the Effective Date or (ii) the date on which such Class 9 Claim becomes an Allowed Class 9 Claim, its pro rata share of the Gigi's GUC Fund .

### 10.      Class 10 – General Unsecured Claims – Gigi's Cupcakes, LLC

Class 10 consists of allowed General Unsecured Claims against Gigi's Cupcakes, LLC. Except to the extent that a holder of an Allowed Class 10 Claim has been paid prior to the Effective Date, or agrees to a different treatment in writing with the Debtors, Reorganized Debtors or Plan Administration Agent, or is the subject of an order entered with respect to the treatment of such Class 10 Claim prior to the Effective Date, each holder of an Allowed Class 10 Claim shall receive, on or as reasonably practicable after, the later of (i) the Effective Date or (ii) the date on which such Class 10 Claim becomes an Allowed Class 10 Claim, its pro rata share of the Gigi's GUC Fund.

### 11.      Class 11 – General Unsecured Claims – Gigi's Operating, LLC.

Class 11 consists of allowed General Unsecured Claims against Gigi's Operating, LLC. Except to the extent that a holder of an Allowed Class 11 Claim has been paid prior to the Effective Date, or agrees to a different treatment in writing with the Debtors, Reorganized Debtors or Plan Administration Agent, or is the subject of an order entered with respect to the treatment of such Class 11 Claim prior to the Effective Date, each holder of an Allowed Class 11 Claim shall receive, on or as reasonably practicable after, the later of (i) the Effective Date or (ii) the date on which such Class 11 Claim becomes an Allowed Class 11 Claim, its pro rata share of the Gigi's GUC Fund.

### 12.      Class 12 – General Unsecured Claims – Gigi's Operating II, LLC.

Class 12 consists of allowed General Unsecured Claims against Gigi's Operating II, LLC.  . Except to the extent that a holder of an Allowed Class 12 Claim has been paid prior to the Effective Date, or agrees to a different treatment in writing with the Debtors, Reorganized Debtors or Plan Administration Agent, or is the subject of an order entered with respect to the treatment of such Class 12 Claim prior to the Effective Date, each holder of an Allowed Class 12 Claim shall receive, on or as reasonably practicable after, the later of (i) the Effective Date or (ii) the date on which such Class 12 Claim becomes an Allowed Class 12 Claim, its pro rata share of the Gigi's GUC Fund.

### 13.      Class 13 – Subordinated Claims – Gatti's Debtors.

Class 13 consists of Subordinated Claims against the Gatti's Debtors.  Each Class 13 Claim shall be subordinated in accordance with Bankruptcy Code § 510(b).  No distribution

---

shall be made on account of any such Subordinated Claim other than in the ordinary course of business of the Reorganized Gatti's Debtors after all Allowed Claims against the Gatti's Debtors are paid in full.

### 14.     Class 14 – Subordinated Claims – Gigi's Debtors.

Class 14 consists of Subordinated Claims against the Gigi's Debtors. Each Class 14 Claim shall be subordinated in accordance with Bankruptcy Code § 510(b). No distribution shall be made on account of any such Subordinated Claim until after all Allowed Claims against the Gatti's Debtors are paid in full.

### 15.     Class 15 – Equity Interests in the Gatti's Debtors.

Class 15 consists of all Equity Interests in the Gatti's Debtors. As of the Effective Date, any and all Equity Interests in the Gatti's Debtors will be extinguished, and the holders of such Equity Interests will not receive or retain any property on account of such Equity Interest.

### 16.     Class 16 – Equity Interests in the Gigi's Debtors.

Class 16 consists of all Equity Interests in the Gigi's Debtors. As of the Effective Date, all Equity Interests in the Gigi's Debtors will be extinguished, and the holders of such Equity Interests will not receive or retain any property on account of such Equity Interest.

## VI.     MEANS FOR IMPLEMENTATION OF THE PLAN

### A.     Reorganized Debtors and Vesting of Assets

From and after the Effective Date, each Debtor shall continue to exist after the Effective Date as separate Reorganized Debtor entities, corporation, limited liability company, partnership, or other form of entity, as the case may be. Except as otherwise provided in the Plan, all property of the Gatti's Debtors will vest on the Plan Effective Date in each of the Reorganized Gatti's Debtor entities free and clear of all liens, claims and encumbrances. On the Effective Date, all property of the Gigi's Debtors will vest in the Reorganized Gigi's Debtors for purposes of wind down and liquidation, and prosecution of any Causes of Action. Each Reorganized Gigi's Debtor shall continue to exist after the Effective Date until dissolved in accordance with applicable state law.

Commencing on the Effective Date, the Reorganized Debtors may deal with their assets and property and conduct of their business without any supervision by, or permission from the Bankruptcy Court or the Office of the United States Trustee, and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### B.     Extinguishment of Equity Interests; Equity Interests in Reorganized Debtors.

1.     **Gatti's Debtors**. As of the Effective Date, any and all Equity Interests in the Gatti's Debtors will be cancelled and extinguished. New equity interests shall issue for each Equity Interest holder in the applicable Reorganized Gatti's Debtor, in exchange for the Gatti's

Cash and Guaranty Contribution made by R. J. Phillips and Kyle C. Mann on the Effective Date.

**2. Gigi's Debtors**. As of the Effective Date, any and all Equity Interests in the Gigi's Debtors will be cancelled and extinguished. New equity interests shall issue for each Equity Interest holder in the applicable Reorganized Gigi's Debtor, in exchange for the Gigi's Cash and Guaranty Contribution made by R. J. Phillips and Kyle C. Mann on the Effective Date.

**C. Management of the Reorganized Debtors**

As of the Effective Date, the current officers of the Gatti's Debtors shall remain and continue to manage the Reorganized Gatti's Debtors. Post-confirmation management of the Reorganized Gigi's Debtors for purposes of wind down, liquidation and prosecution of any Causes of Action, shall be the general responsibility of the Plan Administration Agent.

**D. Appointment of Plan Administration Agent**

Upon the Effective Date, the Plan Administration Agent shall be appointed to: to: (i) manage, wind down and liquidate the assets of the Gigi's Debtors, (ii) prosecute any Causes of Action of the Gigi's Debtors or Reorganized Gigi's Debtors, (iii) reconcile General Unsecured Claims, (vi) make all distributions to Allowed General Unsecured Claims, and (iv) exercise such other powers as may be vested in the Plan Administration Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Plan Administration Agent to be necessary and proper to implement the provisions of the Plan.

In the event the Plan Administration Agent resigns, is removed, or is otherwise unable to serve as Plan Administration Agent, a successor Plan Administration Agent will be selected by the managers of Reorganized Gatti's Debtors.

**E. Post-Confirmation Liquidation of Gigi's Debtors Assets and Prosecution of Causes of Action by Plan Administrator**

The Plan Administration Agent shall be authorized to sell, transfer, convey or otherwise dispose of or abandon any remaining assets of the Gigi's Debtors and prosecute any Causes of Action, as shall be deemed, in his or her sole discretion, commercially reasonable and appropriate without the need for further authority of the Bankruptcy Court.

**F. Sources of Cash for Distributions**

**1. Payment of General Unsecured Claims by Plan Administration Agent.**

The Plan Administration Agent shall pay all Allowed General Unsecured Claims from the Gatti's GUC Fund or Gigi's GUC Fund, the funding of which is further described below.

The Gatti's GUC Fund shall consist of: (i) $25,000 Gatti's Cash Contribution each made by R. J. Phillips and Kyle C. Mann on the Effective Date, (ii) four (4) equal installments in the amount of $37,500 made by the Reorganized Gatti's Debtors every six (6) months following the Effective from Cash on hand, including Cash generated from operations and the

---

sale of assets, and (iii) any amounts collected from the prosecution of any Causes of Action belonging to the Gatti's Debtors, less costs of litigation and collection.

The Gigi's GUC Fund shall consist of: (i) $1,000 Gigi's Cash Contribution each made by R. J. Phillips and Kyle C. Mann on the Effective Date, (ii) Cash on hand held by the Gigi's Debtors on the Plan Effective Date, and (iii) any amounts collected from the prosecution of any Causes of Action belonging to the Gigi's Debtors, less costs of litigation and collection.

## 2.   Payment of All Other Allowed Claims by Reorganized Debtors.

The Reorganized Debtors shall pay all other holders of Allowed Claims under the Plan from Cash on hand, including Cash from operations and the sale of assets.

## G.   Limited Substantive Consolidation of General Unsecured Claims

Based upon the Debtors' prepetition operations and other factors, Debtors believe a limited substantive consolidation is necessary and appropriate to achieve a fair and meaningful distribution to holders of Allowed General Unsecured Claims.  None of the Debtors currently have any significant unencumbered cash with which to pay Allowed General Unsecured Claims. The sole source of funds for distributions to holders of Allowed General Unsecured Claims under the Plan is either from the Gigi's GUC Fund, or Gatti's GUC Fund, which are being funded without distinction between the General Unsecured Claims of each individual Debtor. In these circumstances, Debtors believe that a limited substantive consolidation of General Unsecured Claims is appropriate.

Accordingly, for the purposes of effectuating the Plan, including for purposes of voting on and confirmation of the Plan, and distributions to Unsecured Creditors under the Plan, the Debtors are seeking authority under section 105 of the Bankruptcy Code to substantively consolidate the Gigi's Debtors and to substantively consolidate the Gatti's Debtors solely with respect to creditors who hold General Unsecured Claims against the respective Debtors.  The Plan will serve as a motion seeking entry of an order (which may be the Confirmation Order) consolidating the Gigi's Debtors and consolidating the Gatti's Debtors, as described and to the limited extent set forth above solely with respect to Allowed General Unsecured Claims. Unless an objection to such consolidation is made in writing by any Creditor affected by the Plan, filed with the Bankruptcy Court and served on the Debtors and their counsel on or before ten (10) days before the Voting Deadline or such other date as may be fixed by the Bankruptcy Court, the limited substantive consolidation order (which may be the Confirmation Order) may be entered by the Bankruptcy Court.  If any such objections are timely filed, a hearing with respect thereto will occur at or before the Confirmation Hearing.

Such consolidation (other than for purposes of effectuating the Plan) will not affect:  (a) the legal and corporate structures of the Debtors; (b) pre- and post-Effective Date liens or security interests that are required to be maintained pursuant to the Plan or in connection with contracts or leases entered into by the Debtors during the Bankruptcy Cases or executory contracts or unexpired leases that have been or will be assumed; (c) distributions or proceeds from insurance policies of the Debtors; or (d) the vesting of assets in each of the Reorganized Debtors under Section ___of the Plan.

### H.    Preservation of Causes of Action

The Debtors and Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically identified in the Disclosure Statement, Debtors' Schedules, Debtors' Statements of Financial Affairs, and any pleading filed in the Bankruptcy Cases, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Reorganized Debtors and Plan Administration Agent may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. **No Entity may rely on the absence of a specific reference in the Plan, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Reorganized Debtors or Plan Administration Agent will not pursue any and all available Causes of Action against it.** The Debtors, Reorganized Debtors, and Plan Administration Agent, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Court order, the Debtors or Reorganized Debtors and Plan Administration Agent, as applicable, expressly reserve all Causes of Action.

In accordance with section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided herein, any Causes of Action that a Debtor may hold against any Entity shall vest in the applicable Reorganized Debtor.  The applicable Reorganized Debtors, through their authorized agents or representatives, including the Plan Administration Agent, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtors and Plan Administration Agent shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Court.

### I.    Effectuating Documents; Further Transactions

On the Effective Date, the Debtors, the Reorganized Debtors, the Plan Administration Agent, and their employees, agents, attorneys and professionals, shall be authorized and directed, without further Order of the Bankruptcy Court, to execute, deliver, file, and record all agreements, instruments and contracts, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions, and consummate, the Plan.

### J.    Closing of Bankruptcy Case

As soon as the Reorganized Debtors deem it advisable, the Reorganized Debtors shall file an Application for Final Decree.

## VII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A. General Treatment of Executory Contracts: Rejected

On the Effective Date, and to the extent permitted by applicable law, all of the Gatti's Debtors' executory contracts and unexpired leases, including franchise agreements, will be assumed unless such executory contract or unexpired lease (i) is the subject of a motion to reject filed on or before the Confirmation Date or (ii) has previously been assumed or rejected pursuant to final order of the Bankruptcy Court. **A Schedule of Proposed Cure Claim amounts, if any, shall be filed at least ten (10) days prior to the Plan Objection Deadline.**

On the Effective Date, and to the extent permitted by applicable law, all of the Gigi's Debtors' executory contracts and unexpired leases, including franchise agreements, if any, will be rejected unless such executory contract or unexpired lease has previously been assumed or rejected pursuant to final order of the Bankruptcy Court.

Entry of the Confirmation Order shall constitute the Court's order approving the assumption or rejections as applicable, of executory contracts or unexpired leases as set forth in the Plan, pursuant to sections 365(a) and 1023 of the Bankruptcy Code. Unless otherwise indicated, assumptions or rejections of executory contracts and unexpired leases pursuant to the Plan are effective as of the Effective Date. Each executory contract or unexpired lease assumed pursuant to the Plan but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Court.

### B. Cure Payments and Release of Liability

All Allowed Cure Claims that may be required by section 365(b)(1) of the Bankruptcy Code under any executory contract or unexpired lease that is assumed under this Plan or pursuant to a prior final order of the Bankruptcy Court shall be paid no later than thirty (30) days after the Effective Date, or, in the case of a Contested Cure Claims, the date that a Contested Cure Claim becomes an Allowed Cure Claim. To the extent that a party to an assumed contract or unexpired lease has not filed an appropriate pleading with the Bankruptcy Court on or before the Plan Objection Deadline disputing the amount of any Cure Claim listed in the Schedule relating to the assumption of executory contracts or expired leases, disputing the cure of any other defaults, disputing the promptness of the Cure Claim payments, or disputing the provisions of adequate assurance of future performance, then such party shall be deemed to have waived its right to dispute such matters.

### C. Bar to Rejection Claims

If the rejection of an executory contract or unexpired lease results in damages to the other party or parties to such executory contract or unexpired lease, a claim for such damages shall be forever barred and shall not be enforceable against the Debtors, Reorganized Debtors, their Estates, Plan Administration Agent, or their properties or agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon the Debtors, Reorganized Debtors and Plan Administration Agent by the earlier of (i) thirty (30) days after

---

the Effective Date or (ii) such other deadline as the Bankruptcy Court may set for asserting a claim for such damages.

### D.    Rejection Claims

Any Rejection Claim arising from the rejection of an executory contract or unexpired lease shall be treated as a General Unsecured Claim against the applicable Debtor, except as limited by the provisions of sections 502(b)(6) and 502(b)(7) of the Bankruptcy Code and mitigation requirements under applicable law.  Nothing contained herein shall be deemed an admission by the Debtors, Reorganized Debtors, the Plan Administration Agent, or any other party in interest that such rejection gives rise to or results in a Rejection Claim or shall be deemed a waiver by the Debtors, Reorganized Debtors, Plan Administration Agent, or any other party in interest of any objections to such Rejection Claim if asserted.

### E.    Insurance Policies

Notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, all of the Debtors' insurance policies in force and any agreements, documents, or instruments relating thereto, shall be deemed to be assumed by the Reorganized Debtors under the Plan pursuant to section 365(a) of the Bankruptcy Code, to the extent such insurance policies are found to be executory contracts and entry of the Confirmation Order shall constitute approval of the Reorganized Debtors' assumption of each such insurance policy and any agreements, documents, or instruments relating thereto.

### F.    Contracts and Leases Entered into After the Petition Date

Contracts and leases entered into after the Petition Date by any Debtor will be performed by the applicable Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business. Accordingly, such contracts and leases that have not been rejected as of the date of Confirmation will survive and remain unaffected by entry of the Confirmation Order.

## VIII.   CLAIM OBJECTIONS; DISTRIBUTIONS UNDER THE PLAN

### A.    Allowance of Claims and Equity Interests

After the Effective Date, the Reorganized Debtors shall have and retain any and all rights and defenses the Debtors had with respect to any Claim or Equity Interest immediately prior to the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 cases prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 cases allowing such Claim.  All settled Claims approved prior to the Effective Date pursuant to a final order of the Court pursuant to Bankruptcy Rule 9019 or otherwise shall be binding on all parties.  The Reorganized Debtors and Plan Administration Agent shall have authority to settle any Contested Claim without the necessity of notice and Bankruptcy Court approval.

---

### B.    Objections to Claims

Any party in interest, including the Reorganized Debtors and Plan Administration Agent, may make and file objections to Claims (other than Claims that have been previously Allowed or that are Allowed under the Plan).  All objections to Claims must be filed on or before the Claims Objection Deadline.  Any Contested Claim as to which an objection is not filed on or before the Claims Objection Deadline shall be deemed to constitute an Allowed Claim under the Plan following the Claims Objection Deadline.

### C.    Objection Deadline

Except as set forth in sections 2.1(a), and 2.1(b) of the Plan or as otherwise extended or ordered by the Bankruptcy Court, any objections to Claims must be filed no later than one hundred twenty (120) days after the Effective Date (unless such day is not a business day, in which case such deadline will be the next business Day thereafter unless extended by the Bankruptcy Court).

### D.    Settlement of Contested Claims

The Reorganized Debtors and Plan Administration Agent, as applicable, shall have authority to settle any Contested Claim without the necessity of notice and Bankruptcy Court approval.

### E.    Setoffs and Waiver

The Reorganized Debtors and Plan Administration Agent, as applicable, may, but shall not be required to, set-off against any claim or any payment or distribution to be made on account thereof pursuant to the Plan (before any distribution is made) any claim, right or cause of action of any nature that a Debtor or Reorganized Debtor may hold against the holder of such Claim.  Such setoffs shall not be subject to the requirements or restrictions of Bankruptcy Code § 553 concerning mutuality or when the respective items subject to setoff under this section arose, but shall be subject to the defenses and rights of the non-debtor party.  Neither the failure to effect such a setoff nor the allowance of any claim hereunder shall constitute a waiver or release by the Debtors, or Reorganized Debtors of any such claims, rights or causes of action that the Debtors or Reorganized Debtors may have against such holder.  The holder of a Contested Claim who asserts a right of setoff will retain the right, subject to any defenses of a Debtor or Reorganized Debtor, until the earlier of the time when (i) the Contested Claim becomes allowed, in whole or in part, or (ii) the Claim is disallowed by the Bankruptcy Court.

### F.    No Interest on Claims

Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Contested Claim for the period from the Petition Date to the date a Distribution is made when and if such Contested Claim becomes an Allowed Claim.

---

### G.   Procedures for Treating and Resolving Contested and Contingent Claims

#### 1.   No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, the Plan Administration Agent and Reorganized Debtors, as applicable, shall make distributions only to holders of Allowed Claims. No holder of a Contested Claim will receive any distribution on account thereof, until and to the extent that its Contested Claim becomes an Allowed Claim.  To the extent a Claim is not a Contested Claim but is held by a holder that is or may be liable to the Debtors or Reorganized Debtors on account of a Cause of Action, no payments or distributions shall be made with respect to all or any portion of such Claim unless and until such Cause of Action has been settled, withdrawn, or determined by a Final Order of the Bankruptcy Court or such other court having jurisdiction over the matter.

If necessary in determining the amount of a pro rata distribution due to the holders of Allowed Claims, the Plan Administration Agent or Reorganized Debtors, as applicable, shall make the pro rata calculation as if all Contested Claims were Allowed Claims in the full amount provided under the Plan.   The Plan Administration Agent or Reorganized Debtors, as applicable, in their sole discretion, may withhold distributions otherwise due hereunder to the holder of a Claim until the Claims Objection Deadline, to enable parties to file a timely objection thereto.   When a Contested Claim becomes an allowed claim, the Reorganized Debtors or Plan Administration Agent, as applicable, shall make distributions with respect to such Allowed Claim, without interest (except as otherwise provided by the Plan), net of any setoff and/or any required withholding of applicable taxes.

#### 2.   Claim Estimation

The Debtors or the Plan Administrator may, at any time, request that the Bankruptcy Court estimate any contingent, unliquidated, or Contested Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether that Claim was previously objected to or whether the Bankruptcy Court has ruled on any such objection; provided, however, that the Bankruptcy Court will determine (i) whether such Contested Claims are subject to estimation pursuant to section 502(c) of the Bankruptcy Code and (ii) the timing and procedures for such estimation proceedings, if any.   The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.   If the Bankruptcy Court estimates any contingent, unliquidated, or Contested Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the Plan Administrator may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.   Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### 3. Distributions After Allowance of Contested Claim

Distributions to each respective holder of a Contested Claim, to the extent it becomes an Allowed Claim, will be made in accordance with the provisions of the Plan that govern distributions to such holders of Claims in the class in which such claimant is classified.  Unless otherwise provided in the Plan, as promptly as practicable after the date on which a Contested Claim becomes an Allowed Claim, and in any event not later than ten (10) business days after the Contested Claim becomes an Allowed Claim, the Reorganized Debtors or Plan Administration Agent, as applicable, will distribute to the claimant any distribution that would have been made to such claimant had its Claim been an Allowed Claim on the date that distributions were previously made to holders of Allowed Claims in the class in which such claimant is classified under the Plan, including interest, if any, that accrues on such Claim in the interim period while the Claim is Contested.

### H. Allowance of Claims Subject to 11 U.S.C. § 502(d)

Allowance of Claims will be subject in all respects to the provisions of section 502(d) of the Bankruptcy Code, except as provided by a final order of the Bankruptcy Court or a settlement among the relevant parties.

### I. Distributions

### 1. Reorganized Debtors and Plan Administrator as Disbursing Agents

The Reorganized Debtors and, with respect to Allowed General Unsecured Claims, the Plan Administrator, shall make all distributions required under the Plan, subject to the terms of the Plan.  The Reorganized Debtors and the Plan Administrator shall not be required to give any bond or surety or other security for performance of their duties unless otherwise ordered by the Bankruptcy Court.  The Reorganized Debtors and the Plan Administrator shall be authorized to rely on the Debtors' books and records and the Debtors' and Reorganized Debtors' representatives and professionals in determining Allowed Claims entitled to distributions under the Plan in accordance with the terms of the Plan.

### 2. Distributions to be Pro Rata Within a Class.

Except as otherwise provided in the Plan, all distributions constituting a partial payment to holders of Allowed Claims within a specific class shall be made on a pro rata basis to the holders of Allowed Claims in such class.

### 3. Means of Cash Payment

Cash payments made pursuant to the Plan will be in U.S. funds, by the means agreed to by the payor and the payee, including by check or wire transfer, or, in the absence of an agreement, by a commercially reasonable manner as the payor will determine in its sole discretion.

### 4. Delivery of Distributions

---

All distributions to any holder of an Allowed Claim shall be made at the address of such holder set forth on the proof of claim filed by such holder (or at the last known address of such a holder if no proof of claim is filed or if the Plan Administration Agent or Reorganized Debtors have been notified in writing of a change of address). If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Plan Administration Agent or Reorganized Debtors is notified in writing of such holder's then current address, at which time all missed distributions shall be made to such holder without interest. Any holder of an Allowed Claim whose distribution is undeliverable must make demand for such distribution to the Plan Administration Agent and Reorganized Debtors in writing on or before 120 days after the date such undeliverable distribution was initially made, after which the distribution shall be deposited into a pool for redistribution to other holders of Allowed Claims in the same class as the intended recipient of the undeliverable distribution, and any Claim by such intended recipient with respect to such undeliverable distribution shall be discharged and forever barred. The Plan Administration Agent and Reorganized Debtors and their agents and professionals are under no duty to take any action to either attempt to locate any holder of a Claim, or obtain an executed Internal Revenue Service Form W-9 from any holder of a Claim.

### 5.   Fractional Dollars; De Minimis Distributions

Any other provision of the Plan notwithstanding, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of the fraction to the nearest whole dollar (up or down), with half dollars being rounded down. The Reorganized Debtors and the Plan Administrator will not make any payment of less than twenty-five dollars ($25.00) with respect to any Allowed Claim, and the Reorganized Debtors and the Plan Administrator shall retain any such payment on behalf of the Reorganized Debtors.

### 6.   Unclaimed Property

Any distributions that become unclaimed property shall be retained by the Reorganized Debtors or the Plan Administrator free and clear of any claims or restrictions thereon, and any entitlement of any holder of any Claim or Interest to such distributions shall be extinguished and forever barred. Unclaimed property shall be deposited into a pool for redistribution to other holders of Allowed Claims in the same Class as the intended recipient of the unclaimed property.

### 7.   Allocation of Payments

Amounts paid under this Plan to holders of Allowed Claims in satisfaction thereof shall be allocated first to the principal amounts of such Claims, with any excess allocated to interest that has accrued on such Claims but remains unpaid.

### 8.   Withholding and Reporting Requirements

In accordance with Bankruptcy Code § 346 and in connection with the Plan and all distributions thereunder, the Reorganized Debtors and the Plan Administrator shall, to the extent applicable, comply with all withholding and reporting requirements imposed by any U.S.

federal, state or local taxing authority or any non-U.S. taxing authority.  The Reorganized Debtors and the Plan Administrator shall be authorized to take any and all actions necessary and appropriate to comply with such requirements.  All distributions under the Plan may be subject to withholding and reporting requirements.  As a condition for making any distribution under the Plan, the Reorganized Debtors or Plan Administration Agent may require the holder of an Allowed Claim to provide such holder's taxpayer identification and such other information, certification, or forms necessary to comply with applicable tax reporting and withholding laws.  Notwithstanding any other provision of the Plan, each Person receiving a distribution under the Plan shall have sole and exclusive responsibility for the satisfaction and payment of tax obligations on account of any such distribution.

### 9.  Duty to Disgorge Overpayments

To the extent the holder of any Allowed Claim receives more than what such holder is permitted to receive under the Plan, such Holder shall immediately return such excess payment(s) to the Reorganized Debtor or the Plan Administrator, failing which, the Reorganized Debtor or the Plan Administrator may sue such holder for the return of the overpayment in the Bankruptcy Court or any other court of competent jurisdiction.

## IX.  EFFECT OF  CONFIRMATION AND EFFECTIVE DATE

### A.  Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtors, Reorganized Debtors, the Plan Administration Agent, all present and future holders of Claims and Interests, and their respective successors and assigns, and all other parties in interest in the Bankruptcy Case, whether or not they had a right to vote on the Plan, whether or not any claim or interest held by any of them is impaired under the Plan, whether or not any claim or Equity Interest held by any of them is allowed in full, only in part, or disallowed in full, and whether or not a distribution is made to any of them under the Plan.  Confirmation of the Plan shall operate to bind the Debtors, Estates, Reorganized Debtors any committee appointed in this Bankruptcy Case, the Plan Administration Agent, and the creditors of Debtor to the terms set forth in the Plan.

### B.  Injunction Against Interference with Plan

Upon the Effective Date, all holders of Claims, all holders of Interests, and all other parties in interest in these Bankruptcy Cases, along with their respective current and former officers, directors, principals, employees and agents, shall be and are hereby enjoined from taking any action to interfere with the implementation or consummation of the Plan.

### C.  Discharge of Gatti's Debtors

Except as provided in the Bankruptcy Code, the Plan or the Confirmation Order, all consideration distributed under the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims against and Interests in the Gatti's Debtors of any nature whatsoever, whether known or unknown, or against the assets or properties of the Gatti's Debtors that arose before the Effective Date.  Except as provided in the Bankruptcy

---

Code, the Plan or the Confirmation Order, upon the Effective Date, entry of the Confirmation Order acts as a discharge and release under Bankruptcy Code § 1141(d)(1)(A) of all Claims against and Interests in the Gatti's Debtors and the Gatti's Debtors' assets and properties, arising at any time before the Effective Date, regardless of whether a proof of Claim or Interest was filed, whether the Claim or Interest is Allowed, or whether the holder of the Claim or Interest votes to accept the Plan or is entitled to receive a distribution under the Plan. Except as provided in the Plan or the Confirmation Order, upon the Effective Date, any holder of a discharged Claim or Interest will be precluded from asserting against the Gatti's Debtors, the Reorganized Gatti's Debtors or any of their assets or properties any other or further Claim or Interest based on any document, instrument, act, omission, event, transaction or other activity of any kind or nature that occurred before the Effective Date. Except as provided in the Plan and the Confirmation Order, and subject to the occurrence of the Effective Date, the Confirmation Order will be a judicial determination of discharge of all liabilities of the Debtors to the extent allowed under Bankruptcy Code § 1141, and the Gatti's Debtors and Reorganized Gatti's Debtors will not be liable for any Claims or Interests and will only have the obligations as are specifically provided for in the Plan.

### D.    Injunction

Except as otherwise provided in the Plan, the Confirmation Order shall provide, among other things, that from and after the Effective Date, all holders of Claims against and Interests in the Gatti's Debtors are permanently enjoined from taking any of the following actions against the Gatti's Debtors, Reorganized Gatti's Debtors, Plan Administrator, or any of their property on account of any such Claim or Interest: (a) commencing or continuing in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any encumbrance or lien; (d) asserting a setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Gatti's Debtors; and (e) commencing or continuing, in any manner or in any place, any action that does not conform to or comply with, or is inconsistent with, the provisions of the Plan; provided, however, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of the Plan or the Confirmation Order. If allowed by the Bankruptcy Court, any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' and experts' fees and disbursements, and, in appropriate circumstances, may recover punitive damages, from the willful violator.

### E.    Exculpation

The Debtors, the Debtors' Professionals, and any of such parties' respective present or former members, officers, directors, employees, advisors, representatives, successors, and assigns, shall not have or incur any liability or obligation, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise, to any holder of a Claim or Interest or any other Person for any act or omission originating or occurring on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the Debtors, the Estates, the administration of the Bankruptcy Cases, the operation of the Debtors' businesses during the Bankruptcy Cases, the formulation, negotiation,

---

**DISCLOSURE STATEMENT TO ACCOMPANY PLAN OF REORGANIZATION**          **PAGE 30**

preparation, filing, dissemination, approval, or confirmation of the Plan, the Disclosure Statement, the solicitation of votes for or confirmation of the Plan, the consummation or administration of the Plan, or the property to be liquidated and or distributed under the Plan, except for their willful misconduct or gross negligence as determined by a final order of a court of competent jurisdiction.  The foregoing parties will be entitled to rely reasonably upon the advice of counsel in all respects regarding their duties and responsibilities under the Plan.

### F.      Term of Bankruptcy Injunction or Stays

Unless otherwise provided herein or an order of the Bankruptcy Court (including without limitation the Confirmation Order), all injunctions or stays provided in the Bankruptcy Cases under Bankruptcy Code section 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.  Upon the Effective Date, the injunction provided in Section 9.4 of the Plan shall apply.

### X.      IMPLEMENTATION PROVISIONS

### A.      Conditions to Confirmation

Unless waived, in whole or in part, confirmation of the Plan is subject to satisfaction of the following condition precedent:  all provisions, terms and conditions of the Plan shall be approved in the Confirmation Order.

### B.      Implementation

The Debtors, Reorganized Debtors, and Plan Administration Agent will be authorized to take all necessary steps, and perform all necessary acts to consummate the terms and conditions of the Plan.

### C.      Compliance with Tax Requirements

In connection with the Plan, the Debtors, Reorganized Debtors, and Plan Administration Agent will comply with any withholding and reporting requirements imposed by federal, state, and local taxing authorities, and distributions will be subject to the withholding and reporting requirements, if any.

### 1.      Modification of the Plan

The Debtors reserve the right to modify the Plan in writing at any time before the confirmation date, provided that:  i) the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and ii) Debtors shall have complied with section 1125 of the Bankruptcy Code.  Debtors reserve the right to modify the Plan in writing at any time after the confirmation date and before substantial consummation of the Plan, provided that:  i) the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code; ii) Debtors shall have complied with section 1125 of the Bankruptcy Code; and, iii) the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code.  A holder of a claim or Equity Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified,

unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

Debtors may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Equity Interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary and desirable.  Non-material modification may be undertaken insofar as it does not adversely change the treatment of the claim of any creditor or the interest of any Equity Interest holder who has not accepted, in writing, the modification.

### D.      Revocation or Withdrawal of the Plan

Debtors reserve the right to revoke and withdraw the Plan before the entry of the Confirmation Order.  If the Debtors revoke or withdraw the Plan, or if confirmation or the Effective Date of the Plan does not occur, then the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors, or any other Person or to prejudice in any manner the rights of the Debtors in any further proceedings involving the Debtor.

### 1.      Integration Clause

This Plan is a complete, whole, and integrated statement of the binding agreement between the Debtors, Reorganized Debtors, Plan Administration Agent, Debtors' creditors, and other parties-in-interest upon the matters herein.  Parole evidence shall not be admissible in an action regarding the Plan or any of its provisions.

### E.      General Notices

Any notice, request, or demand required or permitted to be given in connection with the Plan shall be (i) in writing, (ii) served by certified mail, return receipt requested, (iii) hand delivery, (iv) overnight delivery, (v) first class mail, or (vi) fax transmission, and (vi) deemed to have been given or made when actually delivered or received addressed as follows:

–to the Reorganized Gatti's Debtors: ``````     –with copies to:

| | |
|---|---|
| Gatti's | Kelly, Hart & Hallman LLP |
| Attn: General Counsel | Attn:  Michael Mc Connell |
| 550 Bailey Street, Suite 650 | 201 Main Street, Suite 2500 |
| Fort Worth, Texas 76107       ` | Fort Worth, TX 76102 |

–to the Reorganized Gigi's Debtors:          –with copies to:

| | |
|---|---|
| Gigi's | Kelly, Hart & Hallman LLP |
| Attn:  Plan Administration Agent | Attn:  Michael Mc Connell |
| 550 Bailey Street, Suite 650 | 201 Main Street, Suite 2500 |
| Fort Worth, Texas 76107       ` | Fort Worth, TX 76102 |

---

**DISCLOSURE STATEMENT TO ACCOMPANY PLAN OF REORGANIZATION**          **PAGE 32**

#### F.      Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed or amended in connection with the Plan.

#### G.      Retention of Jurisdiction

Until the case is closed, the Bankruptcy Court will retain the jurisdiction as is legally permissible under applicable law, including under §§ 105(a) and 1142 of the Bankruptcy Code, including that which is necessary to ensure that the purpose and intent of the Plan are carried out and to hear and determine all objections thereto that could have been brought before the entry of the Confirmation Order.  The Bankruptcy Court will retain jurisdiction to hear and determine all claims against and interests in the Debtor and to enforce all Causes of Actions that may exist on behalf of the Debtor, over which the Bankruptcy Court otherwise has jurisdiction.  Nothing contained in the Plan will prevent the Debtor, Trustee or the Plan Administration Agent, from taking any action as may be necessary in the enforcement of any Cause of Action that may exist on behalf of the Debtor and that may not have been enforced or prosecuted by the Debtor over which the Bankruptcy Court has jurisdiction.

## XI.      CONFIRMATION PROCEDURES

#### A.      Statutory Requirements for Confirmation of the Plan

At the Confirmation Hearing, the Court will determine whether the Plan satisfies the requirements of section 1129 of the Bankruptcy Code.  Among the requirements for Confirmation of the Plan are that the Plan: (i) is accepted by all impaired classes of Claims, or if rejected by an impaired class, that the Plan "does not discriminate unfairly" and is "fair and equitable" as to such class; (ii) is feasible; and (iii) is in the "best interests" of holders of Claims.  The Debtors believe that: (i) the Plan satisfies or will satisfy all of the necessary statutory requirements of chapter 11; (ii) the Debtors complied or will have complied with all of the necessary requirements of chapter 11; and (iii) the Plan was proposed in good faith.

#### 1.      Best Interests of Creditors Test and Liquidation Analysis

Section 1129(a)(7) of the Bankruptcy Code requires that a bankruptcy court find, as a condition to confirmation, that a chapter 11 plan provides, with respect to each impaired class, that each holder of a claim or an equity interest in such impaired class either: (i) has accepted the plan; or (ii) will receive or retain under the plan property of a value that is not less than the amount that the non-accepting holder would receive or retain if the debtors liquidated under chapter 7. This requirement is often referred to as the "best interests test."

This test requires a bankruptcy court to determine what the holders of allowed claims and allowed interests in each impaired class would receive from a liquidation of the debtor's assets and properties in the context of a liquidation under chapter 7 of the Bankruptcy Code. To determine if a plan is in the best interests of each impaired class, the value of the distributions from the proceeds of the liquidation of the debtor's assets and properties (after subtracting the

---

amounts attributable to the aforesaid claims) is then compared with the value offered to such classes of claims and equity interests under the proposed chapter 11 plan.

For the reasons stated in Section____below, Debtors believe that creditors will receive more under the Plan than in a chapter 7 liquidation.  In particular, Debtors believe that in a chapter 7 liquidation, secured claims would exceed the value of Debtors' assets, leaving zero recovery to General Unsecured Creditors.  Consequently, Debtors believe that the Plan is in the best interest of creditors.

### 2.      Feasibility

Section 1129(a)(11) of the bankruptcy code requires that a debtor demonstrate that confirmation of a plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the debtor, or any successor to the debtor (unless such liquidation or reorganization is proposed in such plan of reorganization).

In order to establish the feasibility of the Plan for purposes of section 1129(a)(11) of the Bankruptcy Code, the Debtors and their management team and advisors, intend to develop the Financial Projections that set forth the projected financial performance of the Reorganized Debtors over a defined period of time.  The Debtors anticipate that the Financial Projections will show that the Reorganized Debtors will have a viable operation and sufficient Cash following the Chapter 11 Cases and that confirmation of the Plan is not likely to be followed by liquidation or the need for further reorganization.

### 3.      Acceptance by Impaired Classes

The Bankruptcy Code requires, as a condition to confirmation, that each class of claims or Interests impaired under a plan, accept the plan.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of allowed claims in that class, counting only those claims that have actually voted to accept or reject the Plan. Thus, a class of claims will have voted to accept the Plan only if two-thirds in amount and a majority in number actually cast their ballots in favor of acceptance.

### 4.      Additional Requirements for Nonconsensual Confirmation

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if all impaired classes have not accepted it; provided that the plan has been accepted by at least one impaired class. Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired class's rejection or deemed rejection of the plan, the plan will be confirmed, at the plan proponent's request, in a procedure commonly known as a "cramdown" so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or interests that is Impaired under, and has not accepted, the plan.

If any Impaired Class rejects the Plan, the Debtors reserve the right to seek to confirm the Plan utilizing the "cramdown" provision of section 1129(b) of the Bankruptcy Code. The

Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan document, including the right to amend or modify the Plan document to satisfy the requirements of section 1129(b) of the Bankruptcy Code.

### a.       No Unfair Discrimination

The "unfair discrimination" test applies to classes of claims or interests that are of equal priority and are receiving different treatment under a plan. This test does not require that the treatment be the same or equivalent, but that such treatment is "fair."  In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (e.g., classes of the same legal character).  Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly.

### b.       Fair and Equitable Test

The "fair and equitable" test applies to classes of different priority and status (e.g., secured versus unsecured) and requires: (i) that no class of claims receive more than 100% of the allowed amount of the claims in such class; and (ii) that no holder of any claim or interest that is junior in priority to a dissenting creditor receive or retain any property under the plan on account of such junior claim or interest.

The Debtors submit that if the Debtors "cramdown" the Plan pursuant to section 1129(b) of the Bankruptcy Code, the Plan is structured so that it does not "discriminate unfairly" and satisfies the "fair and equitable" requirement.  With respect to the unfair discrimination requirement, all Classes under the Plan are provided treatment that is substantially equivalent to the treatment that is provided to other Classes that have equal rank.  With respect to the fair and equitable requirement, no Class under the Plan will receive more than 100% of the amount of Allowed Claims in that Class.  The Debtors believe that the Plan and the treatment of all Classes of Claims and Interests under the Plan satisfy the foregoing requirements for nonconsensual Confirmation of the Plan.

## XII.   ANALYSIS OF LIQUIDATION UNDER CHAPTER 7 AS ALTERNATIVE

An alternative to the Plan is conversion of the bankruptcy case from a proceeding under Chapter 11 of the Bankruptcy Code to a proceeding under Chapter 7 of the Bankruptcy Code. A Chapter 7 case, sometimes referred to as a "straight liquidation," requires the liquidation of all of the debtor's assets by a Chapter 7 trustee.  The cash realized from liquidation is subject to distribution to creditors in accordance with the order of distribution prescribed in § 726 of the Bankruptcy Code.  Whether a bankruptcy case is one under Chapter 7 or Chapter 11, allowed secured claims, allowed administrative claims and allowed priority claims are entitled to be paid in cash, in full, before unsecured creditors and equity interest holders receive any funds, as explained further below.  Thus, in a Chapter 7 case, the recovery, if any, to creditors holding non-priority unsecured claims and to holders of equity interests will depend upon the net proceeds left in the estate after all of the debtor's assets have been reduced to cash and all claims of higher priority have been satisfied in full.

Chapter 7 liquidation theoretically adds an additional layer of expense.  As referenced above, conversion of a bankruptcy case to Chapter 7 will trigger the appointment of a Chapter 7

trustee having the responsibility of liquidating the debtor's assets.  Pursuant to sections 326 and 330 of the Bankruptcy Code, the Chapter 7 trustee will be entitled to reasonable compensation in relation to the level of disbursements made to creditors, as follows: (a) up to 25% of the first $5,000.00 disbursed; (b) up to 10% of the amount disbursed in excess of $5,000.00 but not in excess of $50,000.00; (c) up to 5% of any amount disbursed in excess of $50,000.00 but not in excess of $1,000,000.00; and (d) up to 3% of any amount disbursed in excess of $1,000,000.00. Additionally, the Chapter 7 trustee will be entitled to retain his or her own professionals to assist in the liquidation and administration of the estate.  The fees and expenses of such professionals, to the extent allowed, are also entitled to priority in payment as administrative claims.  Chapter 7 administrative costs are entitled to priority in payment over Chapter 11 administrative costs. Nevertheless, Chapter 11 administrative costs continue to have priority over all other non-administrative priority claims and non-priority unsecured claims in the bankruptcy case.

Conversion to Chapter 7 could result in the appointment of a trustee or multiple trustees having no experience or knowledge of the prior proceedings in the bankruptcy case or of the debtors' business, books and records and assets.  A substantial amount of time would be required in order the new Chapter 7 trustee to become familiar with the Debtors, their business operations, and assets in order to wind the case up effectively.

Debtors oppose conversion of the bankruptcy case to Chapter 7 for several reasons. First, Debtors believe that in the event of a liquidation, it is likely that secured claims would exceed the value of Debtors' assets sold as distressed assets, leaving zero recovery to General Unsecured Creditors.  Conversion of the bankruptcy case could also result in an additional layer of expense for the reasons stated above further limiting the possibility of any recovery to unsecured creditors.

Under the Plan, on the other hand, money is being set aside for payment of allowed General Unsecured Claims.  Furthermore, the Reorganized Debtors and Plan Administration Agent, already familiar with the Debtors' operations, the parties, claims in the bankruptcy case, and pending litigation, will administer the Plan, eliminating the need for additional administrative expense.  Furthermore, conversion of the bankruptcy case will re-open the proof of claim bar dates and enable additional, otherwise barred claims, to be asserted.  By maintaining the bankruptcy case in Chapter 11 and confirming the Plan, the assertion of additional claims can be prevented.

Consequently, Debtors believe that the Plan is in the best interest of creditors.

## XIII.   FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

### A.      <u>Tax Consequences to Creditors</u>

The exact tax treatment depends on each creditor's claim, the amount received under the Plan, and upon whether, and to what extent, such creditor has taken a bad debt reduction in prior years with respect to a particular debt owed by the applicable Debtor.

**THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT ITS OWN TAX ADVISORS FOR THE FEDERAL, STATE, LOCAL AND FOREIGN**

**INCOME AND OTHER TAX CONSEQUENCES THAT MAY BE APPLICABLE UNDER THE PLAN.**

## XIV.   CONCLUSION AND RECOMMENDATION

Debtors believe that confirmation of the Plan is in the best interests of the creditors, is feasible and is a better alternative than conversion of these cases to Chapter 7.  Accordingly, the Debtors recommend that the Plan be accepted by those creditors entitled to vote.

Dated: July 16, 2019

**KELLY HART & HALLMAN LLP**

By:  /s/ *Michael McConnell*
Michael McConnell
Texas Bar I.D. 13447300
michael.mcconnell@kellyhart.com
Nancy Ribaudo
Texas Bar I.D. 24026066
nancy.ribaudo@kellyhart.com
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone:  (817) 332-2500
Facsimile: (817) 878-9280

*Counsel for the Debtors*

2945662.9

---