**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SOVRANO LLC, et. al., [1] | § | CASE NO. 19-40067-11 |
| | § | |
| Debtors. | § | |

**FIRST AMENDED JOINT PLAN OF REORGANIZATION, AS MODIFIED FOR**

**SOVRANO, LLC,**
**MR. GATTI'S , LP,**
**GATTI'S GREAT PIZZA, INC.,**
**KEYCORP, LLC,**
**GIGI'S CUPCAKES, LLC,**
**GIGI'S OPERATING, LLC, AND**
**GIGI'S OPERATING II, LLC**

Michael McConnell
Texas Bar I.D. 13447300
Nancy L. Ribaudo
Texas Bar I.D. 24026066
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Telecopy: (817)878-9280

*Counsel for Debtors*

Dated: October 17, 2019

---

[1] The Debtors in these jointly administered chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sovrano, LLC (1470); Mr. Gatti's, LP (0879); Gatti's Great Pizza, Inc. (6061); Gigi's Cupcakes, LLC (8356); Gigi's Operating, LLC (0621); Gigi's Operating II, LLC (8396); and KeyCorp, LLC (1251).

## TABLE OF CONTENTS

**Page**

**ARTICLE I**      **DEFINITIONS, CONSTRUCTION, AND INTERPRETATION** ..............1

**1.1**      "Administrative Claim" ...................................................................2

**1.2**      "Allowed" ........................................................................................2

**1.3**      "Bankruptcy Case" ..........................................................................2

**1.4**      "Bankruptcy Code" ..........................................................................2

**1.5**      "Bankruptcy Court" .........................................................................2

**1.6**      "Bankruptcy Rules" .........................................................................2

**1.7**      "Bar Date" .......................................................................................2

**1.8**      "Cash" ..............................................................................................2

**1.9**      "Causes of Action" ..........................................................................3

**1.10**      "Chapter 11 Cases" ..........................................................................3

**1.11**      "Claim" ............................................................................................3

**1.12**      "Claims Objection Deadline" ..........................................................3

**1.13**      "Confirmation Hearing" ...................................................................3

**1.14**      "Confirmation Order" .......................................................................3

**1.15**      "Contested" ......................................................................................3

**1.16**      "Court" .............................................................................................4

**1.17**      "Cure Claim" ...................................................................................4

**1.18**      "Debtors" ..........................................................................................4

**1.19**      "Disclosure Statement" ....................................................................4

**1.20**      "Effective Date" ..............................................................................4

**1.21**      "Equity Interest" ..............................................................................4

**1.22**      "Estate" ............................................................................................4

**1.23**      "Fee Application" .............................................................................4

**1.24**      "Gatti's Cash Contribution" ............................................................4

**1.25**      "Gatti's Cash and Guaranty Contribution" .....................................5

**1.26**      "Gatti's Debtors" .............................................................................5

**1.27**      "Gatti's GUC Fund" ........................................................................5

**1.28**      "General Unsecured Claim" .............................................................5

**1.29**      "Gigi's Cash Contribution" .............................................................5

**1.30** "Gigi's Cash and Guaranty Contribution"..................................................5

**1.31** "Gigi's Debtors"..................................................5

**1.32** "Gigi's GUC Fund"..................................................5

**1.33** "Interest"..................................................5

**1.34** "Initial Distribution Date"..................................................5

**1.35** "Other Priority Claim"..................................................6

**1.36** "Other Secured Claim"..................................................6

**1.37** "Person"..................................................6

**1.38** "Petition Date"..................................................6

**1.39** "Plan" or "Plan of Reorganization"..................................................6

**1.40** "Plan Administration Agent" or "Plan Administrator"..................................................6

**1.41** "Priority Tax Claim"..................................................6

**1.42** "Professional"..................................................6

**1.43** "Professional Fee Claim"..................................................6

**1.44** "Rejection Claim"..................................................6

**1.45** "Reorganized Debtors"..................................................6

**1.46** "Schedules"..................................................6

**1.47** "Secured Claim of Equity Bank – Gatti's Debtors"..................................................7

**1.48** "Secured Claim of Equity Bank – Gigi's Debtors"..................................................7

**1.49** "Secured Tax Claim"..................................................7

**1.50** "Subordinated Claim"..................................................7

**1.51** "Voting Deadline"..................................................7

**ARTICLE II**   **UNCLASSIFIED CLAIMS**..................................................**7**

**2.1** Administrative Claims..................................................7

**2.2** Allowance of Administrative Claims..................................................8

**2.3** Payment of Allowed Administrative Claims..................................................8

**2.4** Ordinary Course of Business Claims..................................................8

**2.5** Post-Effective Date Fees and Expenses..................................................8

**2.6** Priority Tax Claims..................................................9

**2.7** United States Trustee Fees..................................................9

**ARTICLE III**   **CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**..................................................**10**

**3.1** Classification..................................................10

**ARTICLE IV**   **IDENTIFICATION OF UNIMPAIRED AND  IMPAIRED CLAIMS AND INTERESTS** ...........................................................**10**

    **4.1**   Unimpaired Claims and Interests.....................................................10

    **4.2**   Impaired Claims and Interests ........................................................10

    **4.3**   Controversy Concerning Impairment ..............................................11

**ARTICLE V**   **TREATMENT OF CLAIMS AND INTERESTS** ......................................**11**

    **5.1**   Class 1 – Other Priority Claims. .....................................................11

    **5.2**   Class 2 – Secured Tax Claims. ........................................................11

    **5.3**   Class 3 – Secured Claim of Equity Bank – Gatti's Debtors. ...............12

    **5.4**   Class 4 – Secured Claim of Equity Bank – Gigi's Debtors. ................12

    **5.5**   Class 5 – Other Secured Claims.......................................................13

    **5.6**   Class 6 – General Unsecured Claims - Sovrano. ...............................13

    **5.7**   Class 7 – General Unsecured Claims – Mr. Gatti's, LP. .....................14

    **5.8**   Class 8 – General Unsecured Claims – Gatti's Great Pizza, Inc. ........14

    **5.9**   Class 9 – General Unsecured Claims – KeyCorp, LLC.......................14

    **5.10**   Class 10 – General Unsecured Claims – Gigi's Cupcakes, LLC.........15

    **5.11**   Class 11 – General Unsecured Claims – Gigi's Operating, LLC. ...............................................................................................15

    **5.12**   Class 12 – General Unsecured Claims – Gigi's Operating II, LLC. ...............................................................................................15

    **5.13**   Class 13 – Subordinated Claims – Gatti's Debtors............................16

    **5.14**   Class 14 – Subordinated Claims – Gigi's Debtors.............................16

    **5.15**   Class 15–Equity Interests – Gatti's Debtors. ....................................16

    **5.16**   Class 16–Equity Interests – Gigi's Debtors. .....................................16

**ARTICLE VI**   **MEANS FOR IMPLEMENTATION OF THE PLAN.............................17**

    **6.1**   Reorganized Debtors......................................................................17

    **6.2**   Vesting of Assets in the Reorganized Debtors on Confirmation Date ............................................................................................17

    **6.3**   Extinguishment of Equity Interests; Equity Interests in Reorganized Debtors...................................................................18

    **6.4**   Management of the Reorganized Debtors..........................................18

    **6.5**   Plan Administration Agent .............................................................18

    **6.6**   Post-Confirmation Liquidation of Gigi's Debtors Assets and Prosecution of Causes of Action by Plan Administrator ...................18

| **6.7** | Sources of Cash | 19 |
| **6.8** | Limited Substantive Consolidation of General Unsecured Claims. | 19 |
| **6.9** | Preservation of Causes of Action | 20 |
| **6.10** | Franchise Disclosure Document | 20 |
| **6.11** | Effectuating Documents; Further Transactions | 20 |
| **6.12** | Closing of Bankruptcy Case | 20 |
| **ARTICLE VII** | **TREATMENT OF EXECUTORY CONTRACTS** | **21** |
| **7.1** | General Treatment of Executory Contracts and Unexpired Leases: Assumed if Not Rejected by the Gatti's Debtors and Rejected by the Gigi's Debtors | 21 |
| **7.2** | Cure Payments and Release of Liability | 21 |
| **7.3** | Bar to Rejection Claims | 21 |
| **7.4** | Rejection Claims | 22 |
| **7.5** | Insurance Policies | 22 |
| **7.6** | Contracts and Leases Entered into After the Petition Date | 22 |
| **ARTICLE VIII** | **CLAIM OBJECTIONS; DISTRIBUTIONS UNDER THE PLAN** | **22** |
| **8.1** | Allowance of Claims and Equity Interests | 22 |
| **8.2** | Objections to Claims | 22 |
| **8.3** | Objection Deadline | 23 |
| **8.4** | Settlement of Contested Claims | 23 |
| **8.5** | Setoffs and Waiver | 23 |
| **8.6** | No Interest on Claims | 23 |
| **8.7** | Procedures for Treating and Resolving Contested and Contingent Claims | 23 |
| **8.8** | Allowance of Claims Subject to 11 U.S.C. § 502(d) | 25 |
| **8.9** | Distributions | 25 |
| **ARTICLE IX** | **EFFECT OF CONFIRMATION AND EFFECTIVE DATE** | **26** |
| **9.1** | Binding Effect | 26 |
| **9.2** | Injunction Against Interference with Plan | 27 |
| **9.3** | Discharge of Gatti's Debtors | 27 |
| **9.4** | Injunction | 27 |
| **9.5** | Exculpation | 28 |
| **9.6** | Term of Bankruptcy Injunction or Stays | 28 |

**ARTICLE X**    **IMPLEMENTATION PROVISIONS** ........................................................**28**

    **10.1**   Conditions Precedent to the Effective Date .......................................28

    **10.2**   Implementation ...................................................................................28

    **10.3**   Compliance with Tax Requirements....................................................28

    **10.4**   Modification of the Plan .....................................................................28

    **10.5**   Revocation or Withdrawal of the Plan................................................29

    **10.6**   Integration Clause ..............................................................................29

    **10.7**   General Notices...................................................................................29

    **10.8**   Governing Law ...................................................................................30

    **10.9**   Retention of Jurisdiction....................................................................30

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SOVRANO LLC, et. al., [2] | § | CASE NO. 19-40067-11 |
| | § | |
| Debtors. | § | |

**FIRST AMENDED JOINT PLAN OF REORGANIZATION, AS MODIFIED
FOR
SOVRANO, LLC, MR. GATTI'S, LP, GATTI'S GREAT PIZZA, INC.,
KEYCORP, LLC, GIGI'S CUPCAKES, LLC, GIGI'S OPERATING, LLC, AND
GIGI'S OPERATING II, LLC**

Sovrano, LLC, Mr. Gatti's, LP, Gatti's Great Pizza, Inc., KeyCorp, LLC, Gigi's Cupcakes, LLC, Gigi's Operating, LLC, and Gigi's Operating II, LLC ("Debtors") hereby propose this First Amended Joint Plan of Reorganization (the "Plan") for their jointly-administered bankruptcy estates, pursuant to section 1121, chapter 11 of title 11 of the United States Code.

## ARTICLE I
## DEFINITIONS, CONSTRUCTION, AND INTERPRETATION

Unless the context otherwise requires, capitalized terms as used herein shall have the respective meanings set forth below. A capitalized term used herein that is not defined in this Article or otherwise defined in the Plan shall have the meaning ascribed to that term, if any, in the Bankruptcy Code. The rules of construction contained in § 102 of the Bankruptcy Code shall apply to the construction of the Plan, provided that in the event of any conflict between the Plan and the Disclosure Statement, the Plan shall govern. In the event a conflict between the Plan and any document implementing the Plan arises, the document shall govern. In the event a conflict between the Plan and the Confirmation Order arises, the Confirmation Order shall govern. Whenever the context requires, words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender and vice versa.

---

[2] The Debtors in these jointly administered chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sovrano, LLC (1470); Mr. Gatti's, LP (0879); Gatti's Great Pizza, Inc. (6061); Gigi's Cupcakes, LLC (8356); Gigi's Operating, LLC (0621); Gigi's Operating II, LLC (8396); and KeyCorp, LLC (1251).

**1.1** **"Administrative Claim"** means a claim for payment of an administrative expense of a kind within the scope of section 503(b) of the Bankruptcy Code and entitled to priority under section 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) actual, necessary costs and expenses of preserving the Debtors' estates and operating their business, including wages and salaries for services rendered; (b) Professional Fee Claims and all other Claims for compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code; and, (c) all fees and charges assessed against the estates under the Bankruptcy Code or under chapter 123 of title 28 of the United States Code.

**1.2** **"Allowed"** means with respect to any Claim: (a) any Claim, proof of which is timely filed on or before the applicable Bar Date (or that by the Bankruptcy Code or Final Order is not or shall not be required to be filed); (b) any Claim that is listed in the Schedules as of the Effective Date as not Contested, not disputed, not contingent, and not unliquidated, and for which no proof of claim has been timely filed; or (c) any Claim allowed pursuant to the Plan or a final order of the Court (including pursuant to any stipulation approved by the Court); *provided that* with respect to any Claim described in clauses (a) or (b) above, such Claim shall be considered Allowed only if and to the extent that no objection to the allowance thereof has been filed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Court or such an objection is so filed and the Claim has been Allowed by a final order; *provided further* that any Claim described in clauses (a), (b), and (c) above shall not include any Claim on account of a right, option, warrant, right to convert, or other right to purchase an Interest. Except as otherwise specified in the Plan or an order of the Court, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date. Any Claim that has been listed in the Schedules as Contested, contingent, or unliquidated, and for which no proof of claim has been timely filed, is not considered Allowed and shall be expunged without further action and without any further notice to or action, order, or approval of the Court.

**1.3** **"Bankruptcy Case"** means the chapter 11 case for each of the Debtors jointly administered under Sovrano, LLC, Case No. 19-40067.

**1.4** **"Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, as amended, and codified at title 11 of the United States Code.

**1.5** **"Bankruptcy Court"** means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

**1.6** **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code.

**1.7** **"Bar Date"** means the last date established by the Bankruptcy Court for filing proofs of claims in the Bankruptcy Case. The Bar Date established for these cases was May 30, 2019.

**1.8** **"Cash"** means the legal tender of the United States of America or the equivalent thereof.

**1.9** **"Causes of Action"** means as to each Debtor, any action, claim, cause of action, controversy, third-party claim, demand, right, lien, indemnity, contribution, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, Contested or uncontested, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law, or in equity or pursuant to any other theory of law. For the avoidance of doubt, a "Cause of Action" includes: (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defense set forth in section 558 of the Bankruptcy Code; and (e) any state or foreign law fraudulent transfer or similar claim.

**1.10** **"Chapter 11 Cases"** means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court; and (b) when used with reference to all of the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

**1.11** **"Claim"** shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

**1.12** **"Claims Objection Deadline"** means the date by which objections to claims shall be filed with the Bankruptcy Court and served upon the respective holder(s) thereof as provided in Section 8.3 of the Plan.

**1.13** **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to Bankruptcy Code § 1128.

**1.14** **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.15** **"Contested"** means, with respect to a Claim or Interest, a Claim against or Interest in a Debtor, or any portion thereof, that has not been Allowed pursuant to the Plan or a Final Order and (a) that is listed in the Schedules as disputed, contingent, or unliquidated; (b) that is listed in the Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim or Interest has been timely filed or deemed timely filed with the Bankruptcy Court, to the extent the amount asserted in the proof of Claim or Interest exceeds the scheduled amount; (c) as to which any party in interest has timely filed an objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules or any order of the Bankruptcy Court, or which is otherwise disputed by a Debtor or the Plan Administrator in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn or resolved or determined by a Final Order; or (d) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim or Interest has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court. To the extent an objection related to the allowance of only a part of a Claim or Interest

has been timely filed, such Claim or Interest shall be a Contested Claim only to the extent of the objection.

**1.16** **"Court"** means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division having jurisdiction over the Chapter 11 Cases, and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to section 151 of title 28 of the United States Code, the United States District Court for the Northern District of Texas.

**1.17** **"Cure Claim"** means a monetary Claim based upon a Debtor's defaults under an executory contract or unexpired lease at the time such contract or lease is assumed by the Debtor pursuant to section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

**1.18** **"Debtors"** means Sovrano, LLC, Mr. Gatti's, LP, Gatti's Great Pizza, Inc., KeyCorp, LLC, Gigi's Cupcakes, LLC, Gigi's Operating, LLC, Gigi's Operating II, LLC, debtors in the Bankruptcy Case individually and collectively as appropriate.

**1.19** **"Disclosure Statement"** means the written statement, as amended, supplemented, or modified from time to time, describing the Plan that is prepared and distributed in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

**1.20** **"Effective Date"** means the first business day that is thirty (30) days (as calculated in accordance with Bankruptcy Rule 9006(a)) after entry of the Confirmation Order and all conditions to the Effective Date have been met or waived and no stay of the Confirmation Order is in effect. The Debtors will file and serve notice of the Effective Date within five (5) business days after its occurrence.

**1.21** **"Equity Interest"** means any common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests or units of any Debtor, including, without limitation, any options, warrants, rights, or other securities or agreements to acquire the common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (whether or not arising under or in connection with any employment agreement), including any Claim against the Debtors that is subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

**1.22** **"Estate"** means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

**1.23** **"Fee Application"** means an application for the allowance of a Professional Fee Claim.

**1.24** **"Gatti's Cash Contribution"** means the payment of $25,000 by R. J. Phillips and $25,000 by Kyle C. Mann to the Gatti's GUC Fund on the Plan Effective Date.

**1.25** **"Gatti's Cash and Guaranty Contribution"** means the Gatti's Cash Contribution and guaranty of the Reorganized Gatti's Debtors' note obligation to Equity Bank by R. J. Phillips and Kyle C. Mann.

**1.26** **"Gatti's Debtors"** means Sovrano, LLC, Mr. Gatti's LP and Gatti's Great Pizza, Inc.

**1.27** **"Gatti's GUC Fund"** means the fund to be distributed pro rata to holders of Allowed General Unsecured Claims against the Gatti's Debtors comprised of:  (i) $25,000 Gatti's Cash Contribution each made by R. J. Phillips and Kyle C. Mann on the Effective Date, (ii) four (4) equal installments in the amount of $37,500 made by the Reorganized Gatti's Debtors every six (6) months following the Effective Date from Cash on hand, including Cash generated from operations and the sale of assets, and (iii) any amounts collected from the prosecution of any Causes of Action belonging to the Gatti's Debtors, less costs of litigation and collection.

**1.28** **"General Unsecured Claim"** means a claim against a Debtor that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim, Secured Tax Claim, Secured Claim of Equity Bank, Other Secured Claim, Subordinated Claim, or Equity Interest, and shall include any claim arising from the rejection of an executory contract or unexpired lease pursuant to Bankruptcy Code § 365.

**1.29** **"Gigi's Cash Contribution"** means the payment of $1,000 by R. J. Phillips and $1,000 by Kyle C. Mann to the Gigi's GUC Fund on the Plan Effective Date.

**1.30** **"Gigi's Cash and Guaranty Contribution"** means the Gigi's Cash Contribution and guaranty of the Reorganized Gigi's Debtors' note obligation to Equity Bank by R. J. Phillips and Kyle C. Mann.

**1.31** **"Gigi's Debtors"** means KeyCorp, LLC, Gigi's Cupcakes, LLC, Gigi's Operating, LLC and Gigi's Operating II, LLC.

**1.32** **"Gigi's GUC Fund"** means the fund to be distributed pro rata to holders of Allowed General Unsecured Claims against the Gigi's Debtors comprised of: (i) the $1,000 Gigi's Cash Contribution each made by R. J. Phillips and Kyle C. Mann on the Effective Date, (ii) Cash on hand held by the Gigi's Debtors on the Plan Effective Date, which amount is $50,000, and (iii) any amounts collected from the prosecution of any Causes of Action belonging to the Gigi's Debtors, less costs of litigation and collection.

**1.33** **"Interest"** means any lien, encumbrance, Claim or Equity Interest.

**1.34** **"Initial Distribution Date"** means the date on which the Plan Administrator makes the first distribution to holders of Class 6, 7 and 8 Allowed General Unsecured Claims, which date shall occur no later than the 60th day following the date the Gatti's GUC Fund is fully funded.

**1.35** **"Other Priority Claim"** means a claim entitled to priority pursuant to sections 507(a)(1) - 507(a)(7) of the Bankruptcy Code, other than a Priority Tax Claim, Secured Tax Claim, or an Administrative Claim.

**1.36** **"Other Secured Claim"** means a secured claim, other than a Secured Tax Claim or Secured Claim of Equity Bank.

**1.37** **"Person"** shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

**1.38** **"Petition Date"** means the date on which each Debtor filed its voluntary petition for relief commencing the Chapter 11 Cases, which date was January 25, 2019 for Key Corp, LLC, and January 4, 2019 for all other Debtors.

**1.39** **"Plan"** or **"Plan of Reorganization"** means this Plan of Reorganization either in its present form or as it may hereafter be altered, amended or modified from time to time.

**1.40** **"Plan Administration Agent"** or **"Plan Administrator"** means the Chief Financial Officer of the Gigi's Debtors and Chief Financial Officer of the Gatti's Debtors, who shall be responsible for reconciling General Unsecured Claims after the Effective Date, effectuating distributions on account thereof, and winding up and liquidating the Reorganized Gigi's Debtors.

**1.41** **"Priority Tax Claim"** means any Claim, whether secured or unsecured, against a Debtor specified in section 507(a)(8) of the Bankruptcy Code.

**1.42** **"Professional"** means a Person employed pursuant to a final order of the Court in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

**1.43** **"Professional Fee Claim"** means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Effective Date to the extent such fees and expenses have not been paid pursuant to the any order of the Court.

**1.44** **"Rejection Claim"** means a claim by a party to an executory contract or unexpired lease with the Debtor that has not been assumed by the Debtor pursuant to the Plan or a prior final order of the Bankruptcy Court entered in this Bankruptcy Case.

**1.45** **"Reorganized Debtors"** means each of the Debtors reorganized pursuant to this Plan from and after the Effective Date.

**1.46** **"Schedules"** means the schedules of assets and liabilities and the Statement of Financial Affairs filed by a Debtor as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statements have been or may be supplemented or amended.

**1.47** **"Secured Claim of Equity Bank – Gatti's Debtors"** means the allowed secured claim of Equity Bank against the Gatti's Debtors in the approximate amount of $19,568,190.77, subject to any necessary credits or debits, based on the prepetition consolidating loan agreement dated June 2018 executed by Sovrano and Mr. Gatti's, which loan is subject to the Cross Default/Cross Collateral Agreement executed in October 2018, by Sovrano, Mr. Gatti's, GGP, Gigi's Cupcakes, Gigi's Operating, and the owners of Sovrano and KeyCorp. Equity Bank also has a super-priority administrative claim for any diminution in value of collateral pursuant to the cash collateral orders entered in the Bankruptcy Case.

**1.48** **"Secured Claim of Equity Bank – Gigi's Debtors"** means the allowed secured claim of Equity Bank against Gigi's Cupcakes and Gigi's Operating in the approximate amount of $8,430,243.12, subject to any necessary credits or debits, based on the prepetition consolidating loan agreement dated June 2018, executed by Gigi's Cupcakes and Gigi's Operating, which loan is subject to the Cross Default/Cross Collateral Agreement executed in October 2018, by Sovrano, Mr. Gatti's, GGP, Gigi's Cupcakes, Gigi's Operating, and the owners of Sovrano and KeyCorp. Equity Bank also has a super-priority administrative claim for any diminution in value of collateral pursuant to the cash collateral orders entered in the Bankruptcy Case.

**1.49** **"Secured Tax Claim"** means any claim for ad valorem taxes that is based on or assessed against any real or personal property of a Debtor and is secured as of the Petition Date by a lien or security interest against such property, which claim shall be allowed only to the extent that the lien or security interest is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, and only to the extent of the value of the assets or property securing such claim "Subordinated Claim".

**1.50** **"Subordinated Claim"** means a Claim (a) by an insider or an affiliate of a Debtor or by an entity of which the Debtor is an insider or an affiliate, including without limitation, (i) any Claim asserted by Kyle C. Mann or R. J. Phillips (ii) any Claim asserted by Food Business Services, LLC, Group Acquisitions, LLC, or FundCorp, Inc.; (iii) any intercompany Claim between the Debtors (b) otherwise subordinated pursuant to 11 U.S.C. § 510.

**1.51** **"Voting Deadline"** means the deadline for submitting a ballot to vote for or against the Plan set by the Bankruptcy Court.

## ARTICLE II
## UNCLASSIFIED CLAIMS

**2.1** **Administrative Claims**.

**(a)** **Time for Filing Administrative Claims**. The holder of any Administrative Claim other than: i) a Professional Fee Claim; ii) an allowed Administrative Claim; or iii) a governmental claim pursuant to Bankruptcy Code § 503(b)(1)(D), shall be required to file and serve on all parties required to receive such notice a request for the allowance of such Administrative Claim on or before forty-five (45) days after the Effective Date. Such

request must include at a minimum:  i) the name of the holder of the Claim; ii) the amount of the Claim; and, iii) the basis of the Claim.  Failure to timely and properly file and serve such request shall result in the Administrative Claim being forever barred and discharged.  Objections to such requests must be filed and served pursuant to the Bankruptcy Rules on the requesting party, the Debtors and Reorganized Debtor within twenty (20) days after the filing of the request.

**(b)     Time for Filing Professional Fee Claims**.  Each Professional who holds or asserts an Administrative Claim that is a Professional Fee Claim for compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date shall be required to file with the Bankruptcy Court and serve on all parties required to receive such notice a Fee Application within forty-five (45) days after the Effective Date.  Failure to timely and properly file and serve a Fee Application as required under the Plan shall result in the Professional Fee Claim being forever barred and discharged. No Professional Fee Claim will be deemed allowed until an order allowing the Professional Fee Claim becomes a final order.  Objections to such applications must be filed and served pursuant to the Bankruptcy Rules on the requesting party, the Debtors and Reorganized Debtors within twenty (20) days after the filing of the applicable Fee Application.  No hearing may be held until the twenty (20) day objection period has terminated.

**2.2     Allowance of Administrative Claims**.  An Administrative Claim with respect to which notice has been properly given pursuant to subparagraph 2.1(a) of the Plan, shall become an Allowed Administrative Claim if no timely objection is filed.  If a timely objection is filed, the Administrative Claim shall become an Allowed Administrative Claim only to the extent Allowed by a final order.  An Administrative Claim that is a Professional Fee Claim, and with respect to which a Fee Application has been properly filed and served pursuant to subparagraph 2.1(b) of the Plan, shall become an Allowed Administrative Claim only to the extent allowed by a final order.

**2.3     Payment of Allowed Administrative Claims**.  Except to the extent that a holder of an Allowed Administrative Claim has been paid prior to the Effective Date, or agrees to a different treatment, each holder of an Allowed Administrative Claim shall receive, in full satisfaction release and discharge of and exchange for such Administrative Claim, Cash equal to the allowed amount of such Administrative Claim (after application of any retainer held by such holder) on the later of:  i) the Effective Date (or as reasonably practicable thereafter) or ii) fifteen (15) days after the allowance date.

**2.4     Ordinary Course of Business Claims**.  Holders of Administrative Claims based on liabilities incurred in the ordinary course of business of the Debtors during the Bankruptcy Case (other than claims of government units for taxes or claims and/or penalties related to such taxes, or alleged Administrative Claims arising in tort) shall not be required to file any request for payment of such claims.  Liabilities incurred in the ordinary course of business of the Debtors through the Effective Date will be paid by the Debtors or Reorganized Debtors, pursuant to the terms and conditions giving rise to such Administrative Claim, without any further action by the holders of such Administrative Claims.

**2.5     Post-Effective Date Fees and Expenses** .  Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Debtors or Reorganized Debtors

---

shall, in the ordinary course of business and without any further notice or application to or action, order, or approval of the Court, pay in Cash the reasonable, actual, and documented legal, professional, or other fees and expenses related to implementation of the Plan and consummation incurred on or after the Effective Date by the Professionals.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or Reorganized Debtors may employ and pay any Professional for fees and expenses incurred after the Effective Date in the ordinary course of business without any further notice to or action, order, or approval of the Court.

**2.6    Priority Tax Claims**.  Each holder of an Allowed Priority Tax Claim, shall receive on or as soon as is reasonably practicable after the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, at the Debtors' or Reorganized Debtors' option, either (i) payment in Cash equal to the Allowed amount of such Allowed Priority Tax Claim including any interest required to be paid under the Bankruptcy Code; (ii) equal semi-annual Cash payments with interest at the applicable non-bankruptcy rate in an aggregate amount equal to such Allowed Priority Tax Claim, including any interest required to be paid pursuant to the Bankruptcy Code, with payments commencing on, or as soon thereafter as is practicable, the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and continuing over a period ending no later than five (5) years after the Petition Date, or (iii) such other treatment as may be agreed upon in writing by the applicable Debtor or Reorganized Debtor and such holder.

Notwithstanding the foregoing, any penalty arising with respect to or in connection with an allowed Priority Tax Claim shall be treated as a General Unsecured Claim against the applicable Debtor.

Notwithstanding anything else to the contrary in the Plan or Confirmation Order: (i) nothing provided in the Plan or Confirmation Order shall affect or impair any statutory or common law setoff rights of the Texas Comptroller of Public Accounts (the "Texas Comptroller") in accordance with 11 U.S.C. § 553; (ii) nothing provided in the Plan or Confirmation Order shall affect or impair any rights of the Texas Comptroller to pursue any non-debtor third parties for tax debts or claims; (iii) nothing provided in the Plan or Confirmation Order shall be construed to preclude the payment of applicable interest on the Texas Comptroller's administrative expense tax claims; (iv) to the extent that interest is payable with respect to any administrative expense, priority or secured tax claim of the Texas Comptroller, the interest rate shall be the statutory rate of interest; and (v) the Texas Comptroller is not required to file a motion or application for payment of administrative expense claims; the Texas Comptroller's administrative expense claims are allowed upon filing, subject to objection on substantive grounds.  All post-petition taxes due and owing to the Texas Comptroller shall be paid in full on the later to occur of the Plan's Effective Date, or the due date.

**2.7    United States Trustee Fees**.  All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid by the Debtors or Reorganized Debtors, as applicable, for each quarter (including any fraction thereof) until the Bankruptcy Cases are converted, dismissed or a final decree is issued, whichever occurs first.  All such fees incurred by the Debtors prior to the Confirmation Date shall be paid on or before the Effective Date.  The Reorganized Debtors shall continue to

file quarterly post-confirmation operating reports in accordance with the U.S. Trustee's Region 6 Guidelines for Debtors-in-Possession.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**3.1** **Classification**.  All allowed claims, except allowed Administrative Claims and allowed Priority Tax Claims, are classified under the Plan, as follows:

| CLASS | STATUS |
|---|---|
| Class 1:   Other Priority Claims | Unimpaired |
| Class 2:   Secured Tax Claims | Impaired |
| Class 3:   Secured Claim of Equity Bank- Gatti's Debtors | Impaired |
| Class 4:   Secured Claim of Equity Bank – Gigi's Debtors | Impaired |
| Class 5:   Other Secured Claims | Unimpaired |
| Class 6:   General Unsecured Claim - Sovrano | Impaired |
| Class 7:   General Unsecured Claim – Mr. Gatti's, LP | Impaired |
| Class 8:   General Unsecured Claim – Gatti's Great Pizza, Inc. | Impaired |
| Class 9:   General Unsecured Claim – KeyCorp, LLC | Impaired |
| Class 10:  General Unsecured Claim – Gigi's Cupcakes, LLC | Impaired |
| Class 11:  General Unsecured Claim – Gigi's Operating, LLC | Impaired |
| Class 12:  General Unsecured Claim – Gigi's Operating II, LLC | Impaired |
| Class 13:  Subordinated Claims – Gatti's Debtors | Impaired |
| Class 14:  Subordinated Claims – Gigi's Debtors | Impaired |
| Class 15:  Equity Interests – Gatti's Debtors | Impaired |
| Class 16:  Equity Interests – Gigi's Debtors | Impaired |

## ARTICLE IV
## IDENTIFICATION OF UNIMPAIRED AND
## IMPAIRED CLAIMS AND INTERESTS

**4.1** **Unimpaired Claims and Interests**.  Claims against the Debtors in Class 1 and 5 are not impaired under the Plan, and the holders of those Claims are conclusively presumed to have accepted the Plan under Bankruptcy Code § 1126(f).

**4.2** **Impaired Claims and Interests**.  Claims against the Debtors in Classes 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 13 and 14 are impaired under the Plan and the holders of those claims are entitled to vote to accept or reject the Plan.  The holders of Equity Interests in Classes 15 and 16

are impaired and will not receive or retain any property on account of such Equity Interests, and therefore are deemed to have rejected the Plan under Bankruptcy Code § 1126(g).

**4.3** **Controversy Concerning Impairment**.  In the event of a controversy as to whether any claim or class of claims is impaired under the Plan, the Bankruptcy Court will, after notice and a hearing, determine the controversy.

## ARTICLE V
## TREATMENT OF CLAIMS AND INTERESTS

**5.1** **Class 1 – Other Priority Claims.**

**(a)** **Description**.  Class 1 consists of the Other Priority Claims.  Debtors do not believe that there are any Class 1 Claims.

**(b)** **Treatment**.  Except to the extent that a holder of an Allowed Other Priority Claim has been paid prior to the Effective Date, or agrees to a different treatment in writing with the Debtors or Reorganized Debtors or is the subject of an order entered with respect to the treatment of such Other Priority Claim prior to the Effective Date, each holder of an Allowed Other Priority Claim, in full satisfaction, release and discharge of and exchange for such Claim, shall receive Cash in an amount equal to the Allowed amount of such priority claim in accordance with Bankruptcy Code § 1129(a)(9), on (or as reasonably practicable thereafter) the later of:  i) the Effective Date; and, ii) the date such Claim in Class 1 becomes an Allowed Claim.  Notwithstanding the foregoing, to the extent the Allowed amount of an Other Priority Claim asserting priority treatment under Bankruptcy Code §§ 507(a)(4) and (5) exceeds the statutory cap applicable to such Claim, such excess shall be treated as a General Unsecured Claim against the appropriate Debtor.

**(c)** **Impairment and Voting**.  Class 1 Claims are not impaired under the Plan. Each holder of an Allowed Class 1 Claim shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code § 1126(f) and, therefore, is not entitled to vote to accept or reject the Plan.

**5.2** **Class 2 – Secured Tax Claims.**

**(a)** **Description**.  Class 2 consists of Secured Tax Claims.

**(b)** **Treatment**.  On or as soon as is reasonably practicable after the later of the Effective Date and the date such Secured Tax Claim becomes an Allowed Secured Tax Claim, each holder of an Allowed Secured Tax Claim shall receive at the Debtors' or Reorganized Debtors' option, either (i) payment in Cash equal to the Allowed amount of such Allowed Secured Tax Claim including any interest required to be paid under the Bankruptcy Code; (ii) equal semi-annual Cash payments with interest at the applicable non-bankruptcy rate in an aggregate amount equal to such Allowed Secured Tax Claim, including any interest required to be paid pursuant to the Bankruptcy Code, with payments commencing on, or as soon thereafter as is practicable, the later of the Effective Date and the date such Secured Tax Claim becomes an Allowed Secured Tax Claim, and continuing over a period ending no later than five

(5) years after the Petition Date, or (iii) such other treatment as may be agreed upon in writing by the applicable Debtor or Reorganized Debtor and such holder.

Notwithstanding the foregoing, the holders of Secured Tax Claims for ad valorem property taxes shall retain all liens they currently hold, whether for prepetition tax years or for the current tax year, on any property of the Debtors until they receive payment in full under the provisions of this Plan.

Ad valorem taxes for the 2019 tax year are hereby designated to be post-confirmation debt incurred in the ordinary course of business to be timely paid in the ordinary course without the necessity of the filing of administrative expense claims or requests for payment, and if not so timely paid, will be subject to state court collection procedures without the necessity of further recourse to the Bankruptcy Court.  The tax liens for the 2019 taxes are specifically retained by the holders of such Secured Tax Claims until the 2019 taxes are paid in full.

**(c)** **Impairment and Voting**.  Class 2 Claims are impaired under the Plan. Each holder of an Allowed Class 2 Claim is entitled to vote to accept or reject the Plan.

### 5.3 Class 3 – Secured Claim of Equity Bank – Gatti's Debtors.

**(a)** **Description**. Class 3 consists of the Secured Claim of Equity Bank against the Gatti's Debtors.

**(b)** **Treatment**.  The Reorganized Gatti's Debtors will execute and deliver a secured promissory note to Equity Bank on the Effective Date, in the approximate amount of $19,568,190.77 ("Gatti's Note"), subject to any necessary credits or debits.  The Gatti's Note will provide for interest only payments due monthly at an interest rate mutually agreed upon by Equity Bank and the Gatti's Debtors, beginning on the 60th day following the Effective Date of the Plan.  The Gatti's Note will be secured by all assets, real and personal, of the Reorganized Debtors and will mature on the earlier of the sale of the Gatti's Debtors or December 31, 2020, unless extended by agreement of the Reorganized Gatti's Debtors and Equity Bank.  The Gatti's Note shall be guaranteed by R. J. Phillips and Kyle C. Mann.  The Gatti's Note and the Gigi's Note shall be cross-collateralized.  All terms and conditions of the Gatti's Note, including without limitation, payment terms and events of default, shall be subject to agreement by Equity Bank, and shall be memorialized in amended and restated loan documents.  As additional security, Equity Bank also has a super-priority administrative claim for any diminution in value of collateral pursuant to the cash collateral orders entered in the Bankruptcy Case.

**(c)** **Impairment and Voting**.  The Class 3 Claim is impaired under the Plan. The holder of the Allowed Class 3 Claim is entitled to vote to accept or reject the Plan.

### 5.4 Class 4 – Secured Claim of Equity Bank – Gigi's Debtors.

**(a)** **Description**. Class 4 consists of the Secured Claim of Equity Bank against the Gigi's Debtors.

**(b)** **Treatment**. The Reorganized  Debtors will execute and deliver a secured promissory note to Equity Bank on the Effective Date, in the approximate amount of

$8,430,243.12, ("Gigi's Note") subject to any necessary credits or debits. The Gigi's Note will provide for interest only payments due monthly at an interest rate mutually agreed upon by Equity Bank and the Debtors, beginning on the 60th day following the Effective Date of the Plan. The Gigi's Note will be secured by all assets, real and personal, of the Reorganized Debtors and will mature on the earlier of the sale of the Gatti's Debtors or December 31, 2020, unless extended by agreement of the Reorganized Debtors and Equity Bank. The Gigi's Note shall be guaranteed by R. J. Phillips and Kyle C. Mann. The Gatti's Note and the Gigi's Note shall be cross-collateralized. All terms and conditions of the Gigi's Note, including without limitation, payment terms and events of default, shall be subject to agreement by Equity Bank, and shall be memorialized in amended and restated loan documents. As additional security, Equity Bank also has a super-priority administrative claim for any diminution in value of collateral pursuant to the cash collateral orders entered in the Bankruptcy Case.

(c)      **Impairment and Voting**. The Class 4 Claim is impaired under the Plan. The holder of the Allowed Class 4 Claim is entitled to vote to accept or reject the Plan.

### 5.5      Class 5 – Other Secured Claims.

(a)      **Description**. Class 5 consists of Other Secured Claims.

(b)      **Treatment**. Except to the extent that a holder of an allowed Class 5 Claim has been paid prior to the Effective Date, or agrees to a different treatment in writing with the Debtors or Reorganized Debtors, or is the subject of an order entered with respect to the treatment of such Class 5 Claim prior to the Effective Date, each holder of an Allowed Class 5 Claim shall receive, at the Reorganized Debtor's option:  (i) Cash equal to the full Allowed amount of its Class 5 Claim; (ii) reinstatement of such holder's Allowed Other Secured Claim; or, (iii) the return or abandonment of the collateral securing such Allowed Other Secured Claim.

(c)      **Impairment and Voting**. Class 5 Claims are not impaired under the Plan. Each holder of an Allowed Class 5 Claim shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code § 1126(f) and, therefore, is not entitled to vote to accept or reject the Plan.

### 5.6      Class 6 – General Unsecured Claims - Sovrano.

(a)      **Description**.  Class 6 consists of General Unsecured Claims against Sovrano, LLC.

(b)      **Treatment**. Except to the extent that a holder of an Allowed Class 6 Claim has been paid prior to the Effective Date, or agrees to a different treatment in writing with the Debtors, Reorganized Debtors or Plan Administration Agent, or is the subject of an order entered with respect to the treatment of such Class 6 Claim prior to the Effective Date, each holder of an Allowed Class 6 Claim shall receive, on or as reasonably practicable after, the later of (i) the Initial Distribution Date or (ii) the date on which such Class 6 Claim becomes an Allowed Class 6 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for such claim, its pro rata share of the Gatti's GUC Fund.

**(c)**   **Impairment and Voting**.   Class 6 Claims are impaired under the Plan. Each holder of an Allowed Class 6 Claim is entitled to vote to accept or reject the Plan.

### 5.7   Class 7 – General Unsecured Claims – Mr. Gatti's, LP.

**(a)**   **Description**.   Class 7 consists of General Unsecured Claims against Mr. Gatti's, LP.

**(b)**   **Treatment**.   Except to the extent that a holder of an Allowed Class 7 Claim has been paid prior to the Effective Date, or agrees to a different treatment in writing with the Debtors, Reorganized Debtors or Plan Administration Agent, or is the subject of an order entered with respect to the treatment of such Class 7 Claim prior to the Effective Date, each holder of an Allowed Class 7 Claim shall receive, on or as reasonably practicable after, the later of (i) the Initial Distribution Date or (ii) the date on which such Class 7 Claim becomes an Allowed Class 7 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for such claim, its pro rata share of the Gatti's GUC Fund.

**(c)**   **Impairment and Voting**.   Class 7 Claims are impaired under the Plan. Each holder of an Allowed Class 7 Claim is entitled to vote to accept or reject the Plan.

### 5.8   Class 8 – General Unsecured Claims – Gatti's Great Pizza, Inc.

**(a)**   **Description**.   Class 8 consists of General Unsecured Claims against Gatti's Great Pizza, Inc.

**(b)**   **Treatment**.   Except to the extent that a holder of an Allowed Class 8 Claim has been paid prior to the Effective Date, or agrees to a different treatment in writing with the Debtors, Reorganized Debtors or Plan Administration Agent, or is the subject of an order entered with respect to the treatment of such Class 8 Claim prior to the Effective Date, each holder of an Allowed Class 8 Claim shall receive, on or as reasonably practicable after, the later of (i) the Initial Distribution Date or (ii) the date on which such Class 8 Claim becomes an Allowed Class 8 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for such claim, its pro rata share of the Gatti's GUC Fund.

**(c)**   **Impairment and Voting**.   Class 8 Claims are impaired under the Plan. Each holder of an Allowed Class 8 Claim is entitled to vote to accept or reject the Plan.

### 5.9   Class 9 – General Unsecured Claims – KeyCorp, LLC.

**(a)**   **Description**.   Class 9 consists of General Unsecured Claims against KeyCorp, LLC.

**(b)**   **Treatment**.   Except to the extent that a holder of an Allowed Class 9 Claim has been paid prior to the Effective Date, or agrees to a different treatment in writing with the Debtors, Reorganized Debtors or Plan Administration Agent, or is the subject of an order entered with respect to the treatment of such Class 9 Claim prior to the Effective Date, each holder of an Allowed Class 9 Claim shall receive, on or as reasonably practicable after, the later

of (i) the Effective Date or (ii) the date on which such Class 9 Claim becomes an Allowed Class 9 Claim, its pro rata share of the Gigi's GUC Fund.

**(c)** **Impairment and Voting**.  Class 9 Claims are impaired under the Plan. Each holder of an Allowed Class 9 Claim is entitled to vote to accept or reject the Plan.

### 5.10    Class 10 – General Unsecured Claims – Gigi's Cupcakes, LLC.

**(a)** **Description**.  Class 10 consists of General Unsecured Claims against Gigi's Cupcakes, LLC.

**(b)** **Treatment**.  Except to the extent that a holder of an Allowed Class 10 Claim has been paid prior to the Effective Date, or agrees to a different treatment in writing with the Debtors, Reorganized Debtors or Plan Administration Agent, or is the subject of an order entered with respect to the treatment of such Class 10 Claim prior to the Effective Date, each holder of an Allowed Class 10 Claim shall receive, on or as reasonably practicable after, the later of (i) the Effective Date or (ii) the date on which such Class 10 Claim becomes an Allowed Class 10 Claim, its pro rata share of the Gigi's GUC Fund.

**(c)** **Impairment and Voting**.  Class 10 Claims are impaired under the Plan. Each holder of an Allowed Class 10 Claim is entitled to vote to accept or reject the Plan.

### 5.11    Class 11 – General Unsecured Claims – Gigi's Operating, LLC.

**(a)** **Description**.  Class 11 consists of General Unsecured Claims against Gigi's Operating, LLC.

**(b)** **Treatment**.  Except to the extent that a holder of an Allowed Class 11 Claim has been paid prior to the Effective Date, or agrees to a different treatment in writing with the Debtors, Reorganized Debtors or Plan Administration Agent, or is the subject of an order entered with respect to the treatment of such Class 11 Claim prior to the Effective Date, each holder of an Allowed Class 11 Claim shall receive, on or as reasonably practicable after, the later of (i) the Effective Date or (ii) the date on which such Class 11 Claim becomes an Allowed Class 11 Claim, its pro rata share of the Gigi's GUC Fund.

**(c)** **Impairment and Voting**.  Class 11 Claims are impaired under the Plan. Each holder of an Allowed Class 11 Claim is entitled to vote to accept or reject the Plan.

### 5.12    Class 12 – General Unsecured Claims – Gigi's Operating II, LLC.

**(a)** **Description**.  Class 12 consists of General Unsecured Claims against Gigi's Operating II, LLC.

**(b)** **Treatment**.  Except to the extent that a holder of an Allowed Class 12 Claim has been paid prior to the Effective Date, or agrees to a different treatment in writing with the Debtors, Reorganized Debtors or Plan Administration Agent, or is the subject of an order entered with respect to the treatment of such Class 12 Claim prior to the Effective Date, each holder of an Allowed Class 12 Claim shall receive, on or as reasonably practicable after, the later

of (i) the Effective Date or (ii) the date on which such Class 12 Claim becomes an Allowed Class 12 Claim, its pro rata share of the Gigi's GUC Fund.

**(c)** **Impairment and Voting**. Class 12 Claims are impaired under the Plan. Each holder of an Allowed Class 12 Claim is entitled to vote to accept or reject the Plan.

### 5.13 Class 13 – Subordinated Claims – Gatti's Debtors.

**(a)** **Description**. Class 13 consists of Subordinated Claims against the Gatti's Debtors.

**(b)** **Treatment**. Each Class 13 Claim shall be subordinated in accordance with Bankruptcy Code § 510(b). No distribution shall be made on account of any such Subordinated Claim other than in the ordinary course of business of the Reorganized Gatti's Debtors after all Allowed Claims against the Gatti's Debtors are paid in full.

**(c)** **Impairment and Voting**. Class 13 is impaired under the Plan. Each holder of an Allowed Class 13 Claim is entitled to vote to accept or reject the Plan.

### 5.14 Class 14 – Subordinated Claims – Gigi's Debtors.

**(a)** **Description**. Class 14 consists of Subordinated Claims against the Gigi's Debtors.

**(b)** **Treatment**. Each Class 14 Claim shall be subordinated in accordance with Bankruptcy Code § 510(b). No distribution shall be made on account of any such Subordinated Claim until after all Allowed Claims against the Gigi's Debtors are paid in full.

**(c)** **Impairment and Voting**. Class 14 is impaired under the Plan. Each holder of an Allowed Class 14 Claim is entitled to vote to accept or reject the Plan.

### 5.15 Class 15–Equity Interests – Gatti's Debtors.

**(a)** **Description**. All Equity Interests in the Gatti's Debtors are included in this Class.

**(b)** **Treatment**. As of the Effective Date, all Equity Interests in the Gatti's Debtors will be extinguished, and the holders of such Equity Interests will not receive or retain any property on account of such Equity Interest.

**(c)** **Impairment and Voting**. Class 15 is impaired under the Plan. Holders of allowed Class 15 Equity Interests are not entitled to vote to accept or reject the Plan.

### 5.16 Class 16–Equity Interests – Gigi's Debtors.

**(a)** **Description**. All Equity Interests in the Gigi's Debtors are included in this Class.

**(b)      Treatment**.  As of the Effective Date, all Equity Interests in the Gigi's Debtors will be extinguished, and the holders of such Equity Interests will not receive or retain any property on account of such Equity Interest.

**(c)      Impairment and Voting**.  Class 16 is impaired under the Plan.  Holders of allowed Class 16 Equity Interests are not entitled to vote to accept or reject the Plan.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

### 6.1      Reorganized Debtors

**(a)      Continued Existence on Confirmation Date**.  From and after the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order ("Confirmation Date"), each Debtor shall continue to exist as separate Debtor entities, corporation, limited liability company, partnership, or other form of entity, as the case may be.

**(b)      Management Following Confirmation**.  Following the Confirmation Date and subject to Sections 6.4, 6.5 and 6.6 of the Plan, the current officers of the Debtors shall remain and continue to manage the Debtors.

**(c)      Merger**.  On the Effective Date and immediately after the revesting of assets in the Reorganized Debtors, Reorganized Sovrano and Reorganized Mr. Gatti's, together with their wholly-owned direct or indirect subsidiaries, Sovrano GP, LLC, GGP Holdings, LLC and GGP Operations, LLC, shall merge into Mr. Gatti's Pizza, LLC, a Delaware limited liability company with the same management and ownership as Reorganized Sovrano.  After the Effective Date, all rights, duties and obligations of Sovrano and Mr. Gatti's as Reorganized Debtors under the Plan and Confirmation Order, shall be performed by Mr. Gatti's Pizza, LLC.

### 6.2      Vesting of Assets in the Reorganized Debtors on Confirmation Date.

Except as otherwise provided in the Plan, on the Effective Date and before effectuation of the merger contemplated by Plan Section 6.1, all property and assets of the Gatti's Debtors and their Estates under section 541 of the Bankruptcy Code shall vest in each applicable Reorganized Gatti's Debtor, free and clear of all Claims and Interests, but subject to the obligations of the Reorganized Gatti's Debtors as set forth in this Plan and the Confirmation Order.  On the Effective Date all property and assets of the Gigi's Debtors and their Estates will vest in each applicable Reorganized Gigi's Debtor for purposes of wind down, liquidation, and prosecution of any Causes of Action, followed by dissolution in accordance with applicable state law.

Except as otherwise set forth in this Plan or Confirmation Order, and subject to the obligations set forth therein, as of the Effective Date, the Reorganized Debtors may deal with their assets and property and conduct their business without any supervision by, or permission from the Bankruptcy Court or the Office of the United States Trustee, and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**6.3** **Extinguishment of Equity Interests; Equity Interests in Reorganized Debtors**.

(a) **Gatti's Debtors**. As of the Effective Date, any and all Equity Interests in the Gatti's Debtors will be cancelled and extinguished. New equity interests shall issue for each Equity Interest holder in the applicable Reorganized Gatti's Debtor, in exchange for the Gatti's Cash and Guaranty Contribution made by R. J. Phillips and Kyle C. Mann on the Effective Date.

(b) **Gigi's Debtors**. As of the Effective Date, any and all Equity Interests in the Gigi's Debtors will be cancelled and extinguished. New equity interests shall issue for each Equity Interest holder in the applicable Reorganized Gigi's Debtor, in exchange for the Gigi's Cash and Guaranty Contribution made by R. J. Phillips and Kyle C. Mann on the Effective Date.

**6.4** **Management of the Reorganized Debtors**.

(a) **Gatti's Debtors**. As of the Effective Date, the current officers of the Gatti's Debtors shall remain and continue to manage the Reorganized Gatti's Debtors.

(b) **Gigi's Debtors**. Post-Effective Date management of the Reorganized Gigi's Debtors for purposes of wind down, liquidation and the prosecution of any Causes of Action, shall be the responsibility of the Plan Administration Agent.

**6.5** **Plan Administration Agent**. Upon the Effective Date, the Plan Administration Agent shall be appointed to: (i) manage, wind down and liquidate the assets of the Gigi's Debtors, (ii) prosecute any Causes of Action of the Gigi's Debtors or Reorganized Gigi's Debtors, (iii) reconcile General Unsecured Claims, (iv) make all distributions for Allowed General Unsecured Claims, and (v) exercise such other powers as may be vested in the Plan Administration Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Plan Administration Agent to be necessary and proper to implement the provisions hereof.

In the event the Plan Administration Agent resigns, is removed, or is otherwise unable to serve as Plan Administration Agent, a successor Plan Administration Agent will be selected by the managers of the Reorganized Gatti's Debtors.

**6.6** **Post-Confirmation Liquidation of Gigi's Debtors Assets and Prosecution of Causes of Action by Plan Administrator**. The Plan Administration Agent shall be authorized to sell, transfer, convey or otherwise dispose of or abandon any remaining assets of the Gigi's Debtors and prosecute any Causes of Action, as shall be deemed, in his or her sole discretion, commercially reasonable and appropriate without the need for further authority of the Bankruptcy Court.

### 6.7 Sources of Cash

(a) **Payment of General Unsecured Claims by Plan Administration Agent.** The Plan Administration Agent shall pay all Allowed General Unsecured Claims from the Gatti's GUC Fund or Gigi's GUC Fund.

The Gatti's GUC Fund shall be funded from (i) the Gatti's Cash Contribution, (ii) four (4) equal installments in the amount of $37,500 made by the Reorganized Gatti's Debtors every six (6) months following the Effective Date from Cash on hand, including Cash generated from operations and the sale of assets, and (iii) any amounts collected from the prosecution of any Causes of Action belonging to the Gatti's Debtors, less costs of litigation and collection.

The Gigi's GUC Fund shall be funded from (i) the Gigi's Cash Contribution, (ii) Cash on hand held by the Gigi's Debtors on the Plan Effective Date, and (iii) any amounts collected from the prosecution of any Causes of Action belonging to the Gigi's Debtors, less costs of litigation and collection.

(b) **Payment of All Other Allowed Claims by Reorganized Debtors.** The Reorganized Debtors shall pay all other holders of Allowed Claims under the Plan from Cash on hand, including Cash from operations and the sale of assets.

### 6.8 Limited Substantive Consolidation of General Unsecured Claims. . Based upon the Debtors' prepetition operations and other factors, Debtors believe a limited substantive consolidation is necessary and appropriate to achieve a fair and meaningful distribution to holders of Allowed General Unsecured Claims. None of the Debtors currently have any significant unencumbered cash with which to pay Allowed General Unsecured Claims. The sole source of funds for distributions to holders of Allowed General Unsecured Claims under the Plan is from either the Gigi's GUC Fund, or Gatti's GUC Fund without distinction between the General Unsecured Claims of each individual Debtor. Both the Gigi's GUC Fund and Gatti's GUC Fund are to be funded from Cash Contributions for new equity or Equity Bank encumbered Cash. In these circumstances, Debtors believe that a limited substantive consolidation of General Unsecured Claims is appropriate.

Accordingly, for the purposes of effectuating the Plan, including for purposes of voting on and confirmation of the Plan, and distributions to holders of General Unsecured Claims under the Plan, the Debtors are seeking authority under section 105 of the Bankruptcy Code to substantively consolidate the Gigi's Debtors and to substantively consolidate the Gatti's Debtors solely with respect to creditors who hold General Unsecured Claims against the respective Debtors. The Plan will serve as a motion seeking entry of an order (which may be the Confirmation Order) consolidating the Gigi's Debtors and consolidating the Gatti's Debtors, as described and to the limited extent set forth above solely with respect to Allowed General Unsecured Claims.

Such consolidation (other than for purposes of effectuating the Plan) will not affect: (a) the legal and corporate structures of the Debtors; (b) pre- and post-Effective Date liens or security interests that are required to be maintained pursuant to the Plan or in connection with contracts or leases entered into by the Debtors during the Bankruptcy Cases or executory

contracts or unexpired leases that have been or will be assumed; (c) distributions or proceeds from insurance policies of the Debtors; or (d) the vesting of assets in each of the Reorganized Debtors under the Plan.

**6.9** **Preservation of Causes of Action**. The Debtors and Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically identified in the Disclosure Statement, Debtors' Schedules, Debtors' Statements of Financial Affairs, and any pleading filed in the Bankruptcy Cases, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Reorganized Debtors and Plan Administration Agent may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.  **No entity may rely on the absence of a specific reference in the Plan, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Reorganized Debtors or Plan Administration Agent will not pursue any and all available Causes of Action against it.**  The Debtors, Reorganized Debtors, and Plan Administration Agent, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any entity, except as otherwise expressly provided in the Plan.  Unless any Causes of Action against an entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Court order, the Debtors or Reorganized Debtors and Plan Administration Agent, as applicable, expressly reserve all Causes of Action.

In accordance with section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided herein, any Causes of Action that a Debtor may hold against any entity shall vest in the applicable Reorganized Debtor.  The applicable Reorganized Debtors, through their authorized agents or representatives, including the Plan Administration Agent, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtors and Plan Administration Agent shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Court.

**6.10** **Franchise Disclosure Document**.  Promptly following confirmation of the Plan and the Effective Date, the Reorganized Debtors shall update the Gatti's Franchise Disclosure Document with the necessary audit reports to allow for future franchise sales.

**6.11** **Effectuating Documents; Further Transactions**.  On the Effective Date, the Debtors, the Reorganized Debtors, the Plan Administration Agent, and their employees, agents, attorneys and professionals, shall be authorized and directed, without further Order of the Bankruptcy Court, to execute, deliver, file, and record all agreements, instruments and contracts, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions, and consummate, the Plan.

**6.12** **Closing of Bankruptcy Case**.  As soon as the Reorganized Debtors deem it advisable, the Reorganized Debtors shall file an Application for Final Decree.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS

**7.1** **General Treatment of Executory Contracts and Unexpired Leases: Assumed if Not Rejected by the Gatti's Debtors and Rejected by the Gigi's Debtors**.  On the Effective Date, and to the extent permitted by applicable law, all of the Gatti's Debtors' executory contracts and unexpired leases, including franchise agreements, shall be assumed unless such executory contract or unexpired lease ( i) is the subject of a motion to reject filed on or before the Confirmation Date or (ii) has previously been assumed or rejected pursuant to final order of the Bankruptcy Court.  A Schedule of Proposed Cure Claim amounts, if any, shall be filed at least 10 days prior to the Plan Objection Deadline.

On the Effective Date, and to the extent permitted by applicable law, all of the Gigi's Debtors' executory contracts and unexpired leases, including franchise agreements, if any, will be rejected unless such executory contract or unexpired lease has previously been assumed or rejected pursuant to final order of the Bankruptcy Court.

Entry of the Confirmation Order shall constitute the Court's order approving the assumption or rejection as applicable, of executory contracts or unexpired leases as set forth in the Plan, pursuant to sections 365(a) and 1023 of the Bankruptcy Code.  Unless otherwise indicated, assumptions or rejections of executory contracts and unexpired leases pursuant to the Plan are effective as of the Effective Date.  Each executory contract or unexpired lease assumed pursuant to the Plan but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Court.

**7.2** **Cure Payments and Release of Liability**.  All Allowed Cure Claims that may be required by section 365(b)(1) of the Bankruptcy Code under any executory contract or unexpired lease that is assumed under this Plan or pursuant to a prior final order of the Bankruptcy Court shall be paid no later than thirty (30) days after the Effective Date, or, in the case of a Contested Cure Claims, the date that a Contested Cure Claim becomes an Allowed Cure Claim.  To the extent that a party to an assumed contract or unexpired lease has not filed an appropriate pleading with the Bankruptcy Court on or before the Plan Objection Deadline disputing the amount of any Cure Claim listed in the Schedule relating to the assumption of executory contracts or expired leases, disputing the cure of any other defaults, disputing the promptness of the Cure Claim payments, or disputing the provisions of adequate assurance of future performance, then such party shall be deemed to have waived its right to dispute such matters.

**7.3** **Bar to Rejection Claims**.  If the rejection of an executory contract or unexpired lease results in damages to the other party or parties to such executory contract or unexpired lease, a claim for such damages shall be forever barred and shall not be enforceable against the Debtors, Reorganized Debtors, their Estates, Plan Administration Agent, or their properties or agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon the Debtors, Reorganized Debtors and Plan Administration Agent by the

earlier of (i) thirty (30) days after the Effective Date or (ii) such other deadline as the Bankruptcy Court may set for asserting a claim for such damages.

**7.4** **Rejection Claims**.  Any Rejection Claim arising from the rejection of an executory contract or unexpired lease shall be treated as a General Unsecured Claim against the applicable Debtor, except as limited by the provisions of sections 502(b)(6) and 502(b)(7) of the Bankruptcy Code and mitigation requirements under applicable law.  Nothing contained herein shall be deemed an admission by the Debtors, Reorganized Debtors, the Plan Administration Agent, or any other party in interest that such rejection gives rise to or results in a Rejection Claim or shall be deemed a waiver by the Debtors, Reorganized Debtors, Plan Administration Agent, or any other party in interest of any objections to such Rejection Claim if asserted.

**7.5** **Insurance Policies**.  Notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, all of the Debtors' insurance policies in force and any agreements, documents, or instruments relating thereto, shall be deemed to be assumed by the Reorganized Debtors under the Plan pursuant to section 365(a) of the Bankruptcy Code, to the extent such insurance policies are found to be executory contracts and entry of the Confirmation Order shall constitute approval of the Reorganized Debtors' assumption of each such insurance policy and any agreements, documents, or instruments relating thereto.

**7.6** **Contracts and Leases Entered into After the Petition Date**. Contracts and leases entered into after the Petition Date by any Debtor will be performed by the applicable Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business. Accordingly, such contracts and leases that have not been rejected as of the date of Confirmation will survive and remain unaffected by entry of the Confirmation Order.

<u>**ARTICLE VIII**</u>
**CLAIM OBJECTIONS; DISTRIBUTIONS UNDER THE PLAN**

**8.1** **Allowance of Claims and Equity Interests**.  After the Effective Date, the Reorganized Debtors shall have and retain any and all rights and defenses the Debtors had with respect to any Claim or Equity Interest immediately prior to the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 cases prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 cases allowing such Claim.  All settled Claims approved prior to the Effective Date pursuant to a final order of the Court pursuant to Bankruptcy Rule 9019 or otherwise shall be binding on all parties. The Reorganized Debtors and Plan Administration Agent shall have authority to settle any Contested Claim without the necessity of notice and Bankruptcy Court approval.

**8.2** **Objections to Claims**.  Any party in interest, including the Reorganized Debtors and Plan Administration Agent, may make and file objections to Claims (other than Claims that have been previously Allowed or that are Allowed under the Plan).  All objections to Claims must be filed on or before the Claims Objection Deadline.  Any Contested Claim as to which an objection is not filed on or before the Claims Objection Deadline shall be deemed to constitute an Allowed Claim under the Plan following the Claims Objection Deadline.

**8.3**     **Objection Deadline**.  Except as set forth in sections 2.1(a), and 2.1(b) of the Plan or as otherwise extended or ordered by the Bankruptcy Court, any objections to Claims must be filed no later than one hundred twenty (120) days after the Effective Date (unless such day is not a business day, in which case such deadline will be the next business Day thereafter unless extended by the Bankruptcy Court).

**8.4**     **Settlement of Contested Claims**.   The Reorganized Debtors and Plan Administration Agent, as applicable, shall have authority to settle any Contested Claim without the necessity of notice and Bankruptcy Court approval.

**8.5**     **Setoffs and Waiver**.   The Reorganized Debtors and Plan Administration Agent, as applicable, may, but shall not be required to, set-off against any claim or any payment or distribution to be made on account thereof pursuant to the Plan (before any distribution is made) any claim, right or cause of action of any nature that a Debtor or Reorganized Debtor may hold against the holder of such Claim.  Such setoffs shall not be subject to the requirements or restrictions of Bankruptcy Code § 553 concerning mutuality or when the respective items subject to setoff under this section arose, but shall be subject to the defenses and rights of the non-debtor party.  Neither the failure to effect such a setoff nor the allowance of any claim hereunder shall constitute a waiver or release by the Debtors or Reorganized Debtors of any such claims, rights or causes of action that the Debtors or Reorganized Debtors may have against such holder.  The holder of a Contested Claim who asserts a right of setoff will retain the right, subject to any defenses of a Debtor or Reorganized Debtor, until the earlier of the time when (i) the Contested Claim becomes allowed, in whole or in part, or (ii) the Claim is disallowed by the Bankruptcy Court.

Notwithstanding anything to the contrary in the Plan or Disclosure Statement, nothing in the Plan, Disclosure Statement or any Order confirming the Plan shall modify the rights, if any, of any counterparty to a lease of non-residential real property to assert any right of setoff or recoupment against the Debtors and Reorganized Debtors that such counterparty may have under applicable bankruptcy or non-bankruptcy law.

**8.6**     **No Interest on Claims**.  Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Contested Claim for the period from the Petition Date to the date a Distribution is made when and if such Contested Claim becomes an Allowed Claim.

**8.7**     **Procedures for Treating and Resolving Contested and Contingent Claims**.

**(a)**     **No Distributions Pending Allowance**.   Notwithstanding any other provision of the Plan, the Plan Administration Agent and Reorganized Debtors, as applicable, shall make distributions only to holders of Allowed Claims.  No holder of a Contested Claim will receive any distribution on account thereof, until and to the extent that its Contested Claim becomes an Allowed Claim.  To the extent a Claim is not a Contested Claim but is held by a holder that is or may be liable to the Debtors or Reorganized Debtors on account of a Cause of Action, no payments or distributions shall be made with respect to all or any portion of such

Claim unless and until such Cause of Action has been settled, withdrawn, or determined by a final order of the Bankruptcy Court or such other court having jurisdiction over the matter.

If necessary in determining the amount of a pro rata distribution due to the holders of Allowed Claims, the Plan Administration Agent or Reorganized Debtors, as applicable, shall make the pro rata calculation as if all Contested Claims were Allowed Claims in the full amount provided under the Plan. The Plan Administration Agent or Reorganized Debtors, as applicable, in their sole discretion, may withhold distributions otherwise due hereunder to the holder of a Claim until the Claims Objection Deadline, to enable parties to file a timely objection thereto. When a Contested Claim becomes an Allowed Claim, the Reorganized Debtors or Plan Administration Agent, as applicable, shall make distributions with respect to such Allowed Claim, without interest (except as otherwise provided by the Plan), net of any setoff and/or any required withholding of applicable taxes.

**(b)** **Claim Estimation**. The Debtors or Reorganized Debtors or Plan Administration Agent may, at any time, request that the Bankruptcy Court estimate any contingent, unliquidated, or Contested Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether that Claim was previously objected to or whether the Bankruptcy Court has ruled on any such objection; *provided, however*, that the Bankruptcy Court will determine (i) whether such Contested Claims are subject to estimation pursuant to section 502(c) of the Bankruptcy Code and (ii) the timing and procedures for such estimation proceedings, if any. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any contingent, unliquidated, or Contested Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or Reorganized Debtors or Plan Administration Agent may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

**(c)** **Distributions After Allowance of Contested Claim**. Distributions to each respective holder of a Contested Claim, to the extent it becomes an Allowed Claim, will be made in accordance with the provisions of the Plan that govern distributions to such holders of Claims in the class in which such claimant is classified. Unless otherwise provided in the Plan, as promptly as practicable after the date on which a Contested Claim becomes an Allowed Claim, and in any event not later than ten (10) business days after the Contested Claim becomes an Allowed Claim, the Reorganized Debtors or Plan Administration Agent, as applicable, will distribute to the claimant any distribution that would have been made to such claimant had its Claim been an Allowed Claim on the date that distributions were previously made to holders of Allowed Claims in the class in which such claimant is classified under the Plan, including interest, if any, that accrues on such Claim in the interim period while the Claim is Contested.

**8.8** **Allowance of Claims Subject to 11 U.S.C. § 502(d)**.  Allowance of Claims will be subject in all respects to the provisions of section 502(d) of the Bankruptcy Code, except as provided by a final order of the Bankruptcy Court or a settlement among the relevant parties.

**8.9** **Distributions**.

**(a)** **Reorganized Debtors and Plan Administrator as Disbursing Agents**. The Reorganized Debtors and, with respect to Allowed General Unsecured Claims, the Plan Administrator shall make all distributions required under the Plan, subject to the terms of the Plan.  The Reorganized Debtors and the Plan Administrator shall not be required to give any bond or surety or other security for performance of their duties unless otherwise ordered by the Bankruptcy Court.  The Reorganized Debtors and the Plan Administrator shall be authorized to rely on the Debtors' books and records and the Debtors' and Reorganized Debtors' representatives and professionals in determining Allowed Claims entitled to distributions under the Plan in accordance with the terms of the Plan.

**(b)** **Distributions to be Pro Rata Within a Class**.  Except as otherwise provided in the Plan, all distributions constituting a partial payment to holders of Allowed Claims within a specific class shall be made on a pro rata basis to the holders of Allowed Claims in such class.

**(c)** **Means of Cash Payment**.  Cash payments made pursuant to the Plan will be in U.S. funds, by the means agreed to by the payor and the payee, including by check or wire transfer, or, in the absence of an agreement, by a commercially reasonable manner as the payor will determine in its sole discretion.

**(d)** **Delivery of Distributions**.  All distributions to any holder of an Allowed Claim shall be made at the address of such holder set forth on the proof of claim filed by such holder (or at the last known address of such a holder if no proof of claim is filed or if the Plan Administration Agent or Reorganized Debtors have been notified in writing of a change of address).  If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Plan Administration Agent or Reorganized Debtors is notified in writing of such holder's then current address, at which time all missed distributions shall be made to such holder without interest.  Any holder of an Allowed Claim whose distribution is undeliverable must make demand for such distribution to the Plan Administration Agent and Reorganized Debtors in writing on or before 120 days after the date such undeliverable distribution was initially made, after which the distribution shall be deposited into a pool for redistribution to other holders of Allowed Claims in the same class as the intended recipient of the undeliverable distribution, and any Claim by such intended recipient with respect to such undeliverable distribution shall be discharged and forever barred.  The Plan Administration Agent and Reorganized Debtors and their agents and professionals are under no duty to take any action to either attempt to locate any holder of a Claim, or obtain an executed Internal Revenue Service Form W-9 from any holder of a Claim.

**(e)** **Fractional Dollars; De Minimis Distributions**.  Any other provision of the Plan notwithstanding, payments of fractions of dollars will not be made.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual

payment made will reflect a rounding of the fraction to the nearest whole dollar (up or down), with half dollars being rounded down.  The Reorganized Debtors and the Plan Administrator will not make any payment of less than twenty-five dollars ($25.00) with respect to any Allowed Claim, and the Reorganized Debtors and the Plan Administrator shall retain any such payment on behalf of the Reorganized Debtors.

**(f)** **Unclaimed Property**.  Any distributions that become unclaimed property shall be retained by the Reorganized Debtors or the Plan Administrator free and clear of any claims or restrictions thereon, and any entitlement of any holder of any Claim or Interest to such distributions shall be extinguished and forever barred.  Unclaimed property shall be deposited into a pool for redistribution to other holders of Allowed Claims in the same Class as the intended recipient of the unclaimed property.

**(g)** **Allocation of Payments**.  Amounts paid under this Plan to holders of Allowed Claims in satisfaction thereof shall be allocated first to the principal amounts of such Claims, with any excess allocated to interest that has accrued on such Claims but remains unpaid.

**(h)** **Withholding and Reporting Requirements**.  In accordance with Bankruptcy Code § 346 and in connection with the Plan and all distributions thereunder, the Reorganized Debtors and the Plan Administrator shall, to the extent applicable, comply with all withholding and reporting requirements imposed by any U.S. federal, state or local taxing authority or any non-U.S. taxing authority.  The Reorganized Debtors and the Plan Administrator shall be authorized to take any and all actions necessary and appropriate to comply with such requirements.  All distributions under the Plan may be subject to withholding and reporting requirements.  As a condition for making any distribution under the Plan, the Reorganized Debtors or Plan Administration Agent may require the holder of an Allowed Claim to provide such holder's taxpayer identification and such other information, certification, or forms necessary to comply with applicable tax reporting and withholding laws.  Notwithstanding any other provision of the Plan, each Person receiving a distribution under the Plan shall have sole and exclusive responsibility for the satisfaction and payment of tax obligations on account of any such distribution.

**(i)** **Duty to Disgorge Overpayments**.  To the extent the holder of any Allowed Claim receives more than what such holder is permitted to receive under the Plan, such Holder shall immediately return such excess payment(s) to the Reorganized Debtor or the Plan Administrator, failing which, the Reorganized Debtor or the Plan Administrator may sue such holder for the return of the overpayment in the Bankruptcy Court or any other court of competent jurisdiction.

## ARTICLE IX
## EFFECT OF CONFIRMATION AND EFFECTIVE DATE

**9.1** **Binding Effect**.  This Plan shall be binding upon and inure to the benefit of the Debtors, Reorganized Debtors, the Plan Administration Agent, all present and future holders of Claims and Interests, and their respective successors and assigns, and all other parties in interest in the Bankruptcy Case, whether or not they had a right to vote on the Plan, whether or not any

Claim or Interest held by any of them is impaired under the Plan, whether or not any Claim or Interest held by any of them is allowed in full, only in part, or disallowed in full, and whether or not a distribution is made to any of them under the Plan. Confirmation of the Plan shall operate to bind the Debtors, Estates, Reorganized Debtors, the Plan Administration Agent, and the creditors of Debtors to the terms set forth in the Plan.

**9.2** **Injunction Against Interference with Plan**. Upon the Effective Date, all holders of Claims, all holders of Interests, and all other parties in interest in these Bankruptcy Cases, along with their respective current and former officers, directors, principals, employees and agents, shall be and are hereby enjoined from taking any action to interfere with the implementation or consummation of the Plan.

**9.3** **Discharge of Gatti's Debtors**. Except as provided in the Bankruptcy Code, the Plan or the Confirmation Order, all consideration distributed under the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims against and Interests in the Gatti's Debtors of any nature whatsoever, whether known or unknown, or against the assets or properties of the Gatti's Debtors that arose before the Effective Date. Except as provided in the Bankruptcy Code, the Plan or the Confirmation Order, upon the Effective Date, entry of the Confirmation Order acts as a discharge and release under Bankruptcy Code § 1141(d)(1)(A) of all Claims against and Interests in the Gatti's Debtors and the Gatti's Debtors' assets and properties, arising at any time before the Effective Date, regardless of whether a proof of Claim or Interest was filed, whether the Claim or Interest is Allowed, or whether the holder of the Claim or Interest votes to accept the Plan or is entitled to receive a distribution under the Plan. Except as provided in the Plan or the Confirmation Order, upon the Effective Date, any holder of a discharged Claim or Interest will be precluded from asserting against the Gatti's Debtors, the Reorganized Gatti's Debtors or any of their assets or properties any other or further Claim or Interest based on any document, instrument, act, omission, event, transaction or other activity of any kind or nature that occurred before the Effective Date. Except as provided in the Plan and the Confirmation Order, and subject to the occurrence of the Effective Date, the Confirmation Order will be a judicial determination of discharge of all liabilities of the Debtors to the extent allowed under Bankruptcy Code § 1141, and the Gatti's Debtors and Reorganized Gatti's Debtors will not be liable for any Claims or Interests and will only have the obligations as are specifically provided for in the Plan.

**9.4** **Injunction**. Except as otherwise provided in the Plan, the Confirmation Order shall provide, among other things, that from and after the Effective Date, all holders of Claims against and Interests in the Gatti's Debtors are permanently enjoined from taking any of the following actions against the Gatti's Debtors, Reorganized Gatti's Debtors, Plan Administrator, or any of their property on account of any such Claim or Interest: (i) commencing or continuing in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any encumbrance or lien; (iv) asserting a setoff, subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Gatti's Debtors; and (v) commencing or continuing, in any manner or in any place, any action that does not conform to or comply with, or is inconsistent with, the provisions of the Plan; provided, however, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of the Plan or the Confirmation Order. If allowed by the Bankruptcy

Court, any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' and experts' fees and disbursements, and, in appropriate circumstances, may recover punitive damages, from the willful violator.

**9.5    Exculpation**. The Debtors and any of their successors and assigns, shall not have or incur any liability or obligation, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise, to any holder of a Claim or Interest or any other Person for any act or omission originating or occurring on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the Debtors, the Estates, the administration of the Bankruptcy Cases, the operation of the Debtors' businesses during the Bankruptcy Cases, the formulation, negotiation, preparation, filing, dissemination, approval, or confirmation of the Plan, the Disclosure Statement, the solicitation of votes for or confirmation of the Plan, the consummation or administration of the Plan, or the property to be liquidated and or distributed under the Plan, except for their willful misconduct or gross negligence as determined by a final order of a court of competent jurisdiction.  The foregoing parties will be entitled to rely reasonably upon the advice of counsel in all respects regarding their duties and responsibilities under the Plan.

**9.6    Term of Bankruptcy Injunction or Stays**.  Unless otherwise provided herein or an order of the Bankruptcy Court (including without limitation the Confirmation Order), all injunctions or stays provided in the Bankruptcy Cases under Bankruptcy Code section 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.  Upon the Effective Date, the injunction provided in Section 9.4 of the Plan shall apply.

## ARTICLE X
## IMPLEMENTATION PROVISIONS

**10.1    Conditions Precedent to the Effective Date**.  Unless waived, in whole or in part, confirmation of the Plan is subject to satisfaction of the following condition precedent: all provisions, terms and conditions of the Plan shall be approved in the Confirmation Order.

**10.2    Implementation**.  The Debtors, Reorganized Debtors, and Plan Administration Agent will be authorized to take all necessary steps, and perform all necessary acts to consummate the terms and conditions of the Plan.

**10.3    Compliance with Tax Requirements**.  In connection with the Plan, the Debtors, Reorganized Debtors, and Plan Administration Agent will comply with any withholding and reporting requirements imposed by federal, state, and local taxing authorities, and distributions will be subject to the withholding and reporting requirements, if any.

**10.4    Modification of the Plan**.  The Debtors reserve the right to modify the Plan in writing at any time before the Confirmation Date, provided that: i) the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and ii) Debtors shall have complied with sections 1125 of the Bankruptcy Code.  Debtors reserve the right to modify the Plan in writing at any time after the Confirmation Date and before substantial consummation of

the Plan, provided that:  i) the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code; ii) Debtors shall have complied with sections 1125 of the Bankruptcy Code; and, iii) the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under sections 1129 of the Bankruptcy Code.  A holder of a claim or Equity Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

Notwithstanding the foregoing, the Debtors may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Equity Interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary and desirable.  Non-material modification may be undertaken insofar as it does not adversely change the treatment of the claim of any creditor or the interest of any Equity Interest holder who has not accepted, in writing, the modification.

**10.5**    **Revocation or Withdrawal of the Plan**.  Debtors reserve the right to revoke and withdraw the Plan before the entry of the Confirmation Order.  If the Debtors revoke or withdraw the Plan, or if confirmation or the Effective Date of the Plan does not occur, then the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors, or any other Person or to prejudice in any manner the rights of the Debtors in any further proceedings involving the Debtor.

**10.6**    **Integration Clause**.  This Plan is a complete, whole, and integrated statement of the binding agreement between the Debtors, Reorganized Debtors, Plan Administration Agent, Debtors' creditors, and other parties-in-interest upon the matters herein.  Parole evidence shall not be admissible in an action regarding the Plan or any of its provisions.

**10.7**    **General Notices**.  Any notice, request, or demand required or permitted to be given in connection with the Plan shall be (i) in writing, (ii) served by certified mail, return receipt requested, (iii) hand delivery, (iv) overnight delivery, (v) first class mail, or (vi) fax transmission, and (vii) deemed to have been given or made when actually delivered or received addressed as follows:

−to the Reorganized Gatti's Debtors:             −with copies to:

Gatti's                                                    Kelly Hart & Hallman LLP
Attn:  General Counsel                            Attn:  Michael McConnell
550 Bailey Street, Suite 650                    201 Main Street, Suite 2500
Fort Worth, Texas 76107                         Fort Worth, TX 76102

−to the Reorganized Gigi's Debtors:              −with copies to:

Gigi's                                                      Kelly Hart & Hallman LLP
Attn:  Plan Administration Agent              Attn:  Michael McConnell
550 Bailey Street, Suite 650                    201 Main Street, Suite 2500
Fort Worth, Texas 76107                         Fort Worth, TX 76102

---

**10.8** **Governing Law**.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed or amended in connection with the Plan.

**10.9** **Retention of Jurisdiction**.  Until the case is closed, the Bankruptcy Court will retain the jurisdiction as is legally permissible under applicable law, including under sections 105(a) and 1142 of the Bankruptcy Code, including that which is necessary to ensure that the purpose and intent of the Plan are carried out and to hear and determine all objections thereto that could have been brought before the entry of the Confirmation Order.  The Bankruptcy Court will retain jurisdiction to hear and determine all Claims against and Interests in the Debtors and to enforce all causes of actions that may exist on behalf of the Debtors, over which the Bankruptcy Court otherwise has jurisdiction.

Dated:  October 17, 2019

**KELLY HART & HALLMAN LLP**

By: *Michael McConnell*
Michael McConnell
Texas Bar I.D. 13447300
michael.mcconnell@kellyhart.com
Nancy Ribaudo
Texas Bar I.D. 24026066
nancy.ribaudo@kellyhart.com
KELLY HART and HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 878-3574
Facsimile: (817) 878-9744

*Counsel for Debtors*

3005548.5